## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

* * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| TWANYA PRESLEY, MARINA GIANNAKOVA and SOFIA TSAHARIDES | * | CIVIL ACTION |
|  | * | NO: 3:02CV2157(AVC) |
| Plaintiffs, | * |  |
| v. | * |  |
| PEPPERIDGE FARM, INC., a subsidiary of THE CAMPBELL SOUP COMPANY, THE CAMPBELL SOUP COMPANY and ROBERT AROCHO, Individually | * |  |
| Defendants. | * | JANUARY 30, 2003 |

* * * * * * * * * * * * * * * * * * * * * * *

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Upon the annexed statement of undisputed material facts, pursuant to Local Rule 56(a)1 of the Rules of this Court, the accompanying memorandum of law and the annexed Exhibits and Affidavits, the Defendants Pepperidge Farm, Inc., Campbell Soup Company and Roberto Arocho hereby move this Court for an order pursuant to Rule 56 (b) of the Federal Rules of Civil Procedure granting summary judgment in favor of Defendants and for such other relief as the Court shall deem proper.

**ORAL ARGUMENT REQUESTED**

Attorneys for Defendants

PEPPERIDGE FARM, INC., A SUBSIDIARY OF
THE CAMPBELL SOUP COMPANY, THE
CAMPBELL SOUP COMPANY AND ROBERTO
AROCHO, INDIVIDUALLY

Patricia E. Reilly ct08352
Elizabeth K. Andrews ct20986
TYLER COOPER & ALCORN, LLP
205 Church Street
New Haven, Connecticut 06509-1910
Phone: (203)-784-8479
Fax:    (203) 789-8069
E-mail: reilly@tylercooper.com
             eandrews@tylercooper.com

2

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been sent via first class mail,

postage prepaid to all counsel and pro se parties of record as follows:

John I. Bolton, Esquire
The Bolton Law Firm
360 Fairfield Avenue, Suite 200
Bridgeport, Connecticut 06604

on this 30th day of January 2004.

Elizabeth K. Andrews ct20986

3

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

* * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| | * | |
| TWANYA PRESLEY, MARINA | * | CIVIL ACTION |
| GIANNAKOVA and SOFIA | * | |
| TSAHARIDES | * | NO: 3:02CV2157(AVC) |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| PEPPERIDGE FARM, INC., a subsidiary | * | |
| of THE CAMPBELL SOUP COMPANY, | * | |
| THE CAMPBELL SOUP COMPANY and | * | |
| ROBERT AROCHO, Individually | * | |
| | * | |
| Defendants. | * | JANUARY 30, 2003 |

* * * * * * * * * * * * * * * * * * * * * * * *

### LOCAL RULE 56(a)1 STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE SUBMITTED IN SUPPORT OF THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1. This case is brought by three separate Plaintiffs, Twanya Presley ("Presley"), Sofia

   Tsharides ("Tsharides") and Marina Giannakova ("Giannakova"), against Pepperidge

   Farm, Inc., ("Pepperidge Farm"), a subsidiary of Campbell Soup Company, Campbell

   Soup Company ("Campbell Soup"), and the Plaintiffs' supervisor at Pepperidge

   Farm, Roberto Arocho ("Mr. Arocho").

2. There is no separate basis alleged by which Campbell Soup is liable on any of

   Plaintiffs' causes of action, except that Plaintiffs' employer, Pepperidge Farm, is a

   subsidiary of Campbell Soup. Therefore, the corporate defendants will together be

   referred to as "Pepperidge Farm."

3. At all times relevant to the Complaint, all three Plaintiffs worked on the production line at Pepperidge Farm's Norwalk, Connecticut facility, a bakery that produces a variety of Pepperidge Farm products.

4. Roberto Arocho is also a Pepperidge Farm employee. Mr. Arocho has been employed consistently with Pepperidge Farm since 1979, and has been a supervisor for approximately ten years. Deposition Transcript of Roberto Arocho, hereinafter "Arocho Depo." at 14-15; 40-42, and attached to the Motion for Summary Judgment as Exhibit A.

## A.    Twanya Presley

5. Twanya Presley was hired by Pepperidge Farm on August 28, 1996. Deposition Transcript of Twanya Presley, hereinafter "Presley Depo." at 11, and attached to the Motion for Summary Judgment as Exhibit B.

6. Presley resigned from Pepperidge Farm in February 1998, but reapplied and was rehired in June 1999, as a temporary employee in the Pepperidge Farm Bread Department. Id. at 12; 15, Exh. B.

7. In December 1999, Presley became a fulltime employee as a Production Substitute in the Bread Department. Id. at 16, Exh. B.

8. Sometime in early 2000, Presley switched from the night shift to the day shift, and Roberto Arocho became her supervisor. Id. at 16-17, Exh. B.

9. During that same time frame, Mr. Arocho gave her the opportunity to work in the "mixing room." Id. at 24, ll. 8-13, Exh. B.

2

10. While this job was predominantly held by men, it presented Presley the opportunity to make more money, expand her knowledge at Pepperidge Farm and potentially become eligible for higher positions within the plant. Id. at 25-26, Exh. B.

11. Despite Presley's almost daily contact with Mr. Arocho for two years, from June 1999 through mid-July 2001, Mr. Arocho did not say or do anything that she considered "inappropriate." Presley Depo. at 35, ll. 1-17; 260, ll. 17-21, Exh. B.

12. In February 2001, Presley was injured while working in the Bread Department when a metal rack that she was pulling fell, fracturing her left foot, and as a result of this injury, she did not work from February 13, 2001 through April 1, 2001, during which time she received workers' compensation benefits. Presley Depo. at 33, ll. 20-25; 35, ll. 13-17, Exh. B.

13. Presley returned to work at the plant on or about April 2, 2001, although she had a number of temporary physical restrictions imposed upon her by her physician. Id. at 35, Exh. B.

14. Due to these restrictions, which changed over time, Presley was given a number of "modified" or "light duty" assignments depending upon the work available at the plant and her physical limitations, including performing clerical work for the Quality Assurance, Production, Engineering, Human Resources and Medical Departments. Presley Depo. at 54, ll. 18-25, Exh. B.

15. During this "modified/light duty" assignment, Presley remained a Production Department employee on modified duty whose wages were attributable to the Production Department.

3

16. On or about August 31, 2001, Presley, along with two other employees, interviewed for a Quality Assurance ("QA") Technician position in the QA Department with Steven White, the Quality Assurance Manager at the time. Presley Depo. at 125, ll. 10-17, Exh. B; Affidavit of Steven White ("White Aff.") at ¶¶ 4, 7, and attached to the Motion for Summary Judgment as Exhibit C.

17. Presley wanted the QA job because it would allow her to perform office work, rather than work on the production line, which she preferred. Presley Depo. at 175, Exh. B.

18. Prior to the interview, Presley spoke with a fellow employee and friend at Pepperidge Farm, Vanessa Diggs. Presley Depo. at 130, ll. 20-24, 131, ll. 1-2, Exh. B.

19. Diggs was a supervisor in QA, and according to Presley, insinuated that Presley was a "shoe in" for the open QA position. Presley Depo. at 121, Exh. B.

20. Vanessa Diggs secretly provided Presley with the interview questions in advance. Presley Depo. at 133, ll. 3-12, Exh. B.

21. Despite her advanced knowledge of the questions, based upon her performance during the interview, Mr. White did not believe that Presley was the best candidate for the job. White Aff. at ¶ 15, Exh. C.

22. Mr. White's initial assessment was confirmed by his comparison of Presley's performance and productivity while on her light duty assignments working in the QA Department while on a "modified/light duty" assignment to the other candidates' performance and productivity during a "day in the life," where each was asked to perform some of the functions of the QA job for a day. White Aff. at ¶ 15, Exh. C.

23. Mr. White ultimately awarded the job to one of the other candidates. White Aff. at ¶ 13, Exh C.

4

24. Immediately following her interview with Mr. White, on Friday, August 31, 2001, Presley went to see Vanessa Diggs. Presley Depo. at 131, ll. 9-11, Exh. B.

25. Instead of discussing the interview, Presley told Diggs that Roberto Arocho had sexually harassed her, but also told her it was "all right" because she still thought that she would get the QA job because Diggs knew "what [Presley could] do … and what [she's] capable of doing." Presley Depo. at 131, ll. 21-25, Exh. B.

26. Presley never complained to Human Resources about Mr. Arocho's alleged conduct.

27. Vanessa Diggs told Presley that she ought to complain to the Human Resources ("HR") Department. Id. at 179, Exh. B.

28. Ms. Diggs also shared Presley's allegations with Steve White, who was Digg's supervisor.

29. As a result, Mr. White immediately called Paul Macionus, Pepperidge Farm's Human Resources Manager to discuss the allegations. See Deposition Transcript of Paul Macionus, Jr. ("Macionus Depo.") at Volume I, 106, attached to the Motion for Summary Judgment as Exhibit D; Affidavit of Paul Macionus, Jr. ("Macionus Aff.") at ¶ 9, attached as Exhibit E.

30. That same day Mr. White and Ms. Diggs met with Mr. Macionus, whereby Ms. Diggs recounted her conversation with Presley. See Macionus Aff. at ¶ 11, Exh. E.

31. On Tuesday, September 4, 2001, the first day back at the plant after the Labor Day holiday weekend, Mr. Macionus, together with Maritza (Sanchez) Allende ("Allende"), Employee Relations Manager, commenced a full investigation of Ms. Presley's allegations. Presley Depo. at 179-178; 325, Exh. B; Macionus Depo. at 107-108, 111-112, Exh. C; Macionus Aff. at ¶ 14, Exh. E.

5

32. In connection with their investigation, Mr. Macionus and Ms. Allende called Presley
    to HR to interview her. Macionus Depo. at Vol. I, 11, ll. 1-10, Exh. D; Allende Depo.
    at 58, Exh. F; Macionus Aff. at ¶ 14, Exh. E.

33. During that meeting, Ms. Allende invited Presley to tell them her version of the
    events, and Mr. Macionus informed Presley that Pepperidge Farm had no tolerance
    for sexual harassment, explained the anti-harassment policy to her, and assured her
    that Ms. Allende and he would conduct a full investigation of her allegations and we
    would personally inform her regarding our findings. Presley Depo. at 182, ll. 9-13,
    Exh. B, Macionus Aff. at ¶ 16, Exh. E.

34. Mr. Arocho was on vacation on September 4, 2001, but on the morning of September
    5, 2001, when Mr. Arocho arrived at work, Mr. Macionus and Ms. Allende called him
    to the Human Resources office for an interview. Macionus Depo. at Vol. I, 129, ll. 1-
    5; 131-32, Exh. D; Macionus Aff. at ¶17, Exh. E.

35. During the approximately forty-five-minute interview, Mr. Macionus and Ms.
    Allende reviewed the anti-harassment policy, as well as the Equal Employment
    Opportunity ("EEO") policy and the violence in the workplace policy with Mr.
    Arocho. They also reviewed each of Presley's allegations with Mr. Arocho and told
    him that under no circumstances would Pepperidge Farm tolerate any type of
    harassing behavior towards Presley or any other employee. Macionus Depo. at Vol. I,
    at 120; 129, Exh. D; Macionus Aff. at ¶18, Exh. E.

36. Mr. Macionus also informed Mr. Arocho that Pepperidge Farm had an anti-retaliation
    policy and that retaliation of any kind would not be tolerated. Macionus Depo. at Vol.
    I, 121, Exh. D; Macionus Aff. at ¶19, Exh. E.

6

37. Finally, Mr. Macionus informed Mr. Arocho that if he was found to have violated any
of Pepperidge Farm's policies, the consequence would be very severe, up to and
including termination of his employment. Macionus Depo. at Vol. I, 122, ll. 15-24,
Exh. D; Macionus Aff. at ¶ 20, Exh. E.

38. Mr. Macionus and Ms. Allende also removed Presley from Mr. Arocho's direct day-
to-day supervision during the investigation. Allende Depo. at 133, ll. 13-15, Exh. F;
Macionus Aff. at ¶ 21, Exh. E.

39. Mr. Arocho was shocked by the allegations and affirmatively and credibly denied
them. Macionus Depo. at Vol. I, 149, ll. 13-15, Exh. D; Macionus Aff. at ¶ 22, Exh.
E.

40. Mr. Macionus and Ms. Allende also interviewed all witnesses identified by Presley,
namely, Donald Miller and Juan Martinez. Additionally, Ms. Allende interviewed
Spencer Peeples, who was retired, by telephone and reported the results of that
interview to Mr. Macionus. Macionus Depo. at Vol. I, 120, ll. 17-20; 131, ll. 20-25;
Allende Depo. at 79, Exh. F.

41. Mr. Macionus and Ms. Allende asked Mr. Miller, a supervisor at the time, if he knew
of any issues or incidents between Arocho and Presley. Allende Depo. at 63, ll. 22-
25, Exh. F.

42. Mr. Miller responded that he never saw anything between Presley and Arocho. Id.,
Exh. F. Mr. Miller also stated that he did recall Presley once telling him, as a friend,
that she was "uncomfortable" around Mr. Arocho, but that she said that she had
"handled the situation." Macionus Depo. at Vol. I, 135, Exh. D.

7

43. Presley did not specify to Miller what exactly made her "uncomfortable," nor did she make any allegations of sexual harassment. Macionus Depo. at Vol. I, 135, Exh. D.

44. Mr. Macionus and Ms. Allende interviewed Juan Martinez, Presley's co-worker. Allende Depo. at 69-70, Exh. F. They questioned Mr. Martinez regarding whether he had any additional information regarding Presley's allegations, or whether he had witnessed anything inappropriate between Presley and Arocho. Id. at 70.

45. Mr. Martinez said that he knew nothing about the alleged situation and that he never saw anything between Presley and Arocho. Id.

46. Ms. Allende also interviewed Spencer Peeples, the only other witness identified by Presley, who was retired at the time, by telephone. Mr. Peeples recalled that Presley told him that Mr. Arocho had once asked her out, but he also had no independent knowledge or information regarding Presley's allegations. Allende Depo. at 73, Exh. F.

47. Following a full investigation, Mr. Macionus and Ms. Allende compared their notes from the various interviews and discussed the information that they had gathered. Macionus Depo. at 133-34, Exh. D.

48. Based upon all of the information, including the fact that several of Presley's "witnesses," including Mr. Miller and Mr. Martinez, flatly denied having seen any inappropriate behavior between Mr. Arocho and Ms. Presley, Allende Depo. at 63, ll. 18-25; 70, ll.1-14, Exh. F, Macionus and Allende concluded that there was no corroboration of any of Presley's allegations, and no evidence of sexual harassment, otherwise. Macionus Depo. at Vol. I, 149, Exh. D; Allende Depo. at 131, ll. 13-16, Exh. F; Presley Depo. at 325, Exh. B.

8

49. Mr. Macionus and Ms. Allende then reported the results of the investigation to Presley. Presley Depo. at 325, ll. 2-22, Exh. B.

50. Mr. Macionus and Ms. Allende explained to Presley that no retaliation would be taken against her or tolerated for making her complaint. Macionus Aff. at ¶ 29.

51. Mr. Macionus and Ms. Allende also told Presley that if she had any further concerns, or if she experienced any harassment or retaliation of any kind, she should come back and speak with them. Macionus Aff. at ¶ 29.

52. Ms. Presley did not report any further alleged harassment or make any complaints of retaliation after the conclusion of HR's investigation of her allegations. Macionus Aff. at ¶ 30.

53. Once HR prompted and investigated Presley's complaint, Mr. Arocho stopped allegedly sexually harassing her. Presley Depo. at 247; 325, Exh. B.

**Sofia Tsharides and Marina Giannakova**

54. Pepperidge Farm first learned of Tsharides' and Giannakova's allegations from Presley, following the conclusion of their investigation of her claims. Allende Depo. at 74, ll. 1-4, Exh. F.

55. Presley left a voice mail message for Ms. Allende requesting that HR interview Tsharides and Giannakova. Allende Depo. at 145, ll. 11-14; 146, ll. 15-19, Exh. F.

56. Ms. Allende immediately summoned Tsharides and Giannakova to HR expecting to interview them regarding additional information pertaining to Presley's claim. Id.

57. Allende interviewed Tsharides and Giannakova separately. Upon speaking with each, Allende learned that the women appeared to be complainants, rather than witnesses to Presley's allegations. Allende Depo. at 152, ll. 5-7, Exh. F.

9

58. Tsharides and Giannakova had never previously made a complaint to Human
    Resources regarding any alleged sexual harassment.

59. Once Allende realized this, she initiated an investigation of Tsharides' and
    Giannakova's allegations. Allende Depo. at 175, ll. 5-7, Exh. F.

60. Both Tsharides and Giannakova requested that their names not be used during any
    investigation, were vague and reluctant with their allegations, and refused to name
    any witnesses. Allende Depo. at 174, ll. 18-19; 159, ll. 8-11, Exh. F.

61. To date, even after completion of discovery relating to the subject litigation, neither
    Giannakova nor Tsharides have identified individuals, besides each other, as
    witnesses to their allegations of sexual harassment.

62. As a result, Ms. Allende was only able to interview the claimants and Mr. Arocho in
    connection with the investigation into Tsharides' and Giannakova's claims. Allende
    Depo. at 159, ll. 22-160, ll. 8, Exh. F.

63. Mr. Arocho admitted that he might "touch an employee, if he is trying to get their
    attention in the plant because it's loud." However, he denied touching anyone,
    including Plaintiffs, "in any improper body part," and denied all of Plaintiffs' other
    allegations. Allende Depo. at 160, ll, 4-8, Exh. F.

64. Ms. Allende and Mr. Macionus reviewed the anti-harassment policy with Mr. Arocho
    and stressed that no sexual harassment would be tolerated. Allende Depo. at 161,
    Exh. F.

65. Ultimately, HR found no corroborating evidence of any of Tsharides' or
    Giannakova's claims. Allende Depo. at 162, ll. 1-6, Exh. F.

10

66. Ms. Allende reported the results of the investigation to Tsharides and Giannakova, explained to them that no retaliation would be taken against them or tolerated for making their complaints. Ms. Allende also told Tsharides and Giannakova that if they had any further concerns, or if they experienced any harassment or retaliation of any kind, they should come back and speak with Mr. Macionus or her. Id.; Macionus Aff. at ¶ 41.

67. Tsharides and Giannakova did not report any further alleged harassment or make complaints of retaliation after the conclusion of HR's investigation of their allegations. Macionus Aff. at ¶ 42.

68. At all times during Plaintiffs' employment with Pepperidge Farm, both Pepperidge Farm and Campbell Soup Company had sexual harassment prevention and Equal Employment Opportunity ("EEO") policies (the "Policy") in place. Macionus Aff. at ¶ 4.

69. The Policy had a complaint procedure in effect and was posted in multiple locations in the Norwalk plant where the Plaintiffs worked, in compliance with federal and state rules, regulations, and policies. Specifically, the Policy was posted outside the plant's Human Resources office, which employees passed daily when entering and exiting the plant, in the employee cafeteria, and in the administrative offices upstairs from cafeteria. Id.

70. As well as posted in various places, newly hired employees were informed of the Policy during their orientation. Macionus Depo. at ¶ 5.

11

71. The Policy expressly prohibited sexual harassment and instructed employees to whom they could complain within the plant or at corporate headquarters. Macionus Depo. at ¶ 6.

72. In addition to the Policy, Mr. Macionus and Ms. Allende personally walked the plant floor on a daily basis in order to make ourselves visible and accessible to employees, and employees knew that they could contact Mr. Macionus or Ms. Allende regarding any Human Resources-related issues and/or complaints. Macionus Depo. at Vol. II, p. 12, Exh. D; Macionus Aff. at ¶ 7.

73. Employees frequently contacted Mr. Macionus and Ms. Allende regarding a variety of Human Resources issues and complaints. Id.

74. Plaintiffs knew about the anti-sexual harassment policy and that they could complain about sexual harassment to someone above Mr. Arocho. Presley Depo. at 97, ll. 16-19, Exh. B; Tsharides Depo. at 35-37, ll. 12, Exh. G; Giannakova Depo. at 78, ll. 20, Exh. H.

75. None of the Plaintiffs complained to Pepperidge Farm Human Resources Department. Macionus Aff. at ¶¶ 30, 42.

76. Pepperidge Farm fully complied with its anti-sexual harassment policy by conducting a prompt and thorough investigation of Presley's, Tsharides's and Giannakova's complaints, as soon as HR became aware of them. Macionus Aff. at ¶ 43.

77. None of the Plaintiffs was terminated by Pepperidge Farm. Presley Depo. at 238, ll. 17-22, Exh. B; Giannakova Depo. at 104, ll. 15-21; 106-107, Exh. H.

78. Presley voluntarily resigned from Pepperidge Farm to take an office job. Presley Depo. at 238, ll. 17-22, Exh. B.

12

79. Giannakova quit her job at Pepperidge Farm because she had already found another job at Victoria's Secret. Giannakova Depo. at 104, ll. 15-21; 106-107, Exh. H.

80. Pepperidge Farm moved its bakery facility from Norwalk to Bloomfield in mid-2003.

81. Plaintiff Tsharides decided not to move with the plant, though employment was offered to all existing employees, and voluntarily resigned to take a job with Norwalk Hospital.

Attorneys for Defendants

PEPPERIDGE FARM, INC., A SUBSIDIARY OF
THE CAMPBELL SOUP COMPANY, THE
CAMPBELL SOUP COMPANY AND ROBERTO
AROCHO, INDIVIDUALLY

Patricia E. Reilly ct08352
Elizabeth K. Andrews ct20986
TYLER COOPER & ALCORN, LLP
205 Church Street
New Haven, Connecticut 06509-1910
Phone: (203)-784-8479
Fax:    (203) 789-8069
E-mail: reilly@tylercooper.com
            eandrews@tylercooper.com

13

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been sent via first class mail, postage

prepaid to all counsel and pro se parties of record as follows:

John I. Bolton, Esquire
The Bolton Law Firm
360 Fairfield Avenue, Suite 200
Bridgeport, Connecticut 06604

      on this 30th day of January 2004.

Elizabeth K. Andrews ct20986

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
|  | \* |  |
| TWANYA PRESLEY, MARINA | \* | CIVIL ACTION |
| GIANNAKOVA and SOFIA | \* |  |
| TSAHARIDES | \* | NO: 3:02CV2157(AVC) |
|  | \* |  |
| Plaintiffs, | \* |  |
|  | \* |  |
| v. | \* |  |
|  | \* |  |
| PEPPERIDGE FARM, INC., a subsidiary | \* |  |
| of THE CAMPBELL SOUP COMPANY, | \* |  |
| THE CAMPBELL SOUP COMPANY and | \* |  |
| ROBERT AROCHO, Individually | \* |  |
|  | \* |  |
| Defendants. | \* | JANUARY 30, 2003 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ..................................................................................................iii

I. INTRODUCTION ........................................................................................................... 1

II.STATEMENT OF FACTS .............................................................................................. 2

   A. Twanya Presley .......................................................................................................... 2

   B. Sofia Tsharides ............................................................................................................ 7

   C. Marina Giannakova ..................................................................................................... 8

III. LAW AND ARGUMENT ............................................................................................. 9

   A. Standard for Summary Judgment................................................................................. 9

   B.   Summary Judgment Should be Granted as to Counts Three, Four and Seven –
   Plaintiffs' Sexual Harassment/Hostile Work Environment Claims................................... 11

      1. Pepperidge Farm Exercised Reasonable Care to Prevent and Respond
      Promptly to  the Alleged Sexual Harassment ............................................................. 11

         a. The Plaintiffs did not suffer a "tangible employment action".......................... 12

         b. Pepperidge Farm is entitled to the Ellerth/Faragher affirmative defense ........ 13

            (1) Pepperidge Farm had an effective anti-harassment policy in place ........... 14

            (2) Pepperidge Farm promptly and thoroughly investigated Plaintiffs'
            allegations ................................................................................................................ 15

            (3) The Plaintiffs unreasonably failed to take advantage of the preventive
            and corrective measures provided by Pepperidge Farm ..................................... 21

      2. In the Alternative, Plaintiffs' Allegations Fall Far Short of the Type of
      "Extremely Serious" Acts of Harassment that Title VII was Intended to Proscribe
      and Redress ................................................................................................................ 24

   C. The Court Should Grant Summary Judgment as to Count Five Because
   Pepperidge Farm Did Not Retaliate Against Plaintiffs for Engaging in Activity
   That Is Protected under Title VII ...................................................................................... 31

D. Summary Judgment Should be Granted as to Counts One, Two and Six
Because the Plaintiffs Cannot Establish a Prima Facie Case of Discrimination
on the Basis of Sex ................................................................................................... 35

E. Summary Judgment Must be Granted as to Count Eight Because Plaintiffs Fail
to Make Out a Prima Facie Case of Misrepresentation ..................................................... 36

F. The Court Should Grant Summary Judgment as to Counts Ten Through Thirteen
Because the Defendants Cannot Be Liable for Negligent or Intentional Infliction of
Emotional Distress As a Matter of Law ............................................................................. 38

   1. The Defendants may not be held liable for negligent infliction of emotional
   distress as a matter of law .......................................................................................... 38

   2. The Defendants are not liable for intentional infliction of emotional distress
   as a matter of law ....................................................................................................... 40

G. Summary Judgment Should be Granted as to Counts Nine and Fourteen Because
Plaintiffs' Claims are Preempted by the Workers' Compensation Act and There is No
Vicariously Liable for Intentional, Wrongful Conduct as a Matter of Law ...................... 42

H. Defendants are Entitled to Summary Judgment on Count Fifteen of Plaintiffs'
Complaint Alleging Civil Conspiracy ............................................................................... 47

IV. CONCLUSION ................................................................................................................... 49

## TABLE OF AUTHORITIES

PAGE

**Cases**

A-G Foods, Inc. v. Pepperidge
 Farms, Inc., 216 Conn. 200
 A.2d 69 (1990)..................................................................................................................... 46

Alfano v. Costello, 294 F.3d 365 (2d Cir. 2002)................................................... 24, 25, 26

Alteiri v. Colasso, 168 Conn. 329
 A.2d 798 (1975)..................................................................................................................... 47

Anderson v. Liberty Lobby, 477 U.S. 242 (1986)............................................................ 10

Barber v. Mulrooney, 61 Conn.
 App. 108 (2000)............................................................................................................... 38, 41

Baricko v. Chesebrough-Pond's USA Co., Docket No. 0395642,
 2000 WL 33156508 (Dec. 26, 2000, Zoarski, J.) .................................................... 41

Baskerville v. Culligan Int'l Co., 50 F. 3d 428 (7th Cir. 1995).............................. 27, 28

Black v. Zaring Homes, Inc., 104 F.3d 822 (6th Cir. 1997)......................................... 26

Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310 (2d Cir. 1999).......................... 25

Brice v. Day, 604 F.2d 664 (10th Cir.1979), cert. denied,
 444 U.S. 1086, 100 S.Ct. 1045 (1980)....................................................................... 48

Brown v. Housing Authority, 23 Conn.App. 624 A.2d 643 (1990),
 cert. denied, 217 Conn. 808 A.2d 1233 (1991)................................................... 46, 47

Buckman v. Peoples Express, Inc., 205 Conn. 166 (1987)......................................... 39

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 S.Ct. 2257 (1998)................... 11

Caldwell v. American Basketball Assn., Inc., 825 F. Supp. 558 (S.D.N.Y. 1993) ...... 10

Campbell v. Town of Plymouth, 74 Conn. App. 67 (2002) ................................... 38, 41

Caridad v. Metro-North Commuter Railroad, 191 F.3d 283
 (2d Cir. 1999)..................................................................................... 12, 13, 14, 20, 21, 22

Celotex Corp.v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986) ............... 9, 10, 35

Collins v. New York City Transit Authority, 305 Conn. 113 (2002)........................... 36

Creamer v. Laidlaw Transit, Inc., 86 F.3d 167 (10th Cir. 1996)............................... 27

Cruz v. Coach Stores, Inc., 202 F.3d 560 (2d Cir. 2000) ........................................... 25

DeLaurentis v. New Haven, 220 Conn. 225 (1991) ..................................................... 40

DiCenso v. Cisneros, 96 F.3d 1004 (7th Cir. 1996) ..................................................... 29

Distasio v. Perkin Elmer Corp., 157 F.3d 55 (2d Cir.1998) ....................................... 31

Drew v. K-Mart Corp., 37 Conn. App. 239 (1995) ....................................................... 40

Driscoll v. General Nutrition Corp., 252 Conn. 215 A.2d 1069 (2000) ................ 43, 44

Dudley v. Metro-Dade County, 989 F. Supp. 1192 (S.D.Fla. 1997)..................... 27, 29

Dumais v. Hartford Roman Catholic Diocese, No. X07CV010077631S,
 2002 WL 31015708 *1 (Conn.Super. July 31, 2002)................................... 45, 46, 47

Ellerth, 524 U.S. at 753.................................................................................. 11, 12, 13

Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, reh. denied,
 429 U.S. 1066, 97 S.Ct. 798 (1977)............................................................................ 48

Faragher v. City of Boca Raton, 524 U.S. 775 S.Ct.
    2275, 2293 (1998) .................................................................. 11, 12, 14, 20, 21, 25
Ferraro v. The Stop & Shop Supermarket Co., Docket No. 388031,
    2000 WL 768525 (May 24, 2000, Silbert, J.) ............................................. 41
Fierro v. Saks Fifth Avenue, 13 F.Supp.2d 481 (S.D.N.Y. 1998) ............................ 14, 20, 21, 22
Fine v. City of New York, 529 F.2d 70 (2d Cir.1975) .......................................... 48
Garcia v. ANR Freight Sys., Inc., 942 F. Supp. 351 (N.D. Ohio 1996) ......................... 27
Gomez-Gil v. University of Hartford, 63 F.Supp.2d 191 (D.Conn.1999) ......................... 39
Grant v. Hazelett Strip-Casting Corp., 880 F.2d 1564 (2d Cir.1989) .......................... 31
Gutierrez v. Thorne, 13 Conn. App. 493 A.2d 527 (1988) ...................................... 45
Harris v. Fork Lift Sys., Inc., 510 U.S. 17 (1993) ....................................... 25, 29
Jones v. O'Connell, 189 Conn. 648 A.2d 355 (1983) ........................................... 49
Jones v. U.S.A. Petroleum Corp., 20 F. Supp.2d 1379, (S.D. Ga. 1998) ........................ 22
Knight v. U.S. Fire Ins. Co., 804 F. 2d 9, 12 (2d Cir. 1986),
    cert. denied, 480 U.S. 932 (1987) ...................................................... 10, 35
Koch v. Mirza, 869 F.Supp. 1031 (W.D.N.Y.1994) .............................................. 48
Kotcher v. Rosa & Sullivan Appliance Center, Inc., 957 F.2d 59
    (2d Cir. 1992) ............................................................................ 25
Leibovitz v. N.Y. City Transit Auth., 252 F.3d 179 (2d Cir. 2001) ........................... 25
Lopez v. S.B. Thomas, Inc., 831 F.2d 1184 (2d Cir. 1987) .................................... 25
Marion v. Marion, No. CV 970057153S, 1998 WL 351900 *7
    (Conn.Super. June 18, 1998) .............................................................. 48
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ....................................... 36
Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986) ................................... 24, 25
Minor v. Ivy Tech. State College, 174 F.3d 855 (7th Cir. 1999) .............................. 26
Montero v. AGCO Corp., 19 F. Supp. 2d 1143 (E.D.Cal. 1998) .................................. 23
Morris v. Hartford Courant Co., 200 Conn. 676 A.2d 66 (1986) ................................ 38
Mullen v. Horton, 46 Conn.App. 759 A.2d 1377 (1997) ...................................... 44, 45
Newtown v. Shell Oil Co., 52 F.Supp.2d 366 (D. Conn 1999) ................................. 26, 31
Nichols v. Planning & Zoning Comm'n of Stratford, 667 F. Supp.
    72 (D.Conn. 1987) ........................................................................ 10
Noto v. Regions Bank, No. 03-30665 (5th Cir. Dec. 12, 2003) ................................. 26
Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 118
    S.Ct. 998 (1998) ......................................................................... 26
Parsons v. United Technologies Corp., 243 Conn. 66 A.2d 655 (1997) ...................... 38, 40, 42
Payano v. Fordham Tremont CMHC, 287 F.Supp.2d 470 (S.D.N.Y. 2003) ........................... 33
Perodeau v. City of Hartford, 259 Conn. 729 A.2d 752 (2002) ......................... 24, 38, 39, 40
Perry v. Ethan Allen, Inc., 115 F.3d 143 (2d Cir. 1997) .................................. 24, 25
Petyan, 200 Conn. at 254 n.5 ............................................................ 40, 49
Preston v. O'Rourke, 74 Conn. App. 301 A 2d 753 (2002) ...................................... 49
Quinn v. Greentree Credit Corp., supra, 159 F.3d at 759 .................................. 28, 29
Quinn v. Syracuse Model Neighborhood Corp., 613 F. 2d 438 (2d Cir. 1980) ................ 10, 26
Reed v. A.W. Lawrence & Co., 95 F.3d 1170 (2d Cir.1996) ..................................... 31
Robinson v. Truman College, 1999 WL 33887 at *7 (N.D. Ill. Jan. 19, 1999) ................... 23
Romero v. Carribean Restaurants, Inc., 14 F. Supp. 2d 185 (D.P.R. 1998) .................. 22, 23

Sanchez v. Denver Public Schools, 64 F.3d 527 (10th Cir. 1998) ................................................. 34

Scrivner v. Socorro Indep. Sch. Dist., 169 F. 3d 969 (5th Cir. 1999) ........................................ 23

Shaw v. Autozone, Inc., 1999 WL 371668, at *5 (7th Cir. June 8, 1999).................................. 23

Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871 (5th Cir. 1999) .................................. 26

Sprague v. Thom Americas, Inc., 129 F.3d 1355 (10th Cir. 1997)................................................ 27

St. Mary's Honor Ctr., 509 U.S. at 506............................................................................................ 31

Stoeckel v. Environmental Management Sys. Inc., 882 F. Supp. 1106
    (D.D.C. 1995) .......................................................................................................................... 27, 28

Tomka, 66 F.3d at 1308 .................................................................................................................. 31

Toney v. Cuomo, 92 F. Supp. 2d 1186 (D. Kan. 2000)................................................................. 34

Valencia  v. St. Francis Hospital and Medical Center, Docket
    No. 538867, 1996 WL 218760 ..................................................................................................... 41

Weiss v. Coca-Cola Bottling Co., 990 F.2d 333 (7th Cir. 1993)..................................................... 27

Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559 (1995)............................................. 37

Williams v. H.N.S. Management Co., 56 F.Supp.2d 215 (D.Conn.1999)...................................... 39

Williams v. Maislen, 116 Conn. 433 A. 455 (1933).......................................................................... 48

Wimberly v. Shoney's, Inc., 39 FEP Cases 444 (S.D. Ga. 1985) .................................................... 27

## Statutes

42 U.S.C. § 1985............................................................................................................................ 48

42 U.S.C. § 1985(3)........................................................................................................................ 48

42 U.S.C. Section 2000e, et seq....................................................................................................... 35

Conn. Gen. Stat. § 31-275(16)(B)(ii)............................................................................................... 43

Conn. Gen. Stat. § 31-284(a) ......................................................................................................... 43

Conn. Gen. Stat. § 46a-60(a)(1) et seq............................................................................................. 24

## Other

§ 552 of the Restatement (Second) of Torts ..................................................................................... 36

D'Ulisse-Cupo v. Bd. of Dir. of
    Notre Dame High School,
    202 Conn. 206 (1987)................................................................................................................ 37

Fed. R. Civ. P. 56(c) ........................................................................................................................ 9

Lowe v. Amerigas, Inc., 52 F. Supp. 2d
    349 at 361 (D.Conn. 1999) ......................................................................................................... 37

Restatement (Second) of Agency § 219(2) (1957) .......................................................................... 12

W. Page Keeton et. al., Prosser and
    Keeton on the Law of Torts  § 12,
    at 60 (5th ed. 1984) .................................................................................................................... 40