179, 188 (2d Cir. 2001) (citing Meritor Sav. Bank, FSB, 477 U.S. at 67); Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999). "[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher, 524 U.S. at 787. If the conduct is not severe or pervasive enough to create an objectively hostile or abusive work environment that a reasonable person would find hostile or abusive, it is beyond Title VII's purview. See Harris, 510 U.S. at 21.

As a general rule, incidents must be more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Perry, 115 F.3d at 149; Kotcher v. Rosa & Sullivan Appliance Center, Inc., 957 F.2d 59, 62 (2d Cir. 1992); Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1189 (2d Cir. 1987). Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness. Alfano, 294 F.3d at 374; Brennan v. Metro Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999); see also Faragher, 524 U.S. at 788.

In sum, a plaintiff alleging a hostile work environment must show that either a single incident was extraordinarily severe, or "that a series of incidents were 'sufficiently continuous and concerted' to alter the conditions of her working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (quoting Perry, 115 F.3d at 149). In determining whether the threshold has been met, courts should examine the totality of the facts and circumstances of each case and evaluate the severity, frequency, and degree of the alleged abuse. Harris, 510 U.S. at 23 (relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance"); see also Cruz, 202 F.3d at 570. In analyzing each case, courts should also keep in mind that the Supreme Court has repeatedly emphasized

25

that Title VII is not intended to serve as a "general civility code for the American workplace,"
and that simple teasing, offhand comments, and isolated incidents, unless extremely serious, will
not amount to discriminatory changes in the terms and conditions of employment. See, e.g.,
Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 118 S.Ct. 998, 1002-03 (1998);
Newtown v. Shell Oil Co., 52 F.Supp.2d 366 (D. Conn 1999).

As a matter of law, the conduct that each Plaintiff alleges to have occurred is not
sufficiently severe or pervasive to constitute sexual harassment. In this Circuit, and the majority
of others, courts have routinely held that conduct analogous to, or more egregious than that
alleged in this case, was not sufficiently severe or pervasive to violate Title VII as a matter of
law, even when engaged in by a supervisor. See, e.g., Alfano, 294 F.3d at 380 (sexually
suggestive jokes and comments regarding plaintiff eating a carrot, while humiliating and plainly
offensive, not sufficient to support hostile work environment claim); Quinn, 159 F.3d at 759
(allegations of harassment included offensive comments about plaintiff's buttocks and a
supervisor's deliberate touching of her breasts); Noto v. Regions Bank, No. 03-30665 (5th Cir.
Dec. 12, 2003) (supervisor who greeted workers with hugs and kisses and thanked them by
saying, "I love you," or, "You're the greatest," did not engage in sexual harassment in violation
of Title VII); Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871, 872-75 (5th Cir. 1999)
(no sexual harassment where during a two-year period of time, plaintiff suffered impertinent and
intimate observations about her anatomy, attempts to look down her shirt and multiple incidents
of touching); Black v. Zaring Homes, Inc., 104 F.3d 822, 823-24 (6th Cir. 1997) (no sexual
harassment where in a four-month period, repeated sexual jokes and at least five other sexually
offensive remarks); Minor v. Ivy Tech. State College, 174 F.3d 855 (7th Cir. 1999) (no sexual
harassment where supervisor had allegedly put his arms around plaintiff, kissed her, squeezed

26

her, and asked whether such conduct constituted sexual harassment); Baskerville v. Culligan Int'l

Co., 50 F. 3d 428, 430-31 (7th Cir. 1995) (in a seven-month period, nine sexually offensive

incidents, including repeated references to plaintiff as a "pretty girl," grunting noises when she

wore leather skirt, and one episode of simulated masturbation); Weiss v. Coca-Cola Bottling Co.,

990 F.2d 333, 337 (7th Cir. 1993) (plaintiff's supervisor asked plaintiff for dates, asked about her

personal life, called her a "dumb blonde," put his hand on her shoulder several times, placed "I

love you" signs at her work station, and attempted to kiss her twice at work and once at a bar);

Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1365-66 (10th Cir. 1997) (five sexually

offensive statements, including one made while harasser had his arm around the plaintiff and was

peering down her dress, in a sixteen-month period); Creamer v. Laidlaw Transit, Inc., 86 F.3d

167, 169-70 (10th Cir. 1996) (inappropriate touching, patting, and lifting of plaintiff and pinning

her back against pool table not severe and pervasive enough to constitute sexual harassment);

Dudley v. Metro-Dade County, 989 F. Supp. 1192 (S.D.Fla. 1997) (allegations that a supervisor

had, among other things, tried to caress Plaintiff's hand when he reached for the phone in her

office were insufficient); Garcia v. ANR Freight Sys., Inc., 942 F. Supp. 351, 354-56 (N.D. Ohio

1996) (plaintiff's training instructor's grabbing back of plaintiff's head and guiding it toward his

lap, asking to spend night in plaintiff's motel room, and brushing his hand against her breast did

not alter conditions of plaintiff's employment to create abusive working environment and did not

constitute sexual harassment); Stoeckel v. Environmental Management Sys. Inc., 882 F. Supp.

1106, 1109-11 (D.D.C. 1995) (plaintiff's supervisor "stood in front of her and placed his hands

on either side of her head" and made an inappropriate advance; plaintiff thought supervisor was

about to kiss her); Wimberly v. Shoney's, Inc., 39 FEP Cases 444, 447-53 (S.D. Ga. 1985)

(several random incidents of sexually related touching and comments by male manager did not

27

create sexually hostile work environment). Thus, to prevail on a hostile work environment claim, Plaintiffs must show that the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of their employment.

In Baskerville v. Culligan International Company, supra, 50 F.3d at 430, the plaintiff alleged that over a seven-month period of time, her supervisor referred to her as "pretty girl," told her after she commented on how hot his office was, "not until you stepped your foot in here," made suggestive grunting sounds, suggested that she "run around naked" and once made a gesture intended to simulate masturbation. Id. The Court granted summary judgment in favor of the employer and found that as a matter of law, the plaintiff's claims did not rise to the level of sexual harassment under Title VII. In Stoeckel v. Environmental Management Sys. Inc., supra, 882 F. Supp. at 1106, the plaintiff alleged that her supervisor made an inappropriate advance towards her, and she thought that he was about to kiss her, the supervisor made comments about her physical appearance, initiated physical contact with plaintiff on a number of occasions, frequently winked at her, touched her blouse to straighten her collar, rubbed her shoulders and neck, and led her around the office by her hand. Id. at 1109-10. The Court held that all of the incidents, including the alleged attempted kiss, "do not rise to the level of such pervasiveness and severity to constitute a hostile work environment." Id. at 1114.

In Quinn v. Greentree Credit Corp., supra, 159 F.3d at 759, the plaintiff alleged that she had been subjected to offensive comments, including comments referring either to the speaker's own sexual prowess, to plaintiff's body or to the plaintiff's and her husband's perceived sexual orientation. Id. at 763-64. The plaintiff also alleged that co-workers displayed pornography, pantomimed sex acts, and that her supervisor brushed against her breasts with papers he was

28

carrying. Id. The Second Circuit affirmed the trial court's granting of summary judgment on the

basis that the plaintiff had not alleged facts sufficient to show that she had been sexually

harassed under Title VII:

> Accepting as true all of [plaintiff's] allegations . . . we conclude that [plaintiff] has
> not adduced evidence sufficient to support a finding that she was subjected to
> abuse of sufficient severity or pervasiveness as to alter the conditions of her
> employment. Though the two incidents in question, [her supervisor's] comment,
> apparently regarding [her] posterior, and his use of papers held in his hand to
> touch her breasts, are obviously offensive and inappropriate, they are sufficiently
> isolated and discrete that a trier of fact could not reasonably conclude that they
> pervaded [her] work environment. Nor are these incidents, together or separately,
> of sufficient severity to alter the conditions of [her] employment without regard to
> frequency or regularity.

Id. at 768.

Additionally, in determining that Mr. Arocho did not sexually harass any of the three

Plaintiffs, it is instructive to note what Mr. Arocho is not alleged to have done. He is not alleged

to have touched an intimate body part. See e.g., DiCenso v. Cisneros, 96 F.3d 1004, 1009 (7th

Cir. 1996) (noting that alleged harasser "did not touch an intimate body part"). He is not alleged

to have threatened physical harm. See Harris v. Fork Lift Sys., Inc., 510 U.S. 17, 21 (1993); see

also Dudley v. Metro-Dade County, 989 F. Supp. 1192, 1201 (S.D. Fla. 1997) (granting

employer's motion for summary judgment because, in part, "no physical threat was involved");

see also DiCenso, 96 F.3d 1004 (noting that alleged harasser did not threaten physical harm).

Taking the governing case law together with the facts of this case, all of these decisions

clearly signal that Plaintiffs allegations fall far short of the type of "extremely serious" acts of

harassment that Title VII was intended to proscribe and redress. Each Plaintiff was employed by

Pepperidge Farm for a period of years. For all intents and purposes, each Plaintiff's case is

based on less than one month's period of time, i.e., mid-July to August 31, 2001, wherein the

29

Plaintiffs were allegedly subjected to sporadic comments and requests for dates, and at least one

touch on the hand or arm each. Like much of the conduct described above, even if taken as true,

while possibly offensive and inappropriate, Mr. Arocho's alleged conduct is sufficiently mild,

isolated and discrete that a trier of fact could not reasonably conclude that the events pervaded

Plaintiffs' work environments. Nor are these incidents, together or separately, of sufficient

severity to alter the conditions of Plaintiffs' employment without regard to frequency or

regularity. Additionally, by each Plaintiff's own admission during her deposition testimony,

after she was interviewed by HR about Mr. Arocho's alleged conduct, all alleged misbehavior

stopped. Presley Depo. at 247; 325, Exh. B; Tsharides Depo. at 59, Exh. G; Giannakova Depo.

at 107, Exh. H.

Even more significant is Plaintiffs' testimony that they did not perceive at least some of

the incidents that they now label "sexual harassment" as upsetting or offensive. See, e.g., Presley

Depo. at 279, ll. 6-9, Exh. B (when Mr. Arocho allegedly touched her hands, she did not pull her

hand away and was not upset by the behavior); 302-303 (Mr. Arocho touching her shoulder and

saying "hello" was not "in and of itself offensive"); Tsharides Depo. at 21, ll. 25-23, ll 4, Exh. G

(when Mr. Arocho allegedly touched her hands, she told him to "leave [her] alone" and "he

left"); id. at 100, ll. 3-8, (she did not consider Mr. Arocho's alleged request that Tsharides,

Giannakova and Arocho "go out" some time to have any sexual innuendo);[10] and, id. at 80, ll.

17-23; 81, ll. 16-18 (a lot of people at the plant used the phrase "mi amore" as a greeting,

including Tsharides herself in greeting Mr. Arocho).

---

10 Despite the allegations contained in the Complaint that Mr. Arocho requested a "threesome," Tsharides testified that she did not recall the use of that term, nor does she understand it to have any sexual connotation. Tsharides Depo. at 102.

30

Accordingly, summary judgment should be granted on the Third, Fourth and Seventh

Counts of the Plaintiffs' Complaint.

### C.   The Court Should Grant Summary Judgment as to Count Five Because Pepperidge Farm Did Not Retaliate Against Plaintiffs for Engaging in Activity That Is Protected under Title VII

Plaintiffs assert in Count Five of the Complaint that Pepperidge Farm retaliated against

them by subjecting them to "continual harassment and humiliation at the workplace" and by

constructively discharging Presley and Giannakova. Retaliation claims under Title VII are

analyzed under a three-part evidentiary scheme, which is an "allocation of the burden of

production and an order for the presentation of proof in Title VII" cases. St. Mary's Honor Ctr.,

509 U.S. at 506. Only after the plaintiff presents a prima facie case of retaliation does the burden

shifts to the defendant to articulate a legitimate, non-retaliatory reason for the complained-of

action. Newtown v. Shell Oil Co., 52 F.Supp.3d 366. If the defendant meets its burden, the

plaintiff must demonstrate that there is sufficient potential proof for a reasonable jury to find that

the proffered legitimate reason is merely a pretext for impermissible retaliation. Id.

In order to establish a prima facie claim of retaliation, each Plaintiff must show that: (1)

she engaged in a protected activity; (2) Pepperidge Farm was aware of the activity; (3)

Pepperidge Farm took adverse action against the Plaintiff; and (4) there is a causal connection

between the protected activity and the adverse action. Tomka, 66 F.3d at 1308; Distasio v.

Perkin Elmer Corp., 157 F.3d 55, 66 (2d Cir.1998); Reed v. A.W. Lawrence & Co., 95 F.3d

1170, 1178 (2d Cir.1996). Even assuming arguendo that each of the Plaintiffs can satisfy the

first two elements of a prima facie retaliation claim because she ultimately participated in an

internal Pepperidge Farm investigation and she filed complaints with the CCHRO and EEOC,

see Grant v. Hazelett Strip-Casting Corp., 880 F.2d 1564, 1569 (2d Cir.1989), none of the

31

Plaintiffs can satisfy the third or fourth elements of the cause of action. Pepperidge Farm did not take any adverse action against any Plaintiff, and no Plaintiff can establish a causal connection between the protected activity and any adverse action.

It must be noted at the outset that the undisputed facts of this case, including each Plaintiff's own testimony, defy the conclusory basis for their retaliation claim that they "were subjected to continual harassment and humiliation at the workplace, in part or in whole, in retaliation for their complaints of sexual harassment." Complaint at Count Five, ¶34. As has been noted above, each of the Plaintiffs unequivocally testified that once HR solicited their complaints and commenced investigations, the alleged sexually harassing behavior stopped. In response to the question "[a]lthough the harassment itself, other than the 53-people grin, as you call it...everything else had stopped, the harassment by Mr. Arocho had stopped, right?" Presley answered "Yes."[11]  Presley Depo. at 322, ll. 16-20, Exh. B.  In response to the question "[a]nd did Mr. Arocho say or do anything to you after August of 2001?" Tsharides answered "[a]fter the complaint was made, only once, he said "My love," and nothing else no more." [12]  Tsharides Depo. at 55, ll. 7-10, Exh. G.  Finally, in response to the question "[n]ow you testified ... that Mr. Arocho's behavior improved after September, after you made the complaints, is that correct?" Giannakova answered "[y]es."  Giannakova Depo. at 107, ll. 8-15, Exh. H.

---

11 Presley testified that after she was interviewed by HR, Mr. Arocho would periodically grin at her. Presley Depo. at 247-248. However, as has been made abundantly clear in section III, B, 2, infra, grinning alone, even if in a menacing way, does not constitute sexual harassment. Moreover, even if this did rise to the level of sexual harassment, Pepperidge Farm would not be liable under the Faragher/Ellerth affirmative defense because Presley clearly testified that she did not complain about this alleged conduct. Presley Depo. at 248, ll. 16-19 (Q: "Did you ever go back to anybody in Human Resources and report that Mr. Arocho was grinning at you in this way?"; A: "No, no.").

12 Again, this isolated comment clearly does not rise to the level of "severe or pervasive" as contemplated under Title VII. See section III, B, 2, infra. Additionally, Tsharides also testified that she did not complain about the alleged comment. Tsharides Depo. at 56, ll. 1-5 (Q: "Did you say anything to him?"; A: "Nothing"; Q: "Did you go back and tell Maritza that he had made this comment to you?"; A: No.").

32

It should also be noted that while there is no contested issue of fact that the harassment stopped after the Plaintiffs complained, both Tsharides and Giannakova testified that stopping the harassment was not sufficient because they wanted Mr. Arocho to be "punished." Giannakova Depo. at 112, Exh. H; Tsharides Depo. at 66, Exh. G. The law is clear, however, that "where an employee seeks vindication of alleged employment-related treatment that obviously has nothing to do with unlawful discrimination, it is patently improper and ultimately fruitless for the complainant to attempt to shoehorn those grievances into a federal civil rights lawsuit under Title VII." Payano v. Fordham Tremont CMHC, 287 F.Supp.2d 470, 474 (S.D.N.Y. 2003).

In addition to the undisputed facts clearly illustrating that there was not, in fact, continuing harassment "in retaliation" for Plaintiffs' complaints, the Plaintiffs also fail to establish any adverse employment action which would shift the burden to Pepperidge Farm to articulate a legitimate, nondiscriminatory reason for the action. With regard to Plaintiff Tsharides, no adverse employment action has been alleged, nor has any been developed through discovery. In Plaintiff Giannakova's case, while she alleges that she was constructively discharged in the Complaint, her deposition testimony clearly establishes that this is not the case. Giannakova testified that sometime in March or April of 2002, she called the Human Resources Department and left a voice message that she would no longer be coming to work. Giannakova Depo. at 104, ll. 15-21; 106, ll. 15-25, Exh. H. She further testified that she recalled informing Pepperidge Farm in the message that she was quitting because she had already found another job at Victoria's Secret. Id. at 106-07, Exh. H. Finally, Giannakova testified that she had, in fact, already accepted a job with Victoria's Secret when she quit Pepperidge Farm. Id. at 107, ll. 3-7, Exh. H.

33

Plaintiff Presley also fails to allege any specific facts in support of her retaliation claim, and particularly with regard to the adverse employment action allegedly taken against her.[13] Presley also clearly testified that she voluntarily resigned from Pepperidge Farm. In response to the question "I want to go to your resignation from Pepperidge Farm. Do you recall when that was, when you resigned?" Presley answered "I think it was March 15, 2002 [sic]." Presley Depo. at 238, ll. 17-22, Exh. B. Presley further testified that she was happier at her current job because it involved office and computer work, as opposed to factory work. Presley Depo. at 351, Exh. B.

Presley does not allege that her failure to be awarded the Quality Assurance job constitutes retaliation. However, to the extent that that is the basis for Presley's retaliation claim, the claim must still fail for several reasons. The law is clear that an employee cannot establish a prima facie case of retaliation if she cannot show that the relevant decision-maker knew that she engaged in protected activity. See Sanchez v. Denver Public Schools, 164 F.3d 527 (10th Cir. 1998) (affirming summary judgment because there was no evidence that the decision maker knew that the plaintiff had engaged in protected activity); Toney v. Cuomo, 92 F. Supp. 2d 1186, 1196 (D. Kan. 2000) ("Thus, in the absence of any competent evidence that any of the relevant decision makers had any knowledge of plaintiff's protected activity, plaintiff cannot establish a prima facie case of retaliation and summary judgment in favor of the defendant is warranted."). In this case, there is no admissible evidence of record that Mr. Arocho, was involved in making any decisions regarding filling the QA position, and he in fact, was not. By Presley's own testimony, Steven White was the decision-maker regarding the QA position. Presley Depo. at 121, ll. 20-25; 122, ll.1-6, Exh. B; White Aff. at ¶¶ 13, 17, and there is no evidence that Mr.

---

13 In fact, Presley testified that she felt that she was being "treated differently" not because of her sexual harassment complaint, but because she filed a workers' compensation claim earlier in 2001. Presley Depo. at 260.

34

White knew about Presley's sexual harassment allegations when he made his initial decision regarding the best qualified candidate (disfavoring Presley) during the interview process.

Based upon the Plaintiffs' allegations, together with the facts developed during discovery, there is no genuine issue of material fact that Plaintiffs have not and cannot produce sufficient evidence to allow a reasonable jury to find retaliation. Neither Plaintiffs' "speculation or conjecture as to the true nature of the facts," Knight, 804 F.2d at 12, nor their conclusory and unsupported allegations, Celotex, 477 U.S. at 325, are sufficient to overcome Defendants' motion for summary judgment as to Count Five of the Complaint.

### D. Summary Judgment Should be Granted as to Counts One, Two and Six Because the Plaintiffs Cannot Establish a Prima Facie Case of Discrimination on the Basis of Sex

Counts One, Two and Six are nothing more than a reiteration of Plaintiffs' claims of sexual harassment. Counts One, Two and Six are based entirely upon the same facts as the sexual harassment claims contained in Counts Three, Four and Seven and summary judgment should be granted on this claim for the same reasons set forth in sections III, B, infra.

In Counts One and Two, Plaintiffs claim that the corporate defendants, Pepperidge Farm and Campbell Soup, negligently and intentionally discriminated against them on the basis of their sex in violation of federal law, and in Count Six, Plaintiffs claim that all Defendants discriminated against them on the basis of their sex in violation of state law. In support of their allegations, Plaintiffs merely allege that Defendants "denied plaintiffs equal terms and conditions of employment on the basis of sex ... in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq.," and that the Defendants "discouraged or prevented plaintiffs from exercising their rights to make a complaint and take appropriate legal action to protect their rights and well being." Complaint, Count One, ¶¶ 30, 31, Count Two ¶¶ 34, 35,

35

Count Six ¶¶ 36. Plaintiffs Presley and Giannakova also allege that they "were forced to seek
employment elsewhere."[14] Id. at Count One ¶32, Count Two ¶36, Count Six ¶37.

It is abundantly clear that with regard to the conduct of which Plaintiffs complain, i.e. sex
harassment by Mr. Arocho, Pepperidge Farm exercised reasonable care to prevent and respond
promptly to the allegations, and is therefore, entitled to a grant of summary judgment in its favor
on these counts. However, even if Plaintiffs are attempting to make out a claim of sex
discrimination other than sex harassment, nowhere in their Complaint do any of the Plaintiffs
articulate an adverse employment action that is grounded in something other than pure
speculation or conjecture.[15]

Because there is no evidence of sex discrimination, summary judgment must enter for the
Defendants on Counts One, Two and Six of the Plaintiffs' Complaint.

## E.     Summary Judgment Must be Granted as to Count Eight Because Plaintiffs Fail to Make Out a Prima Facie Case of Misrepresentation

The Eighth Count alleges misrepresentation as to the corporate defendants, Pepperidge

Farm and Campbell Soup. The elements of a claim for negligent misrepresentation are set out in

§ 552 of the Restatement (Second) of Torts:

> One who, in the course of his business, profession or employment .
> . . supplies false information for the guidance of others in their
> business transactions, is subject to liability for pecuniary loss

---

14 Plaintiff Tsharides is not mentioned in these Counts and in fact, was still employed by Pepperidge Farm until
relatively recently, when she left to take another job soon before Pepperidge Farm's Norwalk bakery was closed. It
is, therefore, unclear whether Plaintiff Tsharides is also making a claim of sex discrimination under Title VII.
However, to the extent that Tsharides is claiming sex discrimination, her claim must fail for the same reasons as
Presley's and Giannakova's, as articulated herein.

15 In cases such as this one in which there is no direct evidence of discrimination, courts rely on the familiar three-
stage, burden-shifting analysis first set out by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S.
792 (1973). Under that familiar paradigm, the initial burden is on plaintiff to establish a prima facie case of
discrimination. "To meet this burden, a plaintiff must show: (i) membership in a protected class; (ii) qualifications
for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an
inference of discrimination." Collins v. New York City Transit Authority, 305 F.3d 113, 118 (2002) (citations
omitted).

> caused to them by their justifiable reliance upon the information, if
> he fails to exercise reasonable care or competence in obtaining or
> communicating the information.

Lowe v. Amerigas, Inc., 52 F. Supp. 2d 349 at 361 (D.Conn. 1999); see also D'Ulisse-Cupo v.

Bd. of Dir. of Notre Dame High School, 202 Conn. 206, 217 (1987); Williams Ford, Inc. v.

Hartford Courant Co., 232 Conn. 559, 575 (1995). Like fraudulent or intentional

misrepresentation, negligent misrepresentation requires the plaintiff to allege and prove that she

relied on a false statement to her detriment and that such reliance was reasonable. See Williams

Ford, Inc., 232 Conn. at 579-80.

Again, Plaintiffs' claims of misrepresentation are nothing more than a reiteration of their

sex harassment claims. The basis for Plaintiffs' misrepresentation claim is that Pepperidge Farm

purportedly misrepresented that it had an anti-sexual harassment policy and that Pepperidge

Farm misrepresented that it followed the policy. In the instant case, as has already been stated

by Plaintiffs' own unambiguous testimony, Pepperidge Farm had a sexual harassment policy in

place at all relevant times, the Plaintiffs knew about the policy, and Pepperidge Farm followed

the policy and the law by promptly and thoroughly investigating each of the Plaintiff's claims.

See § III, B, infra. Plaintiffs cannot, therefore, adduce any evidence that Pepperidge Farm made

any false statement with regard to the sexual harassment prevention policy nor that they

reasonably relied on any such a statement.[16]

---

[16] It is interesting, at best, that Plaintiffs allege that Defendants "purportedly had in place a clearly defined company policy and complaint procedures regarding sexual discrimination," Count Six, ¶34 (emphasis added), yet in Count Eight, allege that they in fact "justifiably and reasonably relied" on that policy "in working for [Pepperidge Farm] and coming forward with their complaints." Complaint, Count Eight, ¶ 37.

**F.      The Court Should Grant Summary Judgment as to Counts
          Ten Through Thirteen Because the Defendants Cannot Be
          Liable for Negligent or Intentional Infliction of Emotional
          Distress As a Matter of Law**

Counts Ten and Eleven allege negligent and intentional infliction of emotional

Distress, respectively, against Roberto Arocho. Counts Twelve and Thirteen allege

negligent and intentional infliction of emotional distress, respectively, against the

corporate defendants, Pepperidge Farm and Campbell Soup. These common law claims

fail as a matter of law because (1) Connecticut no longer recognizes a claim of negligent

infliction of emotional distress arising out of the course of one's employment, see

Perodeau v. City of Hartford, 259 Conn. 729 (2002), and (2) the actions alleged do not

rise to the level of intentional infliction of emotional distress. See Barber v. Mulrooney,

61 Conn. App. 108 (2000) (no per se rule equating sexual harassment with intentional

infliction of emotional distress); see also Campbell v. Town of Plymouth, 74 Conn. App.

67 (2002) (allegations of harassment did not rise to level of intentional infliction of

emotional distress).

### 1.      The Defendants may not be held liable for negligent infliction of
###         emotional distress as a matter of law

In Perodeau v. City of Hartford, 259 Conn. 729, 748, 792 A.2d 752 (2002), the

Connecticut Supreme Court recently held that individual employees may not be found liable for

negligent infliction of emotional distress arising out of actions or omissions occurring within the

context of a continuing employment relationship. Id. The Court began its analysis by relying on

its holdings in Morris v. Hartford Courant Co., 200 Conn. 676, 513 A.2d 66 (1986) and Parsons

v. United Technologies Corp., 243 Conn. 66, 700 A.2d 655 (1997). Together, those cases stand

for the proposition that for a claim of negligent or unintentional infliction of emotional distress to

38

be viable, it must be based upon unreasonable conduct of a defendant in the termination process. Perodeau at 751 (emphasis added). The cases also hold that while there is no prerequisite that the termination be *wrongful*, there must be an actual termination. Id. at 751 (emphasis added); see also Gomez-Gil v. University of Hartford, 63 F.Supp.2d 191, 194 (D.Conn.1999) (granting motion for summary judgment on claim for negligent infliction of emotional distress in employment context because no termination of employment); Williams v. H.N.S. Management Co., 56 F.Supp.2d 215, 221 (D.Conn.1999) (same).

The Perodeau Court went on to state that even in cases where there is a termination, the termination may only give rise to a claim for negligent infliction of emotional distress if the conduct under review involved the foreseeable consequence of an unreasonable risk of emotional distress that might result in illness or bodily harm to *a reasonable person*. Id. at 754-55. Finally, the Court noted that "because of the inherently competitive and stressful nature of the workplace and the difficulties surrounding proof of emotional distress, extending the tort of negligent infliction of emotional distress to ongoing employment relationships would open the door to spurious claims." Id. at 758. The Court concluded that "although the rule that we adopt in this case may allow some legitimate emotional injuries to go uncompensated, the social costs of allowing such claims would outweigh the social benefits." Id. at 759.

Therefore, for the Plaintiffs to recover for negligent infliction of emotional distress, each must plead and establish that Mr. Arocho and Pepperidge Farm engaged in conduct during the termination process that was so unreasonable that the Defendants "should have known that [their] conduct involved an unreasonable risk of causing emotional distress, and that that distress, if it were caused, might result in illness or bodily harm." Buckman v. Peoples Express, Inc., 205 Conn. 166, 173 (1987). As discussed above, mere termination, even if wrongful, is not enough

39

to support a claim for negligent infliction of emotional distress. Perodeau, 259 Conn. at 762; Parsons, 243 Conn. at 88-89.

Based upon the foregoing, Plaintiffs cannot sustain their claims for negligent infliction of emotional distress against Mr. Arocho because all alleged conduct occurred within a continuing employment context. Plaintiffs' claims against Pepperidge Farm must also fail because the record is clear that none of the Plaintiffs was terminated, nor do they allege termination, wrongful or otherwise. As a matter of law, therefore, Plaintiffs cannot prove that the Defendants are liable for negligent infliction of emotional distress.

### 2. The Defendants are not liable for intentional infliction of emotional distress as a matter of law

To recover for intentional infliction of emotional distress, Plaintiffs must prove that (i) Mr. Arocho and Pepperidge Farm engaged in conduct that was extreme and outrageous, (ii) that Mr. Arocho and Pepperidge Farm intended to cause Plaintiffs emotional distress or knew or should have known that its conduct was likely to cause emotional distress, and (iii) Mr. Arocho's and Pepperidge Farm's conduct in fact caused severe emotional distress. DeLaurentis v. New Haven, 220 Conn. 225, 266-67 (1991); Petyan v. Ellis, 200 Conn. 243, 253 (1986); Drew v. K-Mart Corp., 37 Conn. App. 239, 251 (1995). Under Connecticut law, "extreme and outrageous conduct" is that which exceeds "all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Petyan, 200 Conn. at 254 n.5 (quoting W. Page Keeton et. al., Prosser and Keeton on the Law of Torts § 12, at 60 (5th ed. 1984)). Additionally, Connecticut Courts do not recognize a per se rule equating sexual harassment with intentional infliction of emotional distress. See,

40

e.g., Barber, 61 Conn. App. at 111; Campbell, 74 Conn. App. at 78-79; see also Valencia
v. St. Francis Hospital and Medical Center, Docket No. 538867, 1996 WL 218760, (April
3, 1996, Hennessey, J.) (allegations that plaintiff was physically and verbally assaulted by
her supervisor in front of her co-workers insufficient as a matter of law to prove
intentional infliction of emotional distress); Baricko v. Chesebrough-Pond's USA Co.,
Docket No. 0395642, 2000 WL 33156508 (Dec. 26, 2000, Zoarski, J.) (allegations that
defendant created a hostile work environment, used fellow-employees to report to him on
plaintiff's performance, actively attempted to eliminate plaintiff from employment,
prevented plaintiff from using vacation time, and played fellow employees against each
other, held to be legally insufficient for an intentional infliction of emotional distress
claim even when the supervisor was aware of the psychological affect his policies were
having on the plaintiff); Cf. Ferraro v. The Stop & Shop Supermarket Co., Docket No.
388031, 2000 WL 768525 (May 24, 2000, Silbert, J.) (where plaintiff suffered
harassment from supervisor that was public, extreme, unrelenting and in the presence of
co-worker's sufficient to establish claims for intentional infliction of emotional distress).

In this case, Plaintiffs have not alleged that Mr. Arocho or Pepperidge Farm engaged in
any conduct that could be considered "extreme and outrageous." Nor could they. Instead,
Plaintiffs allege no specific facts to support their claims and rely on the conclusory allegation
that "[t]he acts and omissions of the [defendants] were extreme and outrageous." Complaint at
Count Eleven, ¶ 29; Count Thirteen, ¶ 29. Nowhere do Plaintiffs allege that they were
terminated, or that they suffered any "extreme and outrageous" conduct during the termination
process. Even assuming, arguendo, that Plaintiffs were terminated, and their claim was that their
termination was a result of their sexual harassment complaints, they would still be unable to

41

make out a successful claim of intentional infliction of emotional distress. The Connecticut

Supreme Court has held that in evaluating claims for intentional infliction of emotional distress

in the employment context, an employer's motivation is irrelevant. Rather, to impose liability on

an employer, the Plaintiffs must prove that the employer's conduct in carrying out a termination

decision was "extreme and outrageous." Parsons v. United Techs. Corp., 243 Conn. 66, 89

(1997) ("[t]he mere act of firing an employee, even if wrongfully motivated, does not transgress

the bounds of socially tolerable behavior.") (citation and internal quotation marks omitted)

(emphasis added).

In this case, it is undisputed that neither Mr. Arocho nor Pepperidge Farm terminated the

Plaintiffs. Plaintiff Presley testified at her deposition that she voluntarily resigned to take an

office job. Presley Depo. at 238, ll. 17-22, Exh. B. Plaintiff Giannakova also testified that she

quit her job to work for Victoria's Secret. Plaintiff Tsharides was still employed by Pepperidge

at the time of her deposition.[17] Even assuming that Plaintiffs did not voluntarily resign, they

allege no facts, nor testified regarding any "extreme and outrageous" behavior by Arocho or

Pepperidge Farm when they did leave their jobs. Under the circumstances, the Defendants are

entitled to summary judgment on Counts Eleven and Thirteen of the Complaint.

### G.    Summary Judgment Should be Granted as to Counts Nine and Fourteen Because Plaintiffs' Claims are Preempted by the Workers' Compensation Act and There is No Vicariously Liable for Intentional, Wrongful Conduct as a Matter of Law

Count Nine of Plaintiffs' Complaint alleges assault and battery against Roberto Arocho

and Count Fourteen alleges that the corporate defendants, Pepperidge Farm and Campbell Soup;

---

17 Pepperidge Farm moved its bakery facility from Norwalk to Bloomfield in mid-2003. Plaintiff Tsharides decided not to move with the plant, though employment was offered to all existing employees, and voluntarily resigned to take a job with Norwalk Hospital.

42

are vicariously liable for the alleged assault and battery by Mr. Arocho. See Complaint at

Counts Nine, Fourteen, ¶ 1.

Plaintiffs' claims of assault and battery, both in Counts Nine and Fourteen, are based

upon the same facts underlying their claims for sexual harassment, and summary judgment

should therefore enter for Defendants based upon the foregoing analysis regarding those claims.

However, Defendants are entitled to summary judgment on Plaintiffs' claim against Mr. Arocho

(Count Nine), on the separate, but equally compelling, argument that the claim is barred by the

exclusivity provision of the Connecticut Workers' Compensation Act, Conn. Gen. Stat. § 31-

284(a).[18]  It is the law in Connecticut that the exclusivity provision of the Workers'

Compensation Act bars an employee from pursuing a tort claim for damages for emotional

distress resulting from a physical and sexual assault that occurred during and in the course of her

employment. Driscoll v. General Nutrition Corp., 252 Conn. 215, 216-217, 752 A.2d 1069

(2000). As the Connecticut Supreme Court noted in Driscoll, the exclusivity afforded by Conn.

Gen. Stat. § 31-284(a) "manifests a legislative policy decision that a limitation on remedies

under tort law is an appropriate trade-off for the benefits provided by workers' compensation."

Id. at 220-21. This trade-off is one of the primary purposes of the Act. Id. at 222. Section 31-

284(a) reflects a compromise of the right to common law remedies for work place injury in

---

18 Section 31-284(a) provides, in relevant part, "[a]n employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter...." "Personal injury" is defined by the Act to *exclude* "[a] mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease." Conn. Gen. Stat. § 31-275(16)(B)(ii).

exchange for "relatively quick and certain compensation." Id. (internal quotation marks omitted). Any ambiguities in the Act must be resolved to advance this remedial purpose. Id. The fact that a plaintiff's injury may not be compensable does not remove the Act's exclusivity bar or enable the plaintiff to bring a tort claim for the injury. Id. at 220.

As was the case in Driscoll, Plaintiffs here are seeking damages for "mental/emotional distress" resulting from the alleged "offensive and harmful touching" that occurred during and in the course of their employment. Their claims are therefore barred by the exclusivity provision of the Workers' Compensation Act and Defendants are entitled to summary judgment on this claim.

Plaintiffs' claims of assault and battery against Pepperidge Farm must also fail because the doctrine of respondeat superior does not apply in this case, as no reasonable trier of fact could find that Mr. Arocho was acting within the scope of his employment when he allegedly sexually harassed Plaintiffs.

Under the doctrine of respondeat superior, an employer is only liable for the wilful torts of its employees when committed within the scope of the employee's employment and in furtherance of the employer's business. See Mullen v. Horton, 46 Conn.App. 759, 764, 700 A.2d 1377 (1997). An employee is acting "within the scope of employment" only while engaged in the service of his master. Id. The phrase "within the scope of employment" is not synonymous with the phrase "during the period covered by his employment." Id. "While a servant may be acting within the scope of his employment when his conduct is negligent, disobedient and unfaithful ... that does not end the inquiry. Rather, the vital inquiry in this type of case is whether the servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's

44

business." Id. Unless an employee is actuated at least in part by a purpose designed to serve his employer, the employer cannot be held liable. Id.

While it is generally a question of fact as to whether an employee's committal of a wilful tort occurs within the scope of employment and in the furtherance of the employer's business, the law recognizes that there are cases where an employee's digression from duty is so clear that the disposition of the case becomes a matter of law. See Mullen v. Horton, supra, 46 Conn.App. at 764-65; see, e.g., Gutierrez v. Thorne, 13 Conn.App. 493, 537 A.2d 527 (1988) (as a matter of law, employee's sexual assault of mentally retarded client was not within scope of employer's business of providing supervision and training regarding daily living skills).

In one of the few Connecticut cases addressing the theory of respondeat superior under a factual scenario of alleged improper sexual conduct by an employee, the court refused to impose vicarious liability on the defendant/employer. See Dumais v. Hartford Roman Catholic Diocese, No. X07CV010077631S, 2002 WL 31015708 *1 (Conn.Super. July 31, 2002). In Dumais, the plaintiff alleged that the three defendants, the Hartford Roman Catholic Archdiocese Corporation, Inc., St. Francis of Assisi Church Corporation of New Britain, and Archbishop Daniel A. Cronin, were vicariously liable under the theory of respondeat superior for sexual abuse suffered by the plaintiff at the hands of a pastor/employee of the Church. The plaintiff did not, however, allege that his pastor sexually abused him as part of the pastor's employment or priestly duties. Id. In holding that the employer could not be held vicariously liable for the pastor's conduct, the Court noted that the law in this area is well-established, and that an employer is liable for the acts of an employee only when that conduct is actuated, at least in part, by a purpose to serve the employer, and that the "critical question is whether the employee was engaged in the employer's business or had abandoned that business while harming the plaintiff."

Id. (citing A-G Foods, Inc. v. Pepperidge Farms, Inc., 216 Conn. 200, 210, 579 A.2d 69 (1990)).
The Court went on to state that because the plaintiff made no claim that his pastor's sexual abuse
of him was done in any way to advance or further the business of the Church or Archdiocese,
even in some misguided manner, plaintiff could not impose vicarious liability upon the
defendants, and plaintiff's claims must fail as a matter of law. Id.

In the Connecticut Appellate Court decision, Brown v. Housing Authority, 23 Conn.App.
624, 583 A.2d 643 (1990), cert. denied, 217 Conn. 808, 585 A.2d 1233 (1991), the Court again
refused to extend liability to the employer for the unlawful acts of its employee. In Brown, the
plaintiff and a maintenance mechanic employed by the defendant, were involved in an altercation
which resulted from the plaintiff asking the employee, who was driving a van owned by the
defendant to a job site, to move his vehicle, which was blocking traffic. The two men exchanged
words. The employee refused to move the van and the men had a physical altercation. The
plaintiff brought an action under the theory of respondeat superior seeking damages for the
assault and battery committed by the employee. The trial court granted the defendant/employer's
motion for summary judgment, finding no support for the suggestion that the employee was
doing anything in furtherance of the defendant's business when he assaulted the plaintiff. Id. at
625-26.

The Appellate Court affirmed the judgment of the trial court, stating:

> It is clear ... that [the employee] was not furthering the defendant's business
> interests when he assaulted the plaintiff. His intentional, criminal acts were in no
> way connected to the defendant's business.... 'In the course of his employment'
> means while engaged in the service of the master, and it is not synonymous with
> the phrase 'during the period covered by his employment.' ... As there were no
> facts before the court from which it could conclude that [the employee] was
> furthering the defendant's interests, the defendant's nonliability under the theory
> of respondeat superior was properly determined as a matter of law.

46

Id. at 628.

Despite the somewhat distinguishable facts, the present case is controlled by the holdings

in Dumais and Brown. There are no allegations or facts suggesting that Mr. Arocho, when he

allegedly touched the Plaintiffs' arms, shoulders or knee, was disobediently or unfaithfully

conducting Pepperidge Farm's business. On the contrary, to the extent that Plaintiffs' allegations

are taken as true, a treir of fact could only reasonably conclude that Mr. Arocho's alleged assaults

of touching the Plaintiffs' various body parts, like the acts of the defendants in Dumais and

Brown, constituted an abandonment of his employer's business.[19] There are no facts from which

to conclude that Mr. Arocho was furthering Pepperidge Farm's interests when he allegedly

touched the Plaintiffs.

Because there are no material facts in dispute that Mr. Arocho was attempting to further

Pepperidge Farm's interests when he committed the alleged assault and battery against Plaintiffs,

Mr. Arocho was acting outside of the scope of his employment as a matter of law. As a result,

Pepperidge Farm cannot be held vicariously liable for the acts of Mr. Arocho under the doctrine

of respondeat superior, and Defendants' motion for summary judgment should be granted as to

Count Fourteen of the Plaintiffs' Complaint.

## H.   Defendants are Entitled to Summary Judgment on Count Fifteen of Plaintiffs' Complaint Alleging Civil Conspiracy

Finally, the corporate Defendants are entitled to summary judgment on Count Fifteen of

Plaintiffs' Complaint which alleges civil conspiracy to interfere with Plaintiffs' civil rights.

---

19 While Mr. Arocho admitted that he might "touch an employee, if he is trying to get their attention in the plant because it's loud," he denied touching anyone, including Plaintiffs, "in any improper body part," as well as all other allegations of sexual harassment. Allende Depo. at 160, ll, 4-8. For a claim of assault and battery to stand, there must be "harmful contact," or imminent apprehension of such a contact. Alteiri v. Colasso, 168 Conn. 329, 362 A.2d 798 (1975). Mr. Arocho's touching an employee's shoulder to get his or her attention hardly rises to this level.

47

There are no material facts in dispute with regard to this claim, and as a matter of law, it must fail.

As an initial matter, it is not clear from the Complaint whether Plaintiffs are attempting to allege a claim under state or federal law. In order to maintain a claim for civil conspiracy under federal law (e.g., constitutional and civil rights to be free from racial harassment pursuant to 42 U.S.C. § 1985(3) (conspiracy to interfere with civil rights)), it is necessary to allege the deprivation of a constitutional right. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, reh. denied, 429 U.S. 1066, 97 S.Ct. 798 (1977); Fine v. City of New York, 529 F.2d 70, 73 (2d Cir.1975). In order to justify an award of damages based on alleged violations of constitutional rights, the plaintiff must specifically identify those rights, and mere conclusory allegations are not adequate. Brice v. Day, 604 F.2d 664, 666 (10th Cir.1979), cert. denied, 444 U.S. 1086, 100 S.Ct. 1045 (1980). To recover damages under a conspiracy theory, a plaintiff must allege and prove that either two or more persons conspired to deprive plaintiff of equal protection or privileges under the law, or that the defendant had knowledge of a wrong under 42 U.S.C. § 1985 and refused to act to prevent it. Koch v. Mirza, 869 F.Supp. 1031, 1036 (W.D.N.Y.1994); Marion v. Marion, No. CV 970057153S, 1998 WL 351900 *7 (Conn.Super. June 18, 1998).

The Plaintiffs' claim that the Defendants "purposely conspired to deter, any further EEOC or CHRO investigation in this matter by filing a Verified Answer to said agencies which had the effect of falsifying the true facts which were garnered during the defendants' internal investigation undertaken in response to plaintiffs' complaints." Complaint, Count Fifteen, ¶1. An essential element of a civil action for conspiracy is that the alleged conspirators have combined "to do a criminal act or an unlawful act or a lawful act by criminal or unlawful means." Williams v. Maislen, 116 Conn. 433, 437, 165 A. 455 (1933); Jones v. O'Connell, 189 Conn.

48

648, 458 A.2d 355 (1983). The Plaintiffs have adduced no facts, nor can they, that Defendants' purported actions constitute "illegal" acts sufficient to establish a civil conspiracy.[20]  In fact, Defendants did not do anything to "defer" the CHRO or EEOC from investigating Plaintiffs' administrative complaints.   Rather, it was Plaintiffs who requested that the CHRO and EEOC relinquish jurisdiction while their investigation was still pending so that Plaintiffs could file the instant action in court.

In the absence of any independent legal basis for Plaintiffs' civil conspiracy claim, especially in light of the absolute privilege, and the absence of any admissible supportive evidence of record, Defendants are entitled to a grant of summary judgment on Count Fifteen as a matter of law.

## IV.   CONCLUSION

For the Foregoing reasons, each defendant respectfully requests that this Court enter summary judgment in their favor as to Counts One through Fifteen of the Plaintiffs' Complaint.

---

20 Additionally, the basis for Plaintiffs' civil conspiracy claim fails as a matter of law because Defendants are entitled to absolute immunity with regard to "statements made in pleadings or other documents prepared in connection with a court proceeding." Preston v. O'Rourke, 74 Conn.App. 301, 312, 811 A.2d 753 (2002). The privilege extends to administrative proceedings. Petyan, 200 Conn. at 246.

Attorneys for Defendants

PEPPERIDGE FARM, INC., A SUBSIDIARY OF
THE CAMPBELL SOUP COMPANY, THE
CAMPBELL SOUP COMPANY AND ROBERTO
AROCHO, INDIVIDUALLY

Patricia E. Reilly ct08352
Elizabeth K. Andrews ct20986
TYLER COOPER & ALCORN, LLP
205 Church Street
New Haven, Connecticut 06509-1910
Phone: (203)-784-8479
Fax:    (203) 789-8069
E-mail:  reilly@tylercooper.com
            eandrews@tylercooper.com

50

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been sent via first class mail, postage

prepaid to all counsel and pro se parties of record as follows:

John I. Bolton, Esquire
The Bolton Law Firm
360 Fairfield Avenue, Suite 200
Bridgeport, Connecticut 06604

on this 30th day of January 2004.

Elizabeth K. Andrews ct20986

51