FILED

2004 APR - ˥ A I: 0˥

U.S. DISTRICT COURT
HARTFORD, CT.

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TWANYA PRESLEY | : | CIVIL ACTION |
| MARINA GIANNAKOVA | : | NO.: 3:02CV2157(AVC) |
| SOFIA TSAHARIDES | : | |
| (Plaintiffs) | : | |
| | : | |
| V. | : | |
| | : | |
| PEPPERIDGE FARMS, INC. | : | |
| a subsidiary of THE CAMPBELL | : | |
| SOUP COMPANY | : | |
| THE CAMPBELL SOUP | : | |
| COMPANY | : | |
| ROBERTO AROCHO, Individually | : | |
| (Defendants) | : | MARCH 29, 2004 |

### PROPOSED AMENDED COMPLAINT

### I. JURISDICTION AND VENUE

1. This is an action for damages and other equitable relief arising under Title VII of the Civil Rights act of 1964, as amended, Title 42 U.S.C. section 2000e, et seq. (Title VII), and pursuant to Connecticut General Statutes Sections 46a-60(a) (1), (5) and (8), et seq.;  and the common law of the State of Connecticut.

2. This Court has jurisdiction of this controversy by virtue of Title 42 U.S.C. §2000e-5, and by this Court's powers and authority to hear pendent state law claims.

3.  Venue in this district is appropriate pursuant to Title 28 U.S.C. §§1391(b) 1392(a).

4.  The unlawful employment practices alleged herein occurred in the state of Connecticut; and the plaintiffs are either citizens, or aliens residing in the United States and at all relevant times herein were residents of the State of Connecticut.

5.  Pursuant to Title 42 U.S.C. section 200e-5, and Connecticut General Statutes Sections 46a-60(a)(1), (5) and (8), and as otherwise provided by state and federal law , plaintiffs, Twanya Presley and Sofia Tsaharides **only** seek compensatory damages, including back pay, front pay, employee benefits, social security benefits, and interest at the prevailing IRS rate from the date such sums would have been due and owing had plaintiff''s, Presley, employment not been constructively terminated, upon the claims set forth in counts one, two, three, four, five, six and seven herein.

6.  Pursuant to Title 42 U.S.C. section 2000e-5 and Connecticut General Statutes Sections 46a-60(a)(1), (5)  and (8), and otherwise provided by law, plaintiffs seek punitive damages upon the claims set forth in Counts two, three, four, five, six and seven herein.

7. Plaintiffs seeks compensatory damages on their claims of

misrepresentation, intentional infliction of emotional distress, and negligent infliction of emotional distress brought under Connecticut State law.

8.  Plaintiffs seek compensatory and punitive damages on their claims of sexual assault and battery, and intentional infliction of emotional distress, brought under Connecticut state law.

9.  Plaintiffs, Presley and Tsaharides **only** seek costs and attorney's fees pursuant to Title 42 U.S.C. Section 2000e-5(k), Title 42 U.S.C. Section 1988 and Fed. R. Civ. Pro. 54.

## II. COMPLIANCE WITH ADMINISTRATIVE PROCEDURE AS TO ALL DEFENDANTS

11.  Plaintiffs timely filed, *inter alia*, a charge of sex discrimination with the Connecticut Commission on Human Rights and Opportunities (hereinafter "CHRO") and with the Equal Employment Opportunity Commission (hereinafter "EEOC").

12.  It has been more than 180 days since the filing of said complaint, and the matter was released for suit as to all Plaintiffs by the CHRO on September 18, 2002, and by the EEOC  on September 9, 2002.

## III.  PARTIES

13.  The plaintiff **TWANYA PRESLEY** (hereinafter "**Presley**") is a female and legal resident of the United States and at all relevant times has been and is a

resident of the State of Connecticut.  From December 5,1999 until her constructive

discharge in March of 2002, plaintiff was continually and exclusively employed by the

defendants Pepperidge Farms, Inc. (hereinafter "**Pepperidge**") and The Campbell

Soup Company (hereinafter "**Campbell**"). From June 10,1999 through December

4,1999, plaintiff was deemed to be a temporary employee with the defendants.

      14.  The plaintiff **SOFIA TSAHARIDES** (hereinafter "**Tsaharides**") is a female

and legal resident of the United States and at all relevant times has been and is a

resident of the State of Connecticut.  From May 1999 through the summer of 2003,

plaintiff has been continually and exclusively employed by the defendants

Pepperidge Farms, Inc. (hereinafter "**Pepperidge**") and The Campbell Soup

Company (hereinafter "**Campbell**").

      15.  The plaintiff **MARINA GIANNAKOVA** (hereinafter "**Giannakova**") is a

female living in the State of Connecticut. From May 16, 2000 until her separation

from employment in March of 2002, plaintiff was continually employed by the

defendants Pepperidge Farms, Inc. (hereinafter "**Pepperidge**") and The Campbell

Soup Company (hereinafter "**Campbell**").

      16.  At all relevant times herein, the defendant **PEPPERIDGE** was and

remains a corporation authorized to transact business within the State of Connecticut

with a principal place of business located at 595 Westport Avenue, Norwalk,
Connecticut 06856.

17. At all relevant times herein, **PEPPERIDGE** has employed in excess of
fifteen individuals.

18. At all relevant times herein, the defendant **CAMPBELL** was and remains
a corporation headquartered in the State of New Jersey authorized to transact
business within the State of Connecticut through its subsidiary **PEPPERIDGE** with a
principal place of business located at 1 Campbell Place, Camden, New Jersey
08103-1799.

19. At all relevant times herein, **CAMPBELL** has employed in excess of
fifteen individuals.

20. At all relevant times herein, the defendant **ROBERTO AROCHO**
hereinafter "**Arocho**") is a male employed by the defendants in excess of twenty (20)
years as a Supervisor at **PEPPERIDGE** and supervised the Plaintiffs and is being
sued in his personal individual capacity, as well as an employee or agent of the
defendants pursuant to Conn. Gen. Stat. Sections 461-60(a) and (5).

## IV. <u>FACTS</u>

21. As set forth, supra, all plaintiffs were employed by Pepperidge and

Campbell in Pepperidge's Norwalk, Connecticut plant location. The terms and conditions of plaintiffs' employment were that they would continue to be gainfully employed and potentially promoted as long as they performed satisfactorily the duties of their respective positions within the Norwalk location.

22. All plaintiffs performed their duties satisfactorily.

23. At the time plaintiffs were employed by the corporate defendants, said defendants allegedly had in place a clearly defined company policy, and complaint procedure regarding sexual discrimination and sexual harassment in the workplace.

24. At various times the plaintiffs were employed by the corporate defendants they were subjected to a sexually hostile or offensive environment in the workplace which was created, permitted or maintained by Pepperidge, Campbell and their agent(s) or employees(s).

25. The plaintiffs were subjected to conduct constituting sexual harassment; intimidation; and threatening, distressing, hostile and discriminatory conduct by Pepperidge, Campbell and their agent(s) or employees(s).

26. Submission to such conduct was made either explicitly or implicitly a term or condition of plaintiffs' employment, or submission to or rejection of such conduct was used as the basis for adverse decisions affecting their employment, or such

conduct had a purpose or effect of substantially interfering with plaintiff's work performance or creating a hostile or offensive environment in the workplace, to wit:

## A. TWANYA PRESLEY

(I) On or about mid-July 2000, the defendant Arocho began approaching Presley and verbally represented to this plaintiff that she was extremely attractive, maintained "pretty hair" and physically touched this Presley's hands. Presley was upset about such forward behavior but disregarded the same and rationalized Arocho's conduct as an isolated incident.

(ii) Unfortunately Arocho's conduct from mid-July 2000 was not an isolated incident. On or about August 2, 2000, Arocho summoned Presley to his office to communicate to her his attraction to her and specifically that she had "nice legs" and "soft skin". Arocho further touched Presley on her arm as he commented on her skin.

(iii) Presley indicated to Arocho that she was most uncomfortable with this situation and that she would pursue a complaint against him if such further conduct occurred in the future. Arocho responded that since Presley was placed on light duty due to a pending Workers' Compensation Claim, nobody at the Pepperidge's Human Resources Department would assist her because they "were mad at her" for pursuing a compensation claim.

(iv) On or about August 3, 2001, Arocho approached Presley and indicated to her that since she was frequently in the company of other male employees she could make "*allot of money with her looks*".

(v) Thereafter, on August 3, 2001, Arocho, once again summoned Presley to his office on the pre-text of inquiring as to certain documents that needed her immediate attention. Feeling very concerned over Arocho's recent conduct, Presley informed a co-worker of the situation and requested an escort or the nearby presence of this co-worker.

(vi) Upon entering Arocho's office, the defendant proceeded to lock the office door and peer from the window. Presley inquired of Arocho at to what needed to be completed or accomplished. Arocho responded by grabbing his genital area and asked Presley "*so Twanya, you don't want none of this?*" as he gestured to and grabbed his genitals.

(vii) Presley responded with indignation and informed Arocho that she was happily married, that he was married and that she had to leave the office immediately.

(viii) During this point of the confrontation, the co-worker Presley requested to be nearby entered Arocho's office with a key and prompted the termination of this

specific encounter.

(ix) During the afternoon of August 3, 2001, Presley confided with co-workers of her humiliation, discomfort, tension, distress, and nervousness over Arocho's conduct. Again, she reiterated her hope that these incidents were merely isolated and would immediately cease.

(xx) From August 3, 2001 through August 15, 2001, Arocho would gaze at Presley from his office in a menacing and flirtatious manner.

(xi) On August 15, 2001, Arocho requested to see Presley in private and reminded her that he was aware that she had communicated her feelings of discomfort with his behavior but that "*53 people could go to Human Resources and complain about me and nothing would ever happen to me*".  Feeling humiliated and denigrated, Presley walked out of Arocho's office.

(xii) Later on the same date as set forth in ¶11 above, Arocho approached Presley outside his office in area of the plant known as the processing department and grabbed and/or rubbed her shoulders as he said hello to her. He then walked away with a menacing smile. At this specific point Presley was in fear for her employment, her overall safety and hoped that this conduct would cease.

(xiii) Thereafter, on August 30 or 31, 2001, Presley learned that an application

for a promotion that she had posted for within the company contained a negative recommendation from Roberto Arocho. This information was obtained from Vanessa Diggs - a supervisor at Pepperidge.

(xiv) As Presley had been performing satisfactorily all of her duties, whether in her full physical capacity or while on light duty, she was stunned to learn of this information from Ms. Diggs who oversaw the department where Presley sought the promotion.

(xv) In response to receiving this negative information, Presley shared with Ms. Diggs the entire chronology of abusive behavior she had been exposed to at the hands of Roberto Arocho.

(xvi) Ms. Diggs informed Ms. Presley that she ought to proceed immediately to Pepperidge's Human Resources Department to file a complaint.

(xvii) Thereafter, on September 4, 2001, Presley was summoned to Human Resources and proceeded to give a taped statement to Maritza Sanchez of that department.

(xviii) Presley provided Human Resources with a full accounting of Arocho's conduct replete with specific facts. She also relayed her frustration at the handling of her Workers' Compensation Claim and worried that she had no support within

Pepperidge's Human Resources Department because she filed a claim for an injury that occurred in and through the course of her employment with Pepperidge Farms.

(xix) Thereafter, Pepperidge's Human Resources Department inquired of Arocho of the complaints voiced by Presley. After Arocho denied any wrongdoing, Presley was advised that Arocho received a warning and that there was no evidence of wrongdoing on Arocho's part.

(xx) From the time Human Resources purportedly investigated Presley's complaints of Arocho's conduct, she was discouraged, deterred, and dissuaded to pursue the matter further by Maritza Sanchez and other Human Resources personnel.

(xxi) Approximately two (2) weeks after providing Human Resources with the details of her complaint, Presley was directed to work along side Arocho. Her pleas to management to re-assign her elsewhere were ignored and her fears of further harassment from Arocho dismissed. Ultimately, Human Resources intervened and provided Presley with a temporary re-assignment elsewhere in the company's plant.

(xxii) Thereafter, on December 7, 2001, Presley was docked a tardiness charge by Arocho although she was not tardy to work on that date. Arocho represented to Presley that if she were to incur another tardiness charge she would

be suspended from her employment at the company. As a result, Arocho forced this plaintiff to fill out a daily time sheet that accounted for her whereabouts in the company plant at all times. No other employee was treated in a like manner.

(xxiii) On or about March of 2002, Presley resigned from her position at Pepperidge due to the intimidating, offensive, threatening, harassing, distressing, and discriminatory environment which prevailed at Pepperidge and condoned by both Pepperidge and Campbell. Specifically, Presley received information of a threat that was made by Arocho's spouse who was also an employee of Pepperidge. Said threat contained a forewarning of physical harm to Presley for her pursuit of a sexual harassment complaint with Pepperidge's Human Resources Department.

(xxiv) True to the hostile atmosphere and illegal discriminatory workplace environment as set forth above, the threats of physical harm which caused Presley's constructive discharge were communicated to her by a group leader - which is a middle management position at Pepperidge.

(xxv) Despite the knowledge of such a threat which is a flagrant abuse of company policy, the Group Leader chose to relay the threat to Presley rather than immediately report the same to Human Resources as said threat was directly related to this plaintiff's charges of harassment and discrimination.

27. The above said intimidating, offensive, threatening, harassing, distressing, and discriminatory conduct obviously continued, even after plaintiff complained to Human Resources that it was unwelcome and inappropriate.

**B. <u>SOFIA TSAHARIDES</u>**

(I) Commencing in July of 2001 and continuing through August 31, 2001, the defendant, Roberto Arocho continually harassed Tsaharides during the course of her employment at Pepperidge.

(ii) Arocho made repeatedly made comments to this plaintiff such as *"you are so sexy","I want to take you out", "Do you want to mess around with me","Can we go out to dinner"* and *"You have pretty legs"*.

(iii) During the end of July 2000, Tsaharides had occasion to visit Arocho's office   to determine her work schedule that was being posted for the coming week.

(iv) At that time, Arocho confronted Tsaharides and grabbed both of her hands and started rubbing them.

(v) Arocho commented that Tsaharides " *made him nervous"*. Proximate to this time period Arocho attempted to touch Tsaharides' knees and indicated that he had the authority to touch Tsaharides in part because he was her supervisor.

(vi) In early August 2001, Tsharides was working when Arocho came up from

behind her and began to rub his legs against her legs. During this incident he uttered unintelligible comments to Tsaharides. However, the tenor was clear.

(vii) Arocho then started making suggestive comments to this plaintiff as set forth above in ¶26 (B)(ii).

(viii) Tsaharides was asked by Arocho if she wanted *"to mess around with him"*. Arocho was rebuffed. However, to no avail.

(ix) By the end of August 2001, plaintiff Marina Giannakova and Tsaharides were performing their job responsibilities when Arocho approached them both and said *"hi girls! Can the three of us go out? We can have a good time!"* Despite the revulsion at such a comment, Arocho implied it would be a *"threesome with just the 3 of us"*.

(x) By early September 2001, Tsaharides approached Human Resources to make a complaint about Arocho's flagrant, harassing and abusive conduct.

(xi) Unfortunately, and akin to the treatment Presley experienced, Pepperidge's Human Resources Department showed little or no interest in this plaintiff's complaint.

(xii) Maritza Sanchez of Human Resources never took a statement and

encouraged Tsaharides to drop the issue because she would talk to Arocho personally.

28.   The above said intimidating, offensive, threatening, harassing, distressing, and discriminatory conduct was perpetuated and condoned by the corporate defendants as a result of the hostile and discriminatory atmosphere that prevailed in the workplace.

## C.  **MARINA GIANNAKOVA**

(I) Commencing in July of 2001 and continuing through August 31, 2001, the defendant, Roberto Arocho continually harassed Giannakova during the course of her employment at Pepperidge.

(ii) Arocho made repeatedly made comments to this plaintiff such as *"you are so sexy","I want to take you out", "Do you want to mess around with me","Can we go out to dinner"* and *"You have pretty legs".*

(iii) During the end of July 2000, Giannakova  went into Arocho's office to determine her coming work schedule.

(iv) At this time, Arocho  grabbed both of Giannakova's hands and started rubbing them. Despite her resistance and pleas for the immediate cessation of such conduct, Arocho stated to Giannakova that she *"shouldn't worry because nobody*

*else could see us*".

(v) In late August of 2000, Giannakova in Stuffing Department at Pepperidge . Arocho made lewd sexual comments to Giannokova to the effect he wanted to "*eat her*".

(vi) During the next 12 months or so Arocho continued to make sexual comments directed at Giannakova regarding her looks and similar comments up through August 2001 when the abuse reached higher levels.

(vii) On or about  Friday August 31, 2001, Arocho asked Giannakova to work on the Labor Day Holiday weekend. As Giannakova needed the holiday weekend off to attend a wedding, Arocho indicated to this plaintiff that she could have the time off "*if  you give me a kiss*". Arocho further pursued the topic by saying "*Not here - outside*".

(viii) Later in the same day of August 31, 2001, Arocho approached Giannakova again and requested a date. This request was in the presence of plaintiff Tsahirides.

(ix) Consistent with the allegations as set forth by Tsaharides, supra, Arocho requested a threesome with Tsaharides and Giannakova.

(x)  By early September 2001, Giannakova with Tsaharides approached

Human Resources  to make a complaint about Arocho's flagrant, harassing and abusive conduct.

(xi) Unfortunately, and akin to the treatment Presley experienced, Pepperidge's Human Resources Department showed little or no interest in Giannakova's complaint.

(xii) Maritza Sanchez of Human Resources never took a statement and encouraged Giannakova to drop the issue because she would talk to Arocho personally.

28.  The above said intimidating, offensive, threatening, harassing, distressing, and discriminatory conduct was perpetuated and condoned by the corporate defendants as a result of the hostile and discriminatory atmosphere that prevailed in the workplace.

29.   Despite Giannakova's complaint to Human Resources in September of 2001, Arocho continued to harass this plaintiff up through her constructive discharge from the company. At the time, Arocho continued to refer to Giannakova as "*his love.*"

**COUNT ONE:  SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. SECTION 2000e, ET SEQ.  AS TO DEFENDANTS PEPPERIDGE AND CAMPBELL ONLY**

Paragraphs (1) through (29), inclusive, are incorporated in Count One as if fully set forth herein.

30.  The intimidating, offensive, threatening, harassing, distressing and discriminatory conduct, policies and procedures described herein denied plaintiffs equal terms and conditions of employment on the basis of sex , in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq.

31.  Each defendant interfered with, discouraged or prevented plaintiffs from exercising their rights to make a complaint and take appropriate legal action to protect their rights and well being, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq.

32.  As a result of such conduct, Presley and possibly Giannakova were forced to seek employment elsewhere and suffered the loss of her employment, wages, employee benefits, and social security benefits to the extent that they were owed the same.

33. As a result of such conduct, Plaintiffs have suffered mental/emotional distress.

**COUNT TWO:  INTENTIONAL SEX DISCRIMINATION IN VIOLATION OF TILE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. SECTION 2000e, ET SEQ. AS TO DEFENDANTS PEPPERIDGE AND CAMPBELL ONLY**

Paragraphs  (1) through (33) of Count One, inclusive, are incorporated in Count Two as if fully set forth herein.

34. Each defendant intentionally denied plaintiffs equal terms and conditions of employment on the basis of sex, or acted with malice or reckless indifference to rights secured to plaintiffs, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq.

35. Each defendant intentionally interfered with, discouraged or prevented plaintiffs from exercising their rights to make a complaint and take appropriate legal action to protect their rights and well being, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq.

36. As a result of such conduct, Presley suffered the loss of her employment, wages, employee benefits, and social security benefits.

37. As a result of such conduct, plaintiffs have suffered and continues to

suffer mental/emotional distress.

**COUNT THREE:  SEXUAL HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, TITLE 42 U.S.C. SECTION 2000e, ET SEQ. AS TO DEFENDANTS AS TO DEFENDANTS PEPPERIDGE AND CAMPBELL ONLY**

Paragraphs (1) through (33) of Count One, inclusive, are incorporated in Count Three as if fully set forth herein.

34.  The conduct by the defendants alleged herein constituted sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, Title 42 U.S.C. Section 2000e, et seq.

35.  As a result of such conduct, Presley suffered the loss of her employment, wages, employee benefits, and social security benefits.

36.  As a result of such conduct, plaintiffs have suffered and continue to suffer mental/emotional distress.

**COUNT FOUR:  HOSTILE WORKPLACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, TITLE 42 U.S.C. SECTION 2000e, ET SEQ.  AS TO DEFENDANTS PEPPERIDGE AND CAMPBELL ONLY**

Paragraphs (1) through (33) of Count One, inclusive are incorporated in Count Four as if fully set forth herein.

34. The intimidating, offensive, threatening, harassing, distressing, and

discriminatory conduct, policies and procedures described herein created a hostile workplace which substantially interfered with plaintiffs' ability to perform their jobs and which denied plaintiffs equal terms and conditions of employment on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq.

35.  As a  result of such hostile workplace, Presley suffered the loss of her employment, wages, employee benefits, and social security benefits.

34.  As a result of such hostile workplace, Plaintiffs suffered and continue to suffer mental/emotional distress.

**COUNT FIVE:  RETALIATION FOR EXERCISE OF CIVIL RIGHTS IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, TITLE 42 U.S.C. SECTION 2000e, ET SEQ.  AS TO DEFENDANTS PEPPERIDGE AND CAMPBELL ONLY**

Paragraph (1) through (33) of Count One, inclusive, are incorporated in Count Five as if fully set forth herein.

34.  Plaintiffs were subjected to continual harassment and humiliation at the workplace, in part or in whole, in retaliation for their complaints of sexual harassment, discrimination and a hostile workplace, in violation of rights secured to their by Title VII of the Civil Rights Act of 1964, as amended, Title 42 U.S.C. Section

2000e, et seq.

35. As a result of such retaliatory discharge, Presley suffered the loss of their employment, wages, employee benefits, and social security benefits.

36. As a result of such retaliatory discharge, plaintiffs have suffered and continues to suffer mental/ emotional distress.

**COUNT SIX:  SEX DISCRIMINATION IN VIOLATION OF CONN. GEN. STAT. SECTIONS 46a-60(a) (1) AS TO ALL DEFENDANTS.**

Paragraphs (1) through (33) of Count One, inclusive, are incorporated in Count Six as if fully set forth herein.

34. Throughout the time Plaintiff was employed by Pepperidge and Campbell the defendants purportedly had in place a clearly defined company policy, and complaint procedures regarding sexual discrimination, and did not post notices of employee's rights and complaint procedures as required by Conn. Gen. Stat. Sections 46a-54(15) and 46a-97.

35. However, Pepperidge's and Campbell's failure to implement or enforce said policy created, perpetuated and encouraged the intimidating, offensive, threatening, harassing, distressing, and discriminatory conduct, policies and procedures described herein thereby denying plaintiffs equal terms, conditions or

privileges of employment on the basis of sex, in violation of Conn Gen. Stat. Sections 46a 60(a)(1).

36.  Each defendant interfered with, discouraged or prevented plaintiffs from exercising their rights to make a complaint and take appropriate legal action to protect their right to be free of such sex discrimination, in violation of conn. Gen. Stat. Sections 46-a-60(a)(1).

37.  As a result of such conduct, Presley suffered the loss of her employment, wages, employee benefits, and social security benefits.

38.  As a result of such conduct, plaintiffs have suffered and continue to suffer mental/emotional distress.

**COUNT SEVEN: SEXUAL HARASSMENT IN VIOLATION OF CONN. GEN. STAT. SECTIONS 46A-60(A)(8) AS TO ALL DEFENDANTS.**

Paragraphs (1) through(33) of Count One, inclusive, are incorporated in Count Seven as if fully set forth herein.

34  The intimidating, offensive, threatening, harassing, distressing, and discriminatory, policies and procedures described herein constituted illegal sexual harassment in violation of Conn. Gen. Stat. Sections 46a-60(a)(8).

35.  Each defendant interfered with, discouraged or prevented Plaintiffs from exercising their rights to make a complaint and take appropriate legal action to protect their right to be free of such sexual harassment, in violation of Conn. Gen. Stat. Sections 46a-60(a)(8).

36.  As a result of such conduct, Presley suffered the loss of her employment, wages, employee benefits, and social security benefits.

37.  As a result of such conduct , plaintiffs have suffered and continue to suffer mental/emotional distress.

**COUNT EIGHT:  MISREPRESENTATION AS TO DEFENDANTS PEPPERIDGE AND CAMPBELL ONLY**

Paragraphs (1) through(33) , inclusive, are incorporated in Count Eight as if fully set forth herein.

34.  The defendants represented to the plaintiffs that they had a policy prohibiting sexual discrimination and harassment in the workplace, and that plaintiffs could work in an environment free of such conduct.

35.  The defendants represented to the plaintiffs that it had a policy prohibiting sexual discrimination and harassment in the workplace, and procedures for complaints about such conduct, and that plaintiffs could make such complaints

without reprisal or retaliation.

36.  At all relevant times, the defendants, their employees or agents knew or should have reasonably have known that some or all of the above described representations were in fact untrue, false and misleading , or made such misrepresentations in disregard of their truth and accuracy.

37.  The plaintiffs justifiably and reasonably relied upon such representations in working for the defendants and coming forward with their complaints as alleged herein.

38.  As a direct and proximate result of said misrepresentations, Presley suffered the loss of her employment, wages, employee benefits, and social security benefits.

39.  As a direct and proximate result of said misrepresentations, Plaintiffs have suffered and continue to suffer mental/emotional distress.

**COUNT NINE:  AS TO THE DEFENDANT ROBERTO AROCHO FOR SEXUAL ASSAULT AND BATTERY:**

Paragraphs (1) through (33) of Count One, inclusive, are incorporated in Count Nine as if fully set forth herein.

34.  The above described offensive and harmful touching of the plaintiffs' persons by the defendant Arocho constituted a sexual assault and battery upon the plaintiffs.

35.  As a direct and proximate result of said sexual assaults and batteries, Presley suffered the loss of  employment, wages, employee benefits, and social security benefits.

36.  As a direct and proximate result of such sexual assaults and batteries, Plaintiffs have suffered and continue to suffer mental/emotional distress.

**COUNT TEN: AS TO DEFENDANT ROBERTO AROCHO FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS:**

Paragraphs (1) through (33) of Count One, inclusive, are incorporated in Count Ten as if fully set forth herein.

34.  The defendant Arocho knew or should have known that his acts and omissions alleged herein involved an unreasonable risk of causing emotional

distress to the Plaintiffs.

29.  As a direct and proximate result of said acts and omissions, plaintiffs suffered and continue to suffer emotional distress.

**COUNT ELEVEN: AS TO THE DEFENDANT ROBERTO AROCHO FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:**

Paragraphs (1) through (33) of Count One, inclusive, are incorporated in Count Eleven as if fully set forth herein.

28.   The defendant Arocho intended to inflict severe emotional distress to the plaintiffs, and knew or should have known at all times that his acts or omissions alleged herein would result in severe emotional distress to plaintiffs.

29.   The acts and omissions of the defendant Arocho were extreme and outrageous.

30.  As a direct and proximate result of said acts and omissions, plaintiffs suffered emotional distress.

**COUNT TWELVE:  AS TO THE DEFENDANTS PEPPERIDGE AND CAMPBELL FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

Paragraphs (1) through (33) of Count One, inclusive, are incorporated in Count Twelve as if fully set forth herein.

28.  The defendants knew or should have known that the conduct of Arocho as performed and conducted within the physical confines of the Pepperidge's Norwalk plant  as alleged herein would involve an unreasonable risk of causing emotional distress to plaintiffs.

29.  As a result of the defendants acts or omissions, plaintiffs suffered emotional distress.

## COUNT THIRTEEN: AS TO THE DEFENDANTS PEPPERIDGE AND CAMPBELL FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Paragraphs (1) through (33) of Count One, inclusive, are incorporated in Count Thirteen as if fully set forth herein.

28.  The defendants, through its agents, servants, and employees intended to inflict severe emotional distress to the plaintiff, and knew or should have known at all times that Arocho's acts or omissions alleged herein would result in severe emotional distress to Plaintiffs.

29.  The acts and omissions of the defendants were extreme and outrageous.

30.  As a direct result and proximate result of said acts and omissions, plaintiffs suffered emotional distress.

## COUNT FOURTEEN: AS TO THE DEFENDANTS PEPPERIDGE AND CAMPBELL FOR ASSAULT AND BATTERY

1.  Under a theory of respondeat superior and dominion and control over premises, the defendants are liable to the plaintiffs for the sexual assaults and batteries which took place on a continual basis and with such frequency in Pepperidge's Norwalk plant so as to make the defendants liable to the plaintiff for all resulting losses and injuries alleged herein.

## COUNT FIFTEEN: AS TO THE DEFENDANTS PEPPERIDGE AND CAMPBELL FOR CIVIL CONSPIRACY TO INTERFERE WITH PLAINTIFFS' CIVIL RIGHTS :

1. The defendants purposely conspired to deter, any further EEOC or CHRO investigation in this matter by filing a Verified Answer to said agencies which had the effect of falsifying the true facts which were garnered during the defendants' internal investigation undertaken in response to plaintiffs' complaints.

2. By the same token, the initial investigation undertaken by the Defendant's Human Resources Department was undertaken with the intent of defaming, falsifying and concealing the outrageous conduct complained of by the Plaintiffs.

2. Said conspiracy created the by-product of a false and misleading response to the investigative agencies as set forth above in ¶1 of this Count Fifteen.

3. As a result of the foregoing, the plaintiffs have been damaged.

WHEREFORE, the plaintiff seeks:

    1.  For Twanya Presley, **ONLY**, compensatory damages, including back pay, front pay, employee benefits, social security benefits, interest at the prevailing IRS rate from the date such sums would have been due and owing had plaintiff's employment not been terminated;

    2.  Punitive damages;

    3.  Costs of suit and attorney's fees; and

    4..  Such other relief in law or in equity as the court would deem appropriate.

PLAINTIFFS
TWANYA PRESLEY
SOFIA TSAHARIDES
MARINA GIANNAKOVA

BY _____

John I. Bolton **CT08892**
The Bolton Law Firm, P.C.
360 Fairfield Avenue, Suite 200
Bridgeport, CT 06604
(203) 362-1955