UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT



2004 APR 23  P 4: 20

| | |
|---|---|
| TWANYA PRESLEY<br>MARINA GIANNAKOVA<br>SOFIA TSAHARIDES<br>(Plaintiffs) | CIVIL ACTION<br><br>NO.:3:02CV2157(AVC) |
| V. | |
| PEPPERIDGE FARMS, INC.<br>a subsidiary of THE CAMPBELL<br>SOUP COMPANY<br>THE CAMPBELL SOUP<br>COMPANY and ROBERTO AROCHO,<br>Individually<br>(Defendants) | APRIL 23, 2004 |

## LOCAL RULE 56 (a.1) STATEMENT OF MATERIAL FACTS NOT IN DISPUTE SUBMITTED IN OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DATED JANUARY 30, 2003

1. This case was brought by three separate plaintiffs, Twanya Presley, hereinafter "Presley" Sophia Tsararides, hereinafter "Tsaharides", and Marina Giannakova, hereinafter "Giannakova" against Pepperidge Farm, Inc., hereinafter "Pepperidge Farm", a subsidiary of Campbell Soup Company, Inc., and the plaintiff's supervisor at Pepperidge Farm, Roberto Arocho, hereinafter "Arocho".

2. While the defendant claims there is no separate basis alleged by which the corporate defendant, Campbell Soup, is liable on any of the plaintiffs' causes of action, it is undisputed that Pepperidge Farm relied upon the company policies which are at issue in this litigation which were authored and appeared on Campbell Soup corporate letterhead.

3. Essentially, at all times relevant to the complaint, all three plaintiffs primarily worked on the production line at Pepperidge Farms' Norwalk, Connecticut facility. However, at certain times, the plaintiff Twanya Presley was on light duty and performed

other functions at the plant during some of the times at issue.

4.   Roberto Arocho is an employee of Pepperidge Farm and was primarily the supervisor for all plaintiffs in this action. Mr. Arocho has been employed with Pepperidge Farms since 1979 and has been gainfully employed there as a supervisor for approximately ten years.

## A.   TWANYA PRESLEY:

5.   Twanya Presley was hired by Pepperidge Farm initially on August 28, 1996. However, on or about February 1998, Ms. Presley resigned from Pepperidge Farm only to re-apply and was re-hired by the company in June of 1999, as a temporary employee in the company's bread department.

6.   In December of 1999, Presley became a full-time employee as a production substitute in the company's bread department.

7.   Some time in early 2000, Presley switched from the night shift to the day shift to accommodate her parental commitments at which time the defendant, Arocho, became her supervisor.

8.   After Presley switched her shift at Pepperidge Farm, she was assigned to work in the mixing room of the bread department which Presley was uncomfortable doing because of the heavy lifting that was required. While there was no incident in calendar year 2000, Ms. Presley had to make an application for workers' compensation benefits in February of 2001 as a result of an injury she sustained in the mixing room.

9.   Presley was out of work from mid-February 2001 through April 1, 2001 at which time she did receive workers' compensation benefits.

10.   Presley returned to work at the plant in a light duty capacity as a result of the temporary physical job restrictions placed upon her by her treating physician. As a

result of the need for light duty assignments, Presley was given an number of assignments in various departments that tailored her physical limitations at the time. Some of these assignments included, but were not limited to clerical work in the quality assurance department, and the human resource department. At the time Presley was on modified light duty assignment, her job title nor her wages or benefits changed as a result of the Connecticut Workers' Compensation Act.

11.     Because of surgery that was performed on Presley's foot relative to her workers' compensation injury, this plaintiff remained on light duty at or around the time of the acts of complained of in this matter.

12.     On or about mid-July 2000, the defendant Arocho began approaching Presley and verbally represented to this plaintiff that she was extremely attractive, maintained "pretty hair" and physically touched this Presley's hands. Initially, I disregarded this behavior and hoped it was just an isolated incident.

13.     At that time, Presley did not appear to be overly concerned with the platitudes from the defendant, Arocho.

14.     Unfortunately, Arocho's conduct in mid-July 2000 was not an isolated incident as on or about August 2, 2000, Arocho summoned this individual to his office and specifically stated that Presley had nice legs and other further attractive attributes.

15.     At that time, Presley indicated that she was uncomfortable with those comments and that she did not want to have to pursue a complaint if this matter persisted.

16.     Arocho indicated to Presley that due to the nature of her worker's compensation claim she was not necessarily in good standing with the company and the Human Resources Department.

17. The following day on August 3, 2001, Arocho approached Presley and indicated to her that her friendship with several men at the plant would bring her financial gain due to her attractive physical attributes.

18. Thereafter on August 3, 2001, Arocho summoned Presley to his office indicating that he needed certain documents with regard to her light duty assignment in the Quality Assurance Department.

19. Because of the prior incident which occurred in Arocho's office, Ms. Presley notified another supervisor, of equal rank to Arocho, of her "issues" with Arocho.

20. Presley wanted the other manager by the name of Donald Miller to walk in on Arocho so that he would be caught in the act of harassing this individual.

21. Upon entering Arocho's office, Presley was the recipient of further untoward conduct in that Arocho grabbed his genital area and asked Presley if she wanted any of this.

22. Presley indicated that they were both happily married and that such conduct was not appropriate. Presley then left Arocho's office immediately. At this point in the confrontation, Donald Miller entered Arocho's office which prompted the determination of this specific encounter.

22. At all times during the acts complained of in this action, Donald Miller was a supervisor who had an obligation to report any type of conduct that came to his attention following with the purview of the company's sexual harassment or anti-harassment policies.

23. In August of 2001, Donald Miller did not report to the Human Resources Department or Employee Relations Manager Presley's concerns with Arocho despite

company policy and training directing him to do so.

24. Between August 3, 2001 and August 15, 2001, Arocho would gaze at Presley in a leering manner.

26. On August 15, 2001, Arocho requested to see Presley in private and warned her that, *"fifty three people could go to Human Resources and complain about me and nothing would ever happen to me"*. Feeling humiliated and denigrated, Presley walked out of Arocho's office.

27. Later on that same date, Arocho approached Presley and touched her on her shoulders while smiling with the full knowledge of the conversation that tool place earlier in that day.

28. While Presley was on light duty, she had been given an assignment in the Quality Assurance Department for which she applied for regular full-time employment.

29. On or about, August 31, 2001, Presley learned that her application for a position in this department contained a negative recommendation from Arocho. This information was obtained Vanessa Diggs, another supervisor at Pepperidge Farm. During this conversation with Vanessa Diggs, Presley advised Vanessa Diggs of the untoward conduct directed at her by Arocho for the past.

30. At that time Diggs responded by reporting the matter to the company's Human Resources Department.

31. A copy of the notification provided to Human Resources by Vanessa Diggs of this incident is attached hereto within **Exhibit A** which appears to be somewhat in conflict with Paragraph 29 of defendants' statement of material facts as to which there is no genuine issue focused upon Presley's allegations as relayed to Vanessa Diggs.

32.     When Paul Macionus and Maritza Sanchez-Allende met with Presley, they requested that she relay to them her version of the events for which she had a complaint against Arocho. Presley provided Human Resources with a full accounting of Arocho's conduct replete with specific facts. She also relayed her frustration at the handling of her Workers' Compensation Claim and worried that she had no support within Pepperidge's Human Resources Department because she filed a claim for an injury that occurred in and through the course of her employment with Pepperidge Farms.

33.     Presley's interview was taped.

34.     During the taped interview, Presley was advised of the company's sexual harassment policy and was also questioned as to whether she engaged in any activity or conduct that would possibly invite such untoward conduct from Arocho.

35.     Thereafter, Pepperidge's Human Resources Department inquired of Arocho of the complaints voiced by Presley. After Arocho denied any wrongdoing, Presley was advised that Arocho received a warning and that there was no evidence of wrongdoing on Arocho's part.

36.     This finding was made despite the fact that Presley cooperated with HR by providing on September 5, 2001, the names of two other women she learned were also being sexually harassed by Arocho. However, HR apparently did not use that information for investigating my complaint.

37. Approximately two (2) weeks after providing Human Resources with the details of her complaint, Presley was directed to work along side Arocho. Her pleas to management to re-assign her elsewhere were ignored and her fears of further harassment from Arocho dismissed. Ultimately, Human Resources intervened and provided Presley with a temporary re-assignment elsewhere in the company's plant.

38. Thereafter, on December 7, 2001, Presley was docked a tardiness charge by Arocho although she was not tardy to work on that date. Arocho represented to Presley that if she were to incur another tardiness charge she would be suspended from her employment at the company. As a result, Arocho forced this plaintiff to fill out a daily time sheet that accounted for her whereabouts in the company plant at all times. No other employee was treated in a like manner.

39. On or about March of 2002, Presley resigned from her position at Pepperidge due to the hostile and offensive environment which prevailed at Pepperidge. Specifically, Presley received information of a threat that was made by Arocho's spouse who was also an employee of Pepperidge. Said threat contained a forewarning of physical harm to Presley for her pursuit of a sexual harassment complaint with Pepperidge's Human Resources Department.

### B.   SOFIA TSHAHRIDES

40. Commencing in July of 2000 and continuing through August 31, 2001, the defendant, Roberto Arocho continually harassed this Plaintiff during the course of her employment at Pepperidge.

41. During the end of July 2000, Tsaharides had occasion to visit Arocho's office to determine her work schedule that was being posted for the coming week.

42. At that time, Arocho confronted Tsaharides and grabbed both of her hands and started rubbing them.

43. Arocho commented that Tsaharides" made him nervous". Proximate to this time period Arocho attempted to touch her knees and indicated that he had the authority to touch her in part because he was her supervisor.

44. In early August 2001,Tsaharides was working when Arocho came up from behind her and began to rub his legs against hers. During this incident he uttered unintelligible comments to me.

45. Tsaharides was asked by Arocho if she wanted "to mess around with him". Arocho was rebuffed.

47. By the end of August 2001, Tsaharides was performing her job responsibilities when Arocho approached her and Marina Giannakova and indicated that he would enjoy a threesome with these two ladies.

48. By early September 2001,Tsaharides was called into Human Resources to make discuss Arocho's harassing and abusive conduct.

49. Pepperidge's Human Resources Department showed little or no interest in Tsaharides' complaints, did not offer to tape her interview, issued no written report, nor shared with her the findings of the investigation.

50. Within twenty-four (24) hours of initiating the investigation into Presley's complaints relative to Arocho's conduct, the Defendants' Human Resources Department learned the identity of two (2) other individuals - Giannakova and Tsaraides

also recipients of sexually offensive conduct perpetrated by Arocho.

51.   In discovery, Defendants produced a tape recording of Maritza Sanchez-Allende stating that she had received a voice mail from Presley on **Wednesday, September 5, 2001** indicating that Presley just learned of two additional females who were also being subjected to abuse by Arocho.

52.   Presley's recorded voice mail further states that she was providing this information pursuant to the instructions she received from HR to supply them with the names of any corroborating witnesses material to her investigation.

53.   Maritza Sanchez-Allende received timely and critical information relative to a pending investigation regarding incidents of flagrant sexual harassment against two (2) other subordinates of Arocho. However, she failed to incorporate the same into the Presley inquiry.

54.   The Presley investigation concluded within 72 hours of its initiation without any input from Giannakova or Tsahrides

55.   It took Pepperidge Farms' HR Department virtually three (3) weeks to follow-up and investigate Giannakova's and Tsaharides' allegations. Nevertheless, Defendants' continue to disingenuously assert that they pursued a prompt and thorough investigation of all Plaintiffs' claims.

PLAINTIFFS

BY /s/ John I. Bolton
John I. Bolton, Esq. Ct 08892
The Bolton Law Firm, P.C.
360 Fairfield Avenue, Suite 200
Bridgeport, CT 06604-3911
Telephone: (203) 362-1955
Facsimile: (203) 362-1954
Their Attorney

**CERTIFICATION**

It is hereby certified that a copy of the foregoing was hand delivered this 23rd day of April, 2004 to all counsel of record and pro se parties, as follows:

Patricia E. Reilly
Elizabeth K. Andrews
TYLER COOPER & ALCORN, LLP
205 Church Street
New Haven, CT 06509-1910

/s/ John I. Bolton
John I. Bolton, Esq. ct08892