UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| TWANYA PRESLEY, MARINA GIANNAKOVA and SOFIA TSAHARIDES | * * * * * | CIVIL ACTION<br><br>NO: 3:02CV2157(AVC) |
| Plaintiffs, | * * | |
| v. | * * | |
| PEPPERIDGE FARM, INC., a subsidiary of THE CAMPBELL SOUP COMPANY, THE CAMPBELL SOUP COMPANY and ROBERT AROCHO, Individually | * * * * * | |
| Defendants. | * | MAY 11, 2004 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, Pepperidge Farm, Inc., Campbell Soup Company and Roberto Arocho, submit this Reply to Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Opposition"). Plaintiffs have conceded that summary judgment should be granted on Counts Nine and Fourteen as to both Plaintiffs and on Count Five as to Sofia Tsaharides ("Tsaharides"). Plaintiffs[1] have failed to raise any issue of material fact as to the remaining counts, Counts One through Eight, Ten through Thirteen, and Fifteen. Therefore, for the reasons set forth in Defendants' Memorandum in Support of their Motion for Summary Judgment and in this Reply, summary judgment should be granted on all counts of the Complaint.

---

[1] Defendants' Motion for Summary Judgment has been opposed only by Plaintiffs Twanya Presley and Sofia Tsarahides. Plaintiff Marina Giannakova has filed a motion for voluntary dismissal, which is pending.

1

I. **ADDITIONAL UNDISPUTED FACTS SUPPORT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants' Supplemental Local Rule 56(a)1 Statement of Material Facts Not in Dispute (hereafter "Supp. Facts at ¶ ___") is hereby incorporated by reference.

II. **SUMMARY JUDGMENT SHOULD BE GRANTED ON ALL COUNTS BECAUSE PLAINTIFFS HAVE FAILED TO SUBMIT A LOCAL RULE 56(a)(2) STATEMENT**

Plaintiffs have failed to submit a statement that complies with Local Rule 56(a)(2). Summary judgment should therefore be granted on this basis alone. See Local Rule 56(a)(3).

III. **SUMMARY JUDGMENT SHOULD BE GRANTED ON THE AFFIRMATIVE DEFENSE**

In their Opposition, Plaintiffs contend that Defendants should not be able to avail themselves of the Ellerth/Faragher affirmative defense because (1) the Plaintiffs' supervisor, Defendant Roberto Arocho ("Arocho"), took a tangible employment action against them; (2) Defendants' sexual harassment policy was inadequate; and (3) the investigation was inadequate. Plaintiffs' arguments are unsupported by the law and the undisputed facts, and consequently summary judgment should be granted on the affirmative defense.

A. **PLAINTIFFS SUFFERED NO TANGIBLE EMPLOYMENT ACTION**

In Mormol v. Costco Wholesale Corp., 364 F.3d 54 (2d Cir. 2004), the Second Circuit Court of Appeals recently applied the definition of tangible employment action in a case remarkably similar to this one, holding that a series of employment actions, including the supervisor's marking the plaintiff tardy, were insufficient as a matter of law to establish a tangible employment action. The court stated:

> A tangible employment action, as defined by the Supreme Court, "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Ellerth, 524 U.S. at 761, 118 S.Ct. 2257. "A tangible employment action in most cases inflicts direct economic harm," id. at 762, 118 S.Ct. 2257, but "there is no requirement that it *must* always do so," Jin v. Metro. Life Ins. Co., 310 F.3d 84, 97 (2d Cir. 2002) (holding that the plaintiff suffered a tangible employment action where she avoided economic harm by submitting to the supervisor's sexual advances).

Mormol v. Costco Wholesale Corp., 364 F.3d at 54,*3.

In Mormol, the plaintiff claimed that the following actions constituted tangible employment actions: (1) being called back early from a scheduled unpaid vacation in Santo Domingo; (2) having her working hours reduced during one week from a seven-day work schedule promised by her supervisor; and (3) being given a disciplinary notice, ostensibly for being five minutes late in returning from a break. In affirming summary judgment on the affirmative defense for the employer defendant, the court stated, "Whether taken singly or in combination, the actions allegedly taken by Costco do not rise to the level of a 'significant change in employment status,' as described by the Supreme Court. . . ." Id. at *4.

The affirmative defense is unavailable to employers "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Faragher v. City of Boca Raton, 118 S.Ct. 2275, 2278 (1998). However, a complaint of sexual harassment does not deny the employer of the affirmative defense where the supervisor was not the decisionmaker. Fierro v. Saks Fifth Ave., 13 F. Supp. 2d 481, 491 (S.D.N.Y. 1998).

3

Plaintiff Twanya Presley ("Presley") alleges that the following actions constitute tangible employment actions taken against her: denial of a promotion to Quality Assurance Technician; being forced to "interface" with her supervisor; being marked tardy once; having to fill out a timesheet one week; and being told by a co-worker that he had overheard her supervisor's wife making a threat against her. She also asserts that she was constructively discharged and implies that the constructive discharge was a tangible employment action. As a matter of law, none of these allegations is sufficient to establish a tangible employment action.

First, as the undisputed facts show, Quality Assurance Manager Steven White was solely responsible for the decision not to choose Presley for the position of Quality Assurance Technician, and he made that decision on the basis of objective factors. He did not speak with any supervisor regarding any of the candidates' prior job performance, including Ms. Presley's. See Defendants' Rule 56(a)(1) Statement and Exhibit C to Memorandum of Law in Support of Motion for Summary Judgment at ¶¶ 15,16. There is absolutely no admissible evidence of record to indicate otherwise. Because the undisputed facts establish that Arocho had nothing to do with the decision, the affirmative defense is available to Defendants. Fierro v. Saks Fifth Ave., 13 F. Supp. 2d at 491; see also Reed v. State of Connecticut, 161 F.Supp. 2d 73, 81 (D. Conn. 2001) (granting summary judgment on failure to promote claim).

Second, as a matter of law, constructive discharge is not a tangible employment action. Caridad v. Metro-North Commuter Railroad, 191 F.3d 283, 295 (2d Cir. 1999).[2]

---

[2] Nor has Presley established any of the elements of a constructive discharge claim. Without citing a single fact to establish any of the elements of a constructive discharge claim, her affidavit concludes that she was constructively discharged. See Ex. G to Opposition, Presley Aff. at ¶¶ 19-21 (she was marked tardy once; she continued to work

4

Third, as a matter of law, none of the other allegations is sufficient to establish a tangible employment action. See Mormol, supra.

Tsaharides alleges that on one occasion Arocho failed to offer her the opportunity to report to work. This allegation is unsupported by any admissible evidence, and it is therefore inadmissible to oppose a motion for summary judgment. See Local Rule 56(a)(3). In opposing a motion for summary judgment, a plaintiff may not rely on conclusory statements or mere contentions that the evidence in support of summary judgment is not credible. See Goenaga v. March of Dimes Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). Moreover, this one instance of alleged failure to offer Tsarahides work is insufficient to establish a tangible employment action. See Mormol, supra.

The undisputed facts are that as a supervisor, Roberto Arocho is and was responsible for staffing shifts in this department. When a production line is shut down for any reason, such as, for example, when a mechanical malfunction occurs, then Arocho will call the employees scheduled to work that line and attempt to reach them before their regular shift begins to tell them not to come in to work until the line is up and running again. Arocho recalls one occasion in late 2001 when a line on which Tsaharides was scheduled to work was shut down. Arocho called Tsaharides and the other employees scheduled to work that line to tell them that the line

---

with her supervisor.) These allegations are insufficient as a matter of law to support a claim of constructive discharge. See, e.g., Steston v. NYNEX Serv. Co., 995 F. 2d 355, 360 (2d Cir. 1993); Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d Cir. 1983) (disagreement with work plan); Cf. Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 89 (2d Cir. 1996) (allegations that supervisor repeatedly yelled at plaintiff in insulting terms and severely criticized her despite her strong performance were sufficient to overcome summary judgment on constructive discharge claim).

was shut down and that they should not report to work that day until noon instead of at the usual 8:42 a.m. start time. Although it was his standard procedure to call all of them, Arocho was unable to reach some of the employees because they had already left their homes to travel to work. See Supp. Facts at ¶ 7. Thus, Arocho's adherence to his standard procedure in dealing with a production line shut down could not constitute a tangible employment action. See Mormol, supra.

### B. DEFENDANTS' SEXUAL HARASSMENT POLICY WAS ADEQUATE TO PUT EMPLOYEES ON NOTICE THAT SEXUAL HARASSMENT WOULD NOT BE TOLERATED AND HOW TO MAKE A COMPLAINT

Plaintiffs' argument that the sexual harassment policy was inadequate is devoid of merit. It is undisputed that Defendants had a sexual harassment policy posted at the plant at all relevant times.[3] It is undisputed that the policy informed employees that sexual harassment was prohibited and that they could bring complaints, among other Company representatives, to Human Resources. It is further undisputed that Human Resources representatives walked the floor daily and often spoke with employees about various complaints they had. It is further undisputed that the complaint process worked as it was supposed to work in that once a complaint was made, it was investigated promptly and thoroughly. In fact, Presley testified that

---

[3] Plaintiffs seem to be arguing that there is a genuine issue of material fact in dispute because there is some "ambiguity" about exactly which version of the Company's sexual harassment policy was "effective" during the relevant time period. However, this is simply not the case. While Defendants did have different versions of their sexual harassment policy over the years, it is undisputed that it was always posted at the plant. See Exhibit E at ¶ 4 to Defendants' Memorandum in Support of their Motion for Summary Judgment. Further, all versions of the policy clearly stated what type of conduct is prohibited, set forth Company representatives to whom complaints could be made (including Human Resources), promised an investigation, and prohibited retaliation. Accordingly, Plaintiffs' "inadequate policy" argument lacks any factual basis, and certainly does not prevent summary judgment. Moreover, Plaintiffs' claim that there was some ambiguity about which version of the Company policy was in effect is in direct odds with the argument they make to support their misrepresentation cause of action that they reasonably relied to their detriment on the Company policy. See Complaint at Count Eight.

she knew she could have complained to Human Resources and admitted that had she complained, she might have stopped the alleged harassment sooner. See Supp. Facts at ¶3.

Plaintiff Presley claims that because she "informed [on August 3, 2001] Donald Miller, another supervisor at Pepperidge, of the situation", Presley Aff. at ¶ 7, Defendants cannot prevail on the affirmative defense. This argument is specious.

Presley admitted at her deposition that on August 3, 2001, when she spoke with Miller, she told Miller that the alleged harassment had stopped and that she had handled it. She further testified that the harassment had essentially stopped between August 3 and August 15 and reiterated that it had definitely stopped as of August 15. She also admitted that if she herself had gone to Human Resources earlier, Human Resources would have investigated it earlier. See Supp. Facts at ¶¶ 1-3.

If an employer finds that sexual harassment occurred, the remedy must be sufficiently calculated to end the harassment. Gonzalez v. Beth Israel Medical Center, 262 F. Supp. 2d 342, 355 (S.D.N.Y. 2003). Here, by Presley's own admissions, the harassment had already stopped by the time she mentioned it to Miller. Moreover, she stated nothing further happened between the time she mentioned it to Miller and the time she mentioned it to Vanessa Diggs, who reported it to her supervisor, Steven White, who in turn reported it to Human Resources. When Human Resources learned of Presley's allegations of harassment, it immediately undertook a prompt and thorough investigation, and found no corroboration for her allegations.

Because Defendants had a sexual harassment policy in place that informed employees that sexual harassment was prohibited and further informed employees how to make a complaint,

the Defendants have met the first prong of the affirmative defense. See Leopold v. Baccarat, Inc., 239 F.3d 243 (2d Cir. 2001); Caridad v. Metro-North Commuter Railroad, 191 F.3d 283 (2d Cir. 1999); Gonzalez v. Beth Israel Medical Center, 262 F. Supp. 2d at 342; Duviella v. Counseling Service of the Eastern District of New York, 2001 WL 17766158 (E.D.N.Y. 2001); Wahlstrom v. Metro-North Commuter Railroad Co., 89 F. Supp. 2d 506 (S.D.N.Y. 2000); Donovan v. Big Supermarkets, Inc., 1999 WL 615100 (S.D.N.Y. 1999); Fierro v. Saks Fifth Ave., 13 F. Supp. 2d at 491-92.

### C. THE INVESTIGATION WAS PROMPT AND THOROUGH

Plaintiffs claim the investigation was inadequate because (1) Presley allegedly reported on September 5, 2002, (the day after the investigation commenced) that two other women had been harassed by Arocho and that Maritza Allende (f/k/a Sanchez) ("Allende"), the Employee Relations Manager, allegedly failed to follow up timely on that report when it was made and (2) Allende allegedly had a personal relationship with an employee who was interviewed by Paul Macionus ("Macionus"), the Manager of Human Resources, in connection with the investigation, but who had no relevant information for the investigation.

First, the tape and "transcript" (which is uncertified and was apparently prepared by Plaintiffs' counsel's secretary) on which Plaintiffs rely for the proposition that Presley left a voice mail message for Allende on September 5, 2001, stating that Allende should speak with two other women, one of whom was Tsarahides, are inadmissible. See Local Rule 56(a)(3).

Second, even if the transcript of the tape were considered here, it is unavailing. The undisputed facts, including Presley's own admissions at her deposition, belie the allegation that

8

Presley gave Allende the names of two additional employees on September 5, 2001. Presley testified that she met with Allende and Macionus on Tuesday, September 4, 2001, at which time she told them for the first time about her allegations against Arocho. She further testified that she met with Allende on Friday of that week, when Allende told Presley that they had concluded their investigation and had found no corroboration for the allegations. Presley further testified that she learned of two other employees' (one of whom was Tsaharides) alleged problems with Arocho a week after she received the response from Allende. See Supp. Facts at ¶ 4. Allende and Macionus both testified that they received the names of the additional two employees on September 25, 2001. See Supp. Facts at ¶ 5. Given Presley's testimony, there is no way she could have left the voice mail message for Allende on September 5, 2001. Her contradictory statement in her affidavit does not negate her prior, sworn deposition testimony. "It is well settled that a party may not defeat [a motion for summary judgment] by submitting an affidavit that disputes his prior sworn testimony." Langman Fabrics v. Graff Californiawear, Inc., 160 F.3d 106, 112 (2d Cir. 1998).

The second allegation to the effect that Allende was having a personal relationship with an employee, Benjamin Bracetty ("Bracetty"), who was interviewed in connection with the investigation is also insufficient to defeat summary judgment on the affirmative defense. First, it was Macionus, not Allende, who interviewed Bracetty. Second, both Allende and Macionus testified that Bracetty's comment was irrelevant to the outcome of investigation.[4] See Supp.

---

[4] Macionus testified that he spoke with Bracetty to see if Bracetty could corroborate a statement that Arocho had made about Presley during Arocho's interview in the investigation. Arocho stated that Presley had brought in to work a photograph of herself in a leopard-print bikini and showed it to Arocho, Arocho's supervisor, Bracetty, and

Facts at ¶ 6.

Moreover, even if these allegations were true, they would be insufficient to undermine the overall prompt and thorough quality of Defendants' investigation. See Gonzalez, 262 F. Supp. 2d at 355. Indeed, even after months of discovery, Plaintiffs have yet to produce any corroboration of their claims. "If [plaintiff]—with the full subpoena power of the federal courts behind her—could not uncover such evidence in the several months of discovery available to her, the Court is not inclined to conjecture that [the investigator] could have achieved better results [in the investigation]." Gonzalez, 262 F. Supp. 2d at 355. "Being left with a he/said, she/said situation, [the investigator] was left weighing the credibility of [the Plaintiff and the alleged harasser], in the absence of any corroborating evidence." Duviella, 2001 WL 1776158 at * 13 (granting summary judgment on affirmative defense and finding that investigation had been prompt and thorough).

Because Defendants conducted a prompt and thorough investigation, summary judgment should be granted on the affirmative defense.

### D. PLAINTIFFS FAILED TO TAKE ADVANTAGE OF THE PREVENTIVE AND CORRECTIVE MEASURE PROVIDED BY DEFENDANTS OR TO AVOID HARM OTHERWISE

Plaintiffs utterly fail to explain why they did not report the alleged harassment to Human Resources. Presley cannot claim that she believed her complaint would not be investigated, because her own deposition testimony is to the contrary. See Supp. Facts at ¶ 3. (If she had

---

others. Macionus further testified that both Bracetty and Arocho's supervisor corroborated Arocho's statement. They had seen the photograph as well. See Supp. Facts at ¶ 6.

gone to Human Resources, they would have investigated earlier). Tsaharides offers no explanation for her failure to report the harassment. Even if they claimed they were afraid or that their concerns would not be taken seriously, such allegations would be insufficient as a matter of law to excuse them from making a complaint to Human Resources. See Caridad, 191 F.3d at 295; Leopold, 239 F.3d at 246 (plaintiff's unsubstantiated belief that her complaint would not be investigated is not an excuse for her failure to report the harassment).

## IV. PRESLEY HAS FAILED TO ESTABLISH AN ADVERSE EMPLOYMENT ACTION FOR HER RETALIATION CLAIM

Adverse employment action has been defined broadly to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999). Presley claims she was retaliated against by being marked tardy and being made to fill out timesheets one week. See Section III (c) of Plaintiffs' Opposition. These allegations fail as a matter of law to establish the element of an adverse job action necessary for a claim of retaliation.

## V. THE STATE LAW CLAIMS FAIL AS A MATTER OF LAW

Plaintiffs' arguments with respect to their state law claims are so totally lacking in merit that they barely require a response. Nevertheless, a few points must be addressed.

First, Plaintiffs have continued to assert a claim of negligent infliction of emotional distress even though that claim has been barred by the Connecticut Supreme Court in cases such as this one where there has been no termination of employment. See Perodeau v. City of

11

Hartford, 259 Conn. 729, 748 (2002). Plaintiffs' Opposition fails completely to address this controlling precedent.

Second, the record is devoid of evidence of extreme and outrageous conduct sufficient to sustain a claim of intentional infliction of emotional distress, and summary judgment must be granted on this claim as a matter of law.

Third, Plaintiffs' misrepresentation claim fails to allege even a prima facie case, and their Opposition fails to shed any clarity on their apparently unique legal theory. Moreover, to the extent Plaintiffs argue that their state law misrepresentation cause of action is based on their reasonable reliance on Defendants' sexual harassment policy, they are undermining their claim that Defendants had no such policy, or that they did not know which policy was in effect.

Finally, Plaintiffs' civil conspiracy claim is beyond ridiculous. They have utterly failed to establish any element of a prima facie case of civil conspiracy. Their argument seems to be that because Defendants' in-house counsel has vigorously defended his clients against Plaintiffs' meritless claims ever since Plaintiffs filed complaints with the CHRO, he is involved in a civil conspiracy. In their desperation to support an insupportable claim, Plaintiffs appear to go so far as to make the baseless, false and outrageous accusation that Defendants made misrepresentations to the CHRO.[5] Nothing supports these allegations or this claim, and

---

[5] Plaintiffs' rambling and incoherent allegations and arguments are, to say the least, difficult to comprehend, but they appear to be trying to make a connection between Defendants' CHRO response and the conspiracy claim. Plaintiffs have attached an uncertified, unauthenticated copy of Defendants' CHRO position statement (which contains unidentified handwritten notations) as an exhibit to their Opposition brief. Although this document should not be considered in opposition, see Local Rule 56(a)(3), even if this Court were to consider it, it completely undermines Plaintiffs' ludicrous civil conspiracy theory in that it shows that Defendants have maintained a consistent position in defending against Plaintiffs' sexual harassment claims from the beginning.

Plaintiffs' refusal to withdraw this claim is grounds for Rule 11 sanctions. Accordingly summary judgment must be granted on the civil conspiracy claim.

## VI.    CONCLUSION

For these reasons and those set forth in Defendants' Memorandum of Law in Support of their Motion for Summary Judgment dated January 30, 2004, summary judgment should be granted as to Defendants on all counts of the Complaint.

                THE DEFENDANTS,

                PEPPERIDGE FARM, INC., A SUBSIDIARY OF CAMPBELL SOUP COMPANY, CAMPBELL SOUP COMPANY AND ROBERTO AROCHO, INDIVIDUALLY

                By: /s/ Patricia S. Reilly
                Patricia E. Reilly ct08352
                TYLER COOPER & ALCORN, LLP
                205 Church Street
                New Haven, Connecticut 06509-1910
                Phone: (203)-784-8233
                Fax:   (203) 865-7865
                E-mail: Reilly@tylercooper.com

                      -- Their Attorneys --

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been sent via first class mail, postage prepaid to all counsel and pro se parties of record as follows:

John I. Bolton, Esquire
The Bolton Law Firm
360 Fairfield Avenue, Suite 200
Bridgeport, Connecticut 06604

on this 11th day of May 2004.

_____
Patricia E. Reilly ct08352