UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

* * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| TWANYA PRESLEY, MARINA GIANNAKOVA and SOFIA TSAHARIDES | * | CIVIL ACTION |
|  | * | NO: 3:02CV2157(AVC) |
| Plaintiffs, | * |  |
| v. | * |  |
| PEPPERIDGE FARM, INC., a subsidiary of THE CAMPBELL SOUP COMPANY, THE CAMPBELL SOUP COMPANY and ROBERT AROCHO, Individually | * |  |
| Defendants. | * | MAY 11, 2004 |

* * * * * * * * * * * * * * * * * * * * * * * * *

## SUPPLEMENTAL LOCAL RULE 56(a)1 STATEMENT OF MATERIAL FACTS

1.      The alleged harassment against Presley began on August 1, 2001 had essentially stopped between August 3 and August 15 and had definitely stopped as of August 15. When Presley put Roberto Arocho ("Arocho") "in his place", the harassment stopped. See Deposition of Twanya Presley (hereafter "Presley Dep."), Vol. I at pp. 148, ll. 18-22; 149, ll. 12-18; 152, l. 25 - 153, l. 2; 163, ll. 1-4; 163, l. 25 - 164, l. 6; 164, ll. 23-25; 182, ll. 14-16; 187, ll. 5-14, attached hereto as Exhibit A.

2.      On August 3, 2001 when Presley spoke with Miller, she told Miller that the harassment had stopped and that she had handled it. See Presley Dep., Vol. I at p. 149, ll. 12-18, attached hereto as Exhibit A.

1

3.      If Presley had gone to Human Resources earlier, Human Resources would have investigated the alleged harassment earlier. See Presley Dep., Vol. I at p. 165, ll. 19-24, attached hereto as Exhibit A.

4.      Presley met with Allende and Macionus on Tuesday, September 4, 2001, at which time she told them about her allegations against Arocho. Presley met with Allende again on Friday of that week (September 7, 2001), when Allende told Presley that they had concluded their investigation and had found no corroboration for her allegations. Presley learned of two other employees' (one of whom was Tsaharides) alleged problems with Arocho a week after she received that response from Allende. See Presley Dep., Vol. II at pp. 226, l. 6 - 229, l. 20, attached hereto as Exhibit A.

5.      Allende and Macionus received the names of the additional two employees on September 25, 2001. See Deposition of Maritza Allende ("Allende Dep.") at pp. 142, l. 10 - 144, l. 12, attached hereto as Exhibit B; Deposition of Paul Macionus ("Macionus Dep."), Vol. I at pp. 167, l. 23 - 168, l. 10, attached hereto as Exhibit C.

6.      It was Macionus, not Allende, who interviewed Benjamin Bracetty ("Bracetty"). Macionus spoke with Bracetty to see if Bracetty would corroborate a statement that Arocho had made about Presley during Arocho's interview in the investigation. Arocho stated that Presley had brought in to work a photograph of herself in a leopard-print bikini and showed it to Arocho, Arocho's supervisor, Kurt Selner, and Bracetty. Both Bracetty and Arocho's supervisor corroborated Arocho's statement. They had seen the photograph as well. Bracetty's input was irrelevant to the outcome of the investigation. See Macionus Dep., Vol. II. at pp. 31, l. 6 - 35, l. 22, attached hereto as Exhibit C.

2

7.      As a supervisor, Roberto Arocho is and was responsible for staffing shifts in his department. When a production line is shut down for any reason, such as, for example, when a mechanical malfunction occurs, then Arocho will call the employees scheduled to work that line and attempt to reach them before their scheduled start time to tell them not to come in to work until the line is up and running again. Arocho recalls one occasion in late 2001, when a line on which Plaintiff Sophia Tsaharides was scheduled to work was shut down. Arocho called Tsaharides and the other employees scheduled to work that line to tell them that the line was shut down and that they should not report to work that day until noon instead of at the usual 8:42 a.m. start time. Although it was his standard procedure to call all of them, Arocho was unable to reach some of the employees because they had already left their homes to travel to work. See Affidavit of Roberto Arocho, attached hereto as Exhibit D.

THE DEFENDANTS,

PEPPERIDGE FARM, INC., A SUBSIDIARY OF CAMPBELL SOUP COMPANY, CAMPBELL SOUP COMPANY AND ROBERTO AROCHO, INDIVIDUALLY

By: _____
Patricia E. Reilly ct08352
TYLER COOPER & ALCORN, LLP
205 Church Street
New Haven, Connecticut 06509-1910
Phone: (203)-784-8233
Fax:    (203) 865-7865
E-mail: Reilly@tylercooper.com

-- Their Attorneys --

3

# EXHIBIT A

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - x
                            :

TWANYA PRESLEY, MARINA GIANNAKOVA,
SOFIA TSAHARIDES,               :

          Plaintiffs,    :

                          :  Civil Action
        vs.            :  No. 302CV2157
                             (AVC)
PEPPERIDGE FARMS, INC., a subsidiary :
of the CAMPBELL SOUP COMPANY,
ROBERTO AROCHO, Individually,    :

          Defendants.    :

- - - - - - - - - - - - - - - - - - - - - x

        Deposition of TWANYA PRESLEY, taken

pursuant to the Federal Rules of

Civil Procedure, at the law offices of

Tyler Cooper & Alcorn, 205 Church Street,

New Haven, Connecticut, before Janet C.

Phillips, License #00124, a Registered

Professional Reporter and Notary Public in

and for the State of Connecticut, on

Wednesday, April 23, 2003, at 9:40 a.m.

SCRIBES, INC.

3

4

147

148

```
 1
 2
 3                                                        l
 4
 5
 6
 7                                                        1
 8                                                        l
 9
10                                                        '
11
12
13
14
15
16
17
18        Q.    And then on the 3rd when this thing happened
19   with Mr. Arocho grabbing his genitals, did you tell
20   anybody else on August 3rd about what had happened?
21        A.    I didn't tell no one that day except Donald
22   Miller what was going on.
23
24
25
```

149

```
1
2
3
4
5
6
7
8
9
10
11
12      Q.    And then when you went back to him later in
13  the day, did you tell him what Mr. Arocho had done on
14  the 3rd?
15      A.    That's correct, yes.
16      Q.    And what did he say to you at that time?
17      A.    He said, "Don't you think you need to go to
18  HR?" And I said, "I think I handled it."
19
20
21
22
23
24
25
```

SCRIBES, INC.

150

151



```
1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25      Q.    Okay.  So basically between August 3rd and
```

SCRIBES, INC.

153
154
155
156

1   August 15th, he left you alone?

2      A.   That's correct.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

163

1   Q.   Okay.  So as far as you were concerned, had

2   this inappropriate behavior stopped as of August 15?

3   After August 15, had it stopped?

4       A.   I should say so, yes.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25       Q.   So that was July.  So is it fair to say that

164

1   you believe the real offensiveness started on

2   August 1st, or maybe it was -- yes, August 1st, with

3   that very first incident in the supervisor's office

4   where he touched your arm, would you say that was the

5   first incident which you considered to be offensive?

6       A.   Yes, that's correct.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   Q.   And at that time, the offensiveness, the real

24   offensive things started on August 1st, right?

25       A.   That's correct.

165

166

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18    ...    ...    .    .    .

19    Q.    In retrospect, you know, now that you sit

20    here today, do you wish you had gone earlier to HR?

21    A.    Yes, I do.

22    Q.    Do you think that if you had gone earlier,

23    they would have investigated it right away?

24    A.    Yes.

25    Q.    So now we're getting back to -- it was either

SCRIBES, INC.

167

168

182

14      Q.   He hadn't bothered you since August 15th was
15   the last incident, right?
16      A.   Exactly.

187

188

5      Q.    And when you sit here now today, you don't
6   consider what happened to you in July to be offensive,
7   do you?
8      A.    I feel it was the start of something that I
9   could have probably avoided, tried to avoided if I put
10   him in his place first.  So that's what I'm feeling
11   now.
12      Q.    Is that because when you finally did put him
13   in his place, he stopped?
14      A.    Exactly.
15
16
17
18
19
20
21
22
23
24
25

VOLUME II

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - x
                                          :
TWANYA PRESLEY, MARINA GIANNAROVA,        :
SOFIA TSAHARIDES,
                                          :
          Plaintiffs,                     :
                                          :    Civil Action
          vs.                             :    No. 302CV2157
                                               (AVC)
PEPPERIDGE FARMS, INC., a subsidiary      :
of the CAMPBELL SOUP COMPANY,
ROBERTO AROCHO, Individually,             :

          Defendants.                     :

- - - - - - - - - - - - - - - - - - - - - x


          Continued deposition of TWANYA PRESLEY,

     taken pursuant to the Federal Rules of

     Civil Procedure, at the law offices of

     Tyler Cooper & Alcorn, 205 Church Street,

     New Haven, Connecticut, before Janet C.

     Phillips, License #00124, a Registered

     Professional Reporter and Notary Public in

     and for the State of Connecticut, on Tuesday,

     June 3, 2003, at 10:10 a.m.


                    SCRIBES, INC.

225

226

Q.   Okay.   Now, in this meeting when you were
speaking with Maritza and she told you nobody
corroborated your story, that's when she gave you the
statement and you told her that you didn't agree with
it, did you ask her to make some changes to make the
statement accurate?

A.   She said -- I said "Well, this date is
wrong," so she changed some dates on it.   And then I
said to her, I said, "Look, Maritza," I said, "it's too
much going on right now."   I said, "Let me go over it
with my lawyer because I'm confused about this," this
whole situation and making sure I'm doing the right
thing 'cause I just felt that no one was helping me.   I
mean, I felt I had to beg Paul, beg him to move me.
And I just felt I had no backup.   So I wasn't sure
about the whole statement.   So I just wanted to get
this statement just looked at before I signed anything.

Q.   And did she say that's fine?

A.   She says well, why do you have to -- she
said, "But if you wrote this, why can't you sign it?"

227

And I said, "Well, I need my attorney to help me look
over it."   It was like a big issue.

And I said, "Just make me a copy so I can
give it to him."   So she made me a copy.   And she said
all right, but are you gonna have it back, like they
wanted it quick.   I said, "When I talk to my lawyer,
I'll give it back to you."   And that's when this all
started.

Q.   When did she make the changes?   In the
meeting where you told her it wasn't accurate, did she
make the changes right then and there in that meeting?

A.   When we were going over it the second day?

Q.   Right, when Roberto was in Paul's office?

A.   She had it on her computer.

Q.   So she made the changes right there that same
day?

A.   I believe so..   She was doing something on the
computer and I seen the statement.

Q.   That's when she printed it out with the
changed date on it?

A.   That's correct.

Q.   And you said you wanted to give it to your
lawyer?

A.   That's correct.

Q.   And you never did sign the statement, is that

228

correct?

A.   That's correct.

Q.   When did you learn that Marina Giannakova and
Sofia Tsaharides had problems with Roberto Arocho?

A.   Okay.   I don't know if it was a week later,
after I got my response back, or was it -- 'cause that
was on a Friday, so that following week, I was walking
to my car.

Q.   After you got your response back.   You mean
the meeting with Maritza where she told you no
corroboration?

A.   Exactly.

Q.   And then a week later what happened?

A.   I believe it was a week later.   I'm not sure
of the date.

Q.   Okay.

A.   But Terry Kydes met me in the parking lot.
And I said, "What's going on, Terry?"   He said, "You
won't believe this."   And I said "What?"   And he said,
"Not only did Roberto mess with you, but Marina and
Sofia has a story."   And I said, "Who are they?"   He
said, "You know Marina, the tall skinny girl?"   I said,
"Oh, okay that works on a.m., too."   And he was like
"Yes."   And he said "Sofia."   I said, "I can't recall
Sofia."   He said, "She always works in rolls."   I said,

1   "I don't know her." He said, "That's my cousin." He
2   said, "Do you mind if I get in your car?" I said, "Yes
3   come on." He got in the car.
4           He said, "Well, I wanted to tell you that
5   they have a story for you, too." And I was like "Is
6   this what you were saying to me outside that day after
7   I, you know, got the response?" And he was like, "Yes,
8   but I never got around to you."
9       Q.   Just back up there. After you -- you mean
10  after you got the no corroboration -- after the meeting
11  with Maritza where she told you know corroboration?
12      A.   Uh-huh.
13      Q.   You talked with Terry right after that
14  meeting?
15      A.   He was outside. I wasn't even out.
16      Q.   And did you talk with him?
17      A.   I didn't get to talk to him. He said he has
18  something to tell me, he'll get back to me. So I
19  didn't even know, like what is he talking about. I
20  said, "Oh, so this is what you have to say?"
21
22
23
24
25

352

353

C E R T I F I C A T E

       I hereby certify that I am a Notary Public,
in and for the State of Connecticut, duly commissioned
and qualified to administer oaths.

       I further certify that the deponent named in
the foregoing deposition was by me duly sworn, and
thereupon testified as appears in the foregoing
deposition; that said deposition was taken by me
stenographically in the presence of counsel and reduced
to typewriting under my direction, and the foregoing is
a true and accurate transcript of the testimony.

       I further certify that I am neither of
counsel nor attorney to either of the parties to said
suit, nor am I an employee of either party to said
suit, nor of either counsel in said suit, nor am I
interested in the outcome of said cause.

       Witness my hand and seal as Notary Public
this _____ day of _____, 2003.

                              _____
                              Janet C. Phillips
                              Notary Public
                              CSR License #00124

My Commission expires:
October 31, 2004

# EXHIBIT B

1

2

3

4

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
----------------------X
TWANYA PRESLEY, MARINA GIANNAKOVA :
and SOFIA TSAHARIDES                :
                                    : NO. 3:02CV2157 (AVC)
         VS                         :
                                    : AUGUST 28, 2003
PEPPERIDGE FARMS, INC. a subsidiary :
of THE CAMPBELL SOUP COMPANY, THE   :
CAMPBELL SOUP COMPANY               :
----------------------X
```

5

6

7

8

9

10

DEPOSITION OF MARITZA ALLENDE

11

12

APPEARANCES:

13

14

    FOR THE PLAINTIFF:

15

        JOHN BOLTON, ESQ.
        350 FAIRFIELD AVENUE, SUITE 200
        BRIDGEPORT, CONNECTICUT 06604

16

17

    FOR THE DEFENDANT:

18

        PATRICIA E. REILLY, ESQ.
        TYLER, COOPER & ALCORN
        205 CHURCH STREET
        NEW HAVEN, CONNECTICUT 06509-1910

19

20

        MARTIN CHAZIN, ESQ.
        IN HOUSE COUNSEL
        THE CAMPBELL SOUP COMPANY
        CAMPBELL PLACE
        CAMDEN, NEW JERSEY 08103-1799

21

22

23

24

        SHIRLEY SAMBROOK - LICENSED COURT REPORTER
               203 259-5903

25

141

142

143

1  normally do.

2  Q  Just kept evolving?

3  A  Yes.

4      MR. BOLTON: Okay. Now we'll put the tape

5  on.

6      (Whereupon the tape playing commenced at

7  4:27 p.m.until 4:28 p.m.)

8  Q  Did you catch the date on that message?

9  A  No. What was it?

10  Q  Would you like to hear it again?

11  A  I just missed the date. I'm sorry.

12  Q  It says Wednesday, September 5.

13  A  Wednesday, September 5?

14  Q  Right.

15      MS. REILLY: What says that?  Play it

16  again.

17      MR. CHAZIN: Do you want her to testify what

18  the tape said?  The tape says what it said.

19      (Whereupon the tape was again played- 4:29

20  p.m. - 4:30 p.m.)

21  A  That first voice is my voice?

22  Q  Is it?

23  A  No. I just couldn't --     I didn't remember that

24  but that couldn't be because we met with Twanya on

25  September 24th and that call was right after, which would

144

1  have been Tuesday, September 25.  So, I must have gotten

2  the date wrong on the tape.

3  Q  And the day of the week too?

4  A  That could have been it. But, we met with her on

5  this date and this information, the additional information,

6  that Twanya provided, was the following date.

7  Q  Is it possible that the day after Twanya came in

8  and made her initial complaint, that the rumor mill started

9  to crank up at Pepperidge Farms and two other women came

10  forward the day after?

11      MS. REILLY: Objection.

12  A  It couldn't be the date right after.

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10  Q  And the statements and the dates and everything

11  that appear in the internal investigation, were they made

12  around the time that the events happened? In other words,

13  in other words, did you type up the events of September 4

14  on September 4?

15  A  The information, on that exact date?

16  Q  Yes.

17  A  Oh, no. No. Not on the exact date. It could

18  have been the next day.

19  Q  Okay. But it wasn't done all on the 24th, was

20  it?

21  A  Oh, no. No. No. Not that I remember. No.

22  Q  So, you didn't --     You think it was

23  incrementally?

24  A  Yes. It could have been as we were having the

25  meetings, I could have been typing them up. That's what I

205

206

## CERTIFICATION

1

STATE OF CONNECTICUT :
2                                    ss:  Bridgeport

COUNTY OF FAIRFIELD   :
3

4          I, Shirley Sambrook, a Notary Public duly
5    commissioned and qualified in and for the County of
    Fairfield, State of Connecticut, do hereby certify that
6    pursuant to agreement of counsel there came before me on
    the 28th day of August, 2003 at the offices of Tyler,
7    Cooper & Alcorn, Landmark Square, Stamford, Connecticut,
    the following named person, to wit, MARITZA ALLENDE, who
8    was by me duly sworn to testify to the truth and nothing
    but the truth of her knowledge touching and concerning the
9    matters in controversy in this cause; that she was
    thereupon carefully examined upon her oath, and her
10   testimony reduced to writing under my supervision, that the
    deposition is a true record of the testimony given by the
11   witness.

12         I further certify that I am neither attorney or
    counsel for, nor related to or employed by any of the
13   parties to the action in which this deposition is taken,
    and further that I am not a relative or employee of any
14   attorney or counsel employed by the parties thereto or
    financially interested in the action.

15         In witness thereof, I have hereunto set my hand and
16   affixed my notarial seal this ___ day of August,
    2003.
17

My Commission Expires:
18

19      2008                          _____
                                     SHIRLEY SAMBROOK
20                                    Notary Public

21

22

23

24

25

# EXHIBIT C

1          UNITED STATES DISTRICT COURT

2            DISTRICT OF CONNECTICUT

3
- - - - - - - - - - - - - - - - -X
4
TWANYA PRESLEY, MARINA GIANNAKOVA  :
5 AND SOFIA TSAHARIDES
                                   : NO. 3:02CV2157 (AVC)
6           VS
                                   : AUGUST 7, 2003
7 PEPPERIDGE FARMS, INC. a subsidiary:
8 OF THE CAMPBELL SOUP COMPANY,      :
THE CAMPBELL SOUP COMPANY          :
9 - - - - - - - - - - - - - - - - -X

10

11          DEPOSITION OF PAUL MACIONUS

12

13 APPEARANCES:

14      FOR THE PLAINTIFFS:

15          JOHN BOLTON, ESQ.
            360 FAIRFIELD AVENUE, SUITE 200
16          BRIDGEPORT, CONNECTICUT 06604

17

18      FOR THE DEFENDANTS:

        TYLER, COOPER & ALCORN, LLP
19      PATRICIA E. REILLY, ESQ.
        ELIZABETH ANDREWS, ESQ.
20      205 CHURCH STREET
        NEW HAVEN, CONNECTICUT 06509-1910
21
        MARTIN D. CHAZIN, ESQ.
22      IN HOUSE COUNSEL
        THE CAMPBELL SOUP COMPANY
23

24      SHIRLEY SAMBROOK - LICENSED COURT REPORTER
                203  259-5903
25

165

167

22
23    Q    When did you find out about Marina and Sofia?
24    A    25th of September.
25    Q    And how did you come to find out about their

166

168

allegations?
1
2    A    Maritza called me.  She came to my office and
told me that she had gotten a voice mail.
3    Q    Who did she get the voice mail from, if you know?
4
5    A    I don't recall off hand.  She just mentioned two
6    names.
7    Q    Did you know these employees at all?
8    A    Oh, yeah.  I knew who they were.  Sure.
9    Q    You did?  And what did you tell Maritza to do?
10    A    Investigate it.  Talk to these people.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

189

191

190

192

1    <u>CERTIFICATION</u>

2    STATE OF CONNECTICUT :
                                ss: Bridgeport
3    COUNTY OF FAIRFIELD    :

4          I, Shirley Sambrook, a Notary Public duly
5    commissioned and qualified in and for the County of
     Fairfield, State of Connecticut, do hereby certify that
6    pursuant to agreement of counsel there came before me on
     the 7th day of August, 2003 at the offices of John Bolton,
7    Esq., 360 Fairfield Avenue, Bridgeport, Connecticut, the
     following named person, to wit, PAUL MACIONUS, who was by
8    me duly sworn to testify to the truth and nothing but the
     truth of his knowledge touching and concerning the matters
9    in controversy in this cause; that he was thereupon
     carefully examined upon his oath, and his testimony reduced
10   to writing under my supervision, that the deposition is a
     true record of the testimony given by the witness.

11         I further certify that I am neither attorney or
12   counsel for, nor related to or employed by any of the
     parties to the action in which this deposition is taken,
13   and further that I am not a relative or employee of any
     attorney or counsel employed by the parties thereto or
14   financially interested in the action.

15         In witness thereof, I have hereunto set my hand and
     affixed my notarial seal this _3_5_ day of _August_
16   2003.

17   My Commission Expires:              _____
                                         SHIRLEY SAMBROOK
18         2008                          Notary Public

19

20

21

22

23

24

25

3

1              UNITED STATES DISTRICT COURT

2                 DISTRICT OF CONNECTICUT

3

4       ------------------------X
TWANYA PRESLEY, MARINA GIANNAKOVA, :
5       SOFIA TSAHARIDES
                                    : NO. 3:02CV2157 (AVC)
6             VS
                                    : AUGUST 8, 2003
7       PEPPERIDGE FARMS, INC., subsidiary :
        of THE CAMPBELL SOUP COMPANY and
8       THE CAMPBELL SOUP COMPANY      :
        ------------------------X
9

10

11             DEPOSITION OF PAUL MACIONUS
                        VOLUME II

12

13      APPEARANCES:

14          FOR THE PLAINTIFFS:

15             JOHN BOLTON, ESQ.
               360 FAIRFIELD AVENUE, SUITE 200
16             BRIDGEPORT, CONNECTICUT 06604

17

18          FOR THE DEFENDANTS:

19             TYLER, COOPER & ALCORN, LLP
               PATRICIA E. REILLY, ESQ.
20             ELIZABETH ANDREWS, ESQ.
               205 CHURCH STREET
21             NEW HAVEN, CONNECTICUT 06509-1910

22             MARTIN D. CHAZIN, ESQ.
               IN-HOUSE COUNSEL, CAMPBELL SOUP COMPANY
23             CAMPBELL PLACE
               CAMDEN, NEW JERSEY 08103-1799

24
          SHIRLEY SAMBROOK - LICENSED COURT REPORTER
25                      203  259-5903

2

4

29

31

```
1
2
3
4
5
6        Q    I don't mean to belabor this issue with you but
7    if you go back to that paragraph again with the Vanessa
8    Diggs comment and the dress.  At the very end where it's
9    referenced Selner and Bracetty?
10       A    Un-huh.
11       Q    Is that an editorial comment that was either put
12   in there by you or Maritza or is that something that
13   Roberto told you?
14       A    No.  This was substantiated.  We went out --
15       Q    Okay?
16       A    --and talked to them and they verified that.
17       Q    But that exact comment, a variation of it or
18   something like that, was said but not the way it is written
19   in there?
20       A    I'm talking about the fourth paragraph, where it
21   says substantiated by Kurt Selner and Ben Bracetty.
22   Reference to the photograph.
23       Q    Fourth from the bottom.
24       A    If you are saying that --
25       Q    Okay.
```

30

32

```
1        A    I went on out and talked to Kurt and I went out
2    and talked to Ben and they said something to that effect
3    was said.
4        Q    If they had said ver batim that's what they
5    heard, you would have used the word substantiated?
6        A    Right.
7        Q    But you chose not to and kind of left it
8    inconclusive, where they witnessed the remark?
9        A    Correct.
10       Q    Because it wasn't substantiated, you didn't feel
11   that you needed to give Twanya any kind of warning or
12   remind her or go over the policy with her?
13       A    No.
14       Q    Okay.  How about when Mr. Selner and
15   Mr. Bracetty substantiated a photograph that Miss Presley
16   brought into the plant, did you feel that that, by bringing
17   that in, any kind of warning or any kind of, warning is not
18   a fair word for you.  Let me withdraw that.  Did you feel
19   that that was an issue, this bringing in of the picture,
20   was an issue for HR to be concerned with?
21       A    No.  Did I feel it was --  it might have been
22   appropriate, inappropriate?  It might have been
23   inappropriate for somebody to walk around on the floor and
24   maybe show a photograph of them in a bathing suit.  But, I
25   mean, is it something that we are going to take issue
```

33

1    with? No. Absolutely not.

2        Q    Okay. So, it wasn't anything that came into

3    conflict with the established policies?

4        A    Code of conduct.

5        Q    Code of conduct. Right?

6        A    No.

7        Q    Okay. Did you feel that his comment to you

8    about the photograph was something that was relevant to

9    your investigation?

10       A    As far as the allegations are concerned, I would

11   say no.

12       Q    Was it something important enough to put into

13   this internal investigation?

14       A    It's part of the record.

15       Q    But it had –

16       A    Did it have any bearing on making a decision or

17   taking her to task on other issues, other than we were

18   simply investigating these allegations to see if in fact

19   these events did occur. If in fact the defendant,

20   Mr. Arocho, was in fact guilty of, again --

21       Q    The allegations?

22       A    Of those allegations that were shared.

23       Q    Okay.

24       A    Okay.

25       Q    And actually you asked it better than I was going

35

1    admitted by Roberto or, to determine whether or not he was

2    in violation of our harassment policy.

3        Q    Fair enough. And you are crystal clear on that?

4    Maybe it's my fault for not being clear as to what I'm

5    asking. So, let me take it in bites. By bringing in a

6    photograph of herself in a leopard bikini, as alleged by

7    Mr. Arocho, Twanya did nothing wrong, with regard to the

8    code of conduct, right?

9        A    In my opinion, no.

10       Q    And assuming, for the moment, that she did bring

11   it in, as Mr. Arocho reported to you, that had nothing to

12   do, though, with the mission of your investigation, though,

13   right?

14       A    I would say no, it had no bearing.

15       Q    Okay.

16       A    On our decision concerning those allegations.

17       Q    But you went and substantiated that comment and

18   went out of your way to look for Mr. Seiner and Bracetty to

19   confirm that allegation, right?

20       A    I just passed them on the floor. And it was in

21   my mind, did this in fact happen? Did this occur? They

22   said yes.

23

24

25

34

1    to. Did it have a bearing on the way that you and/or

2    Maritza investigated and handled the investigation?

3        A    It had nothing to do with the allegations.

4        Q    Okay.

5        A    So, that's why we said it was she came up with

6    certain allegations, we investigated those allegations.

7    This was just –

8        Q    I just want –

9        A    –additional information provided by Roberto.

10       Q    Okay. I just want to isolate on that one

11   paragraph. The point I am trying to ask you is, whether

12   or not -- I'm sorry.

13           MS. REILLY: Which one?

14           MR. BOLTON: I'm sorry. The fourth one from

15   the bottom. The bikini paragraph.

16       Q    Withdrawn. Let me start that over. Whether or

17   not she brought a photograph in had no bearing, in your

18   view, of this investigation, did it?

19       A    Concerning the allegations, no.

20       Q    And it wasn't relevant, right?

21       A    Whether or not it was relevant, I mean, it's part

22   of what was shared by Roberto when we were asking him

23   questions about these allegations and what had occurred in

24   the supervisor's office to try to find out if in fact any

25   of those allegations could be substantiated or were

93

```
1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

94

### CERTIFICATION

1
2   STATE OF CONNECTICUT :
                                    ss: Bridgeport
3   COUNTY OF FAIRFIELD  :

4           I, Shirley Sambrook, a Notary Public duly
5   commissioned and qualified in and for the County of
    Fairfield, State of Connecticut, do hereby certify that
6   pursuant to agreement of counsel there came before me on
    the 8th day of August, 2003 at the offices of John Bolton,
7   Esq., 350 Fairfield Avenue, Bridgeport, Connecticut, the
    following named person, to wit, PAUL MACIONUS, who was by
8   me duly sworn to testify to the truth and nothing but the
    truth of his knowledge touching and concerning the matters
9   in controversy in this cause; that he was thereupon
    carefully examined upon his oath, and his testimony reduced
10  to writing under my supervision, that the deposition is a
    true record of the testimony given by the witness.
11
            I further certify that I am neither attorney or
12  counsel for, nor related to or employed by any of the
    parties to the action in which this deposition is taken,
13  and further that I am not a relative or employee of any
    attorney or counsel employed by the parties thereto or
14  financially interested in the action.

15          In witness thereof, I have hereunto set my hand and
    affixed my notarial seal this ___ day of _____
16  2003.

17  My Commission Expires:     _____
                               SHIRLEY SAMBROOK
18          2008               Notary Public

19
20
21
22
23
24
25

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

* * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| TWANYA PRESLEY, MARINA GIANNAKOVA and SOFIA TSAHARIDES | * * * * | CIVIL ACTION |
|  | * | NO: 3:02CV2157(AVC) |
| Plaintiffs, | * * |  |
| v. | * * |  |
| PEPPERIDGE FARM, INC., a subsidiary of THE CAMPBELL SOUP COMPANY, THE CAMPBELL SOUP COMPANY and ROBERT AROCHO, Individually | * * * * |  |
| Defendants. | * | MAY 11, 2004 |

* * * * * * * * * * * * * * * * * * * * * * * *

## AFFIDAVIT OF ROBERTO AROCHO.

I, Roberto Arocho, being duly sworn, do hereby depose and say:

1.   I am over the age of eighteen and believe in the obligations of an oath.

2.   I am currently employed as Production Supervisor at Pepperidge Farm, Inc.'s ("Pepperidge Farm" or the "Company") Bloomfield, Connecticut bakery. I have worked for the Company since 1979 and have been a supervisor since 1993. I used to work at the Company's Norwalk, Connecticut bakery before moving to the new Bloomfield bakery when it opened (and the Norwalk bakery closed) in the Spring of 2003.

3.   As a supervisor, I am and have been responsible for staffing shifts in my department. When a production line is shut down for any reason, such as, for example, when a mechanical malfunction occurs on a piece of equipment, then I will call the employees regularly scheduled to work that line and attempt to reach them before their regular shift begins to tell them not to come in to work until the line is up and running again.

4.   I recall one occasion in late 2001 on which a production line on which Sophia Tsaharides was scheduled to work was shut down. I called Ms. Tsaharides and the other employees scheduled to work that line to tell them that the line was shut down and that they should not report to work that day until noon instead of at the usual 8:42 a.m. start time. Although it was my standard procedure to call all of

them, I was unable to reach some of the workers because they had already left their homes to travel to work.

Roberto Arocho

STATE OF CONNECTICUT  )
                       )
                       ) ss:  Bloomfield , Connecticut
                       )
COUNTY OF HARTFORD     )  May 11, 2004

Personally appeared, Roberto Arocho, who swore to and subscribed the above affidavit

before me, this 11 day of May 2004.

Commissioner of the Superior Court/Notary Public

**DOREEN M. CIACCIO**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES 02/28/2009

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been sent via first class mail, postage prepaid to all counsel and pro se parties of record as follows:

John I. Bolton, Esquire
The Bolton Law Firm
360 Fairfield Avenue, Suite 200
Bridgeport, Connecticut 06604

on this 11th day of May 2004.

Patricia E. Reilly ct08352