UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| TWANYA PRESLEY, MARINA | \* | CIVIL ACTION |
| GIANNAKOVA and SOFIA | \* | |
| TSAHARIDES | \* | NO: 3:02CV2157(AVC) |
| | \* | |
| Plaintiffs, | \* | |
| v. | \* | |
| | \* | |
| PEPPERIDGE FARMS, INC., a subsidiary | \* | |
| of THE CAMPBELL SOUP COMPANY, | \* | |
| THE CAMPBELL SOUP COMPANY and | \* | |
| ROBERT AROCHO, Individually | \* | |
| | \* | |
| Defendants. | \* | APRIL 18, 2005 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PARTIES' JOINT TRIAL MEMORANDUM

*The Defendants have based all components of this trial memorandum upon
their understanding of Plaintiff, Twanya Presley's claims based upon the facts and evidence
developed to date. Should circumstances require, Defendants respectfully reserve their right
to modify any and all portions of this trial memorandum.*

1.   **TRIAL COUNSEL:**

       **Plaintiff:**    John I. Bolton
                  The Bolton Law Firm
                  360 Fairfield Avenue, Suite 200
                  Bridgeport, Connecticut  06604

       **Defendants:**  Patricia E. Reilly ct08352
                  Elizabeth K. Andrews ct20986
                  Tyler, Cooper & Alcorn, LLP
                  205 Church Street, P.O. Box 1936
                  New Haven, Connecticut 06510-1910
                  Phone: (203) 784-8200
                  Facsimile: (203) 865-7865
                  E-mail: reilly@tylercooper.com
                  E-mail: eandrews@tylercooper.com

2.    **JURISDICTION:**

This Court's subject matter jurisdiction over this action arises out of Plaintiff's claims

under 42 U.S.C. § 2000e-5. This Court's personal jurisdiction arises pursuant to 28 U.S.C. §§

1391(b) and 1392(a).

3.    **JURY/NON-JURY:**

This case will be tried to a jury.

4.    **LENGTH OF TRIAL:**

**Plaintiff:**

The Plaintiff anticipates _____ full days of evidence to present her case.

**Defendants:**

The Defendants anticipate five (5) full days of evidence to present their case.

5.    **FURTHER PROCEEDINGS:**

Plaintiff:

Defendants:

The Defendants do not anticipate the need for further proceedings at this time, excluding

argument on potential motions in limine.

2.

6.    **NATURE OF CASE:**

**Plaintiff's Claims:**

**Defendants' Defenses and Claims:**

Summary Judgment has been granted in favor of the defendants with respect to all claims

brought by the plaintiff Sofia Tsharides. Summary Judgment has been granted in favor of the

defendants with respect to the plaintiff Twanya Presley's ("Ms. Presley") claims of retaliation,

negligent misrepresentation, civil conspiracy, negligent and intentional infliction of emotional

distress and her claim that she was constructively discharged. Ms. Presley's remaining claims

allege hostile work environment and gender discrimination based upon her claims of hostile

work environment harassment against Pepperidge Farm, Inc. ("Pepperidge Farm"), Campbell

Soup Company ("Campbell Soup") and Roberto Arocho ("Mr. Arocho").

At all times relevant to her Complaint, Ms. Presley was employed by Pepperidge Farm, a

subsidiary of Campbell Soup,[1] until her resignation in March 2002. Ms. Presley contends that

beginning in mid-July 2001, Mr. Arocho, her supervisor, began sexually harassing her by

allegedly committing the following random and sporadic acts: Mr. Arocho placed his hand on top

of hers and told her that she was attractive and that she had pretty hair, although Ms. Presley did

not find this act offensive. On another occasion in July, Mr. Arocho told her that he liked the

way she ate bread, but Ms. Presley believed that this comment was "innocent." On August 2,

2001, Mr. Arocho allegedly touched Ms. Presley's arm and told her that she had soft skin. On

---

[1]There is no separate basis alleged by which Campbell Soup is liable on any of Plaintiff's causes
of action, except that Plaintiff's employer, Pepperidge Farm, is a subsidiary of Campbell Soup.

3.

August 3, 2001, Mr. Arocho allegedly told Ms. Presley that she could "make a lot of money with her looks," and later that day, he gestured to and grabbed his genital area and asked "so Twanya, you don't want none of this?" Finally, Presley alleges that between August 3 and August 15, 2001, Mr. Arocho looked at her in a "menacing and flirtatious manner," and that on August 15, 2001, he touched her shoulder and said "hello," which she did not find offensive. Ms. Presley contends that these alleged actions created a hostile work environment because of her sex. Ms. Presley also contends that sometime in August of 2001, Mr. Arocho gave her a negative recommendation for a position in Pepperidge Farm's Quality Assurance ("QA") department, and that this constituted a tangible employment action. Ms. Presley contends that Pepperidge Farm and Campbell Soup are liable for Mr. Arocho's alleged conduct. Ms. Presley seeks money damages, including, but not limited to back pay and front pay.

The defendants deny all allegations regarding Ms. Presley's claims of hostile work environment and gender discrimination. The defendants further assert that Ms. Presley suffered no adverse employment action. Specifically, with regard to Ms. Presley's allegations that she did not receive the QA position because Mr. Arocho gave her a negative recommendation, the defendants assert that Mr. Arocho was never consulted regarding Ms. Presley's application for the QA job, nor did he provide any reference or recommendation for that position, negative or otherwise. Steven White made the decision not to promote Ms. Presley based on her qualifications as compared to those of the other candidates for the position. The defendants assert that Ms. Presley failed to take advantage of Pepperidge Farm's and/or Campbell Soup's complaint procedures and/or failed to otherwise avail herself of corrective or preventative measures reasonably available to her, of which she was aware. Pepperidge Farm and/or

4.

Campbell Soup fully investigated the complaints of discrimination and/or harassment alleged by

Ms. Presley. Pepperidge Farm and/or Campbell Soup took prompt and effective remedial action.

Additionally, the defendants assert that Ms. Presley is not entitled to back pay as an element of

damages, because Ms. Presley voluntarily resigned her position at Pepperidge Farm, and Ms.

Presley failed to mitigate her damages, if any.

## 7.    **TRIAL BY MAGISTRATE JUDGE:**

The Defendants do not agree to a trial by a Magistrate Judge. The Plaintiff does/does not

agree to a trial by a Magistrate Judge.

## 8.    **LIST OF WITNESSES:**

**Plaintiff's Witness List**

**Defendants' Witness List**

    (1)    Roberto Arocho
        Pepperidge Farm, Inc.
        1414 Blue Hills Ave.
        Bloomfield, CT 06002

Roberto Arocho has been employed consistently with Pepperidge Farm since 1979, and

has been a supervisor for more than ten years. At all times relevant to the Complaint, Mr.

Arocho was a supervisor at Pepperidge Farm's Norwalk, Connecticut bakery. Mr. Arocho will

testify as to the allegations set forth in the complaint and the affirmative defenses and other

issues in this case. He will also testify regarding his participation in Pepperidge Farm's/Campbell

Soup's investigation of Ms. Presley's claims.

    (2)    Paul Macionus
        Pepperidge Farm, Inc.
        1414 Blue Hills Ave.
        Bloomfield, CT 06002

At all times relevant to the Complaint, Paul Macionus was Pepperidge Farm's Human Resources Manager at the Norwalk bakery. Mr. Macionus will testify as to the allegations set forth in the complaint and the affirmative defenses and other issues in this case. Mr. Macionus will testify regarding Pepperidge Farm's/Campbell Soup's anti-harassment policies. He will also testify regarding Pepperidge Farm's/Campbell Soup's investigation of Ms. Presley's claims, and the results of that investigation. Additionally, Mr. Macionus will testify that Ms. Presley did not make any further complaints following the conclusion of the investigation.

(3)     Maritza Allende
        3755 North Sacramento
        Chicago, Illinois 60618

At all times relevant to the Complaint, Maritza Allende was the Human Relations Manager at Pepperidge Farm's Norwalk bakery. Ms. Allende will testify as to the allegations set forth in the complaint and the affirmative defenses and other issues in this case. She will testify regarding Pepperidge Farm's/Campbell Soup's anti-harassment policies. She will also testify regarding Pepperidge Farm's/Campbell Soup's investigation of Ms. Presley's claims, and the results of that investigation. Additionally, Ms. Allende will testify that Ms. Presley did not make any further complaints following the conclusion of the investigation.

(4)     Stephen White
        Pepperidge Farm, Inc.
        1414 Blue Hills Ave.
        Bloomfield, CT 06002

Stephen White was the QA Manager at Pepperidge Farm's Norwalk bakery. He will testify regarding his knowledge of the allegations set forth in the complaint and the affirmative defenses and other issues in this case. Mr. White will testify regarding the interview process for the Quality Assurance position, and his selection of a candidate other than Ms. Presley. Mr.

6.

White will testify that he did not speak with Mr. Arocho regarding a recommendation of Ms.

Presley for the QA job. He will also testify regarding his discussions with Human Resources

regarding Vanessa Diggs' report of Ms. Presley's sexual harassment allegations.

    (5)    Donald Miller
            Pepperidge Farm, Inc.
            1414 Blue Hills Ave.
            Bloomfield, CT 06002

Donald Miller was a Supervisor at Pepperidge Farm's Norwalk bakery. He will testify

regarding his knowledge of the allegations set forth in the complaint and the affirmative defenses

and other issues in this case. Specifically, Mr. Miller will testify regarding his knowledge of Ms.

Presley's sexual harassment allegations and response thereto. He will also testify regarding his

participation in Pepperidge Farm's /Campbell Soup's investigation of Ms. Presley's allegations.

    (6)    Juan Martinez
            Pepperidge Farm, Inc.
            1414 Blue Hills Ave.
            Bloomfield, CT 06002

Juan Martinez will testify regarding his knowledge of the allegations set forth in the

complaint and the affirmative defenses and other issues in this case. Mr. Martinez will testify

regarding his knowledge of Ms. Presley's sexual harassment allegations and response thereto. He

will also testify regarding his participation in Pepperidge Farm's /Campbell Soup's investigation

of Ms. Presley's allegations.

    (7)    Spencer Peeples

Spencer Peeples will testify regarding his knowledge of the allegations set forth in the

complaint and the affirmative defenses and other issues in this case. Mr. Peeples will testify that

at the time of the investigation of Ms. Presley's sexual harassment allegations, he was retired, but

7.

that Ms. Allende interviewed him by telephone. Mr. Peeples will testify that he recalled that Ms.

Presley told him that Mr. Arocho had once asked her out, but he also had no independent

knowledge or information regarding Presley=s allegations.

    (8)    Vanessa Diggs Broadnax
            Pepperidge Farm, Inc.
            1414 Blue Hills Ave.
            Bloomfield, CT 06002

Vanessa Diggs was QA Supervisor at the Norwalk bakery.  She will testify regarding her

knowledge of the allegations set forth in the complaint and the affirmative defenses and other

issues in this case.  Ms. Diggs will testify regarding the Quality Assurance position, and her

involvement therewith.  Ms. Diggs will testify regarding her knowledge of Ms. Presley's sexual

harassment allegations and response thereto.

She will also testify regarding her participation in Pepperidge Farm's /Campbell Soup's

investigation of Ms. Presley's allegations.

    (9)    Kurt Selner
            Pepperidge Farm, Inc.
            1414 Blue Hills Ave.
            Bloomfield, CT 06002

Kurt Selner was Mr. Arocho's manager at all times relevant to the Complaint.  Mr. Selner

will testify regarding his knowledge of the allegations set forth in the complaint and the

affirmative defenses and other issues in this case.

*The defendants reserve the right to call additional witnesses on rebuttal.  In addition, if the*
*plaintiff fails to call witnesses on her list, the defendants reserve the right to call them.*

8.

9.    **EXHIBITS:**

**Plaintiff:**

**Defendants:**

1.    Pepperidge Farm/Campbell Soup harassment prevention or anti-harassment policies.

2.    Certified copy of CHRO file.

3.    Complete internal complaint file pertaining to subject sexual harassment investigation.

4.    Paul Macionus' notes/file relating to subject sexual harassment investigation.

5.    Maritza Allende's notes/file relating to subject sexual harassment investigation.

6.    Twanya Presley statement from sexual harassment investigation, dated September 4, 2001.

7.    Spencer Peebles statement from sexual harassment investigation, dated September 4, 2001.

8.    Donald Miller's statement from sexual harassment investigation, dated September 4, 2001.

9.    Roberto Arocho's statement from sexual harassment investigation, dated November 1, 2001.

10.    Roberto Arocho's statement from sexual harassment investigation, dated April 13, 2002.

11.    Paul Macionus' statement from sexual harassment investigation, dated November 6, 2001.

12.    Report of Vanessa Diggs regarding Presley allegations of sexual harassment, dated August 31, 2001.

13.    Pepperidge Farm, Inc. Norwalk bakery employee handbooks.

14.    Complete personnel file of Twanya Presley.

9.

15.    Statement of Beth DeCarlo dated March 19, 2002 regarding Twanya Presley's resignation.

16.    Statement of Maritza (Allende) Sanchez dated March 22, 2002 regarding Twanya Presley's resignation. E-mail dated March 15, 2002 regarding same.

17.    E-mail by Maritza (Allende) Sanchez dated March 15, 2002 regarding Presley's resignation.

18.    Pepperidge Farm Medical Record dated September 4, 2001 containing statements by Twanya Presley.

*The defendants reserve the right to introduce additional exhibits for impeachment purposes. In addition, if the plaintiff fails to introduce an exhibit on her list, the defendants reserve the right to introduce it.*

## 10.    **TRIAL TO COURT/JURY**

### Proposed Stipulations of Uncontroverted Facts

1.    There is no separate basis alleged by which Campbell Soup is liable on any of

Plaintiff's causes of action, except that Plaintiff's employer, Pepperidge Farm, is a subsidiary of

Campbell Soup. Therefore, the corporate defendants will together be referred to as "Pepperidge

Farm."

2.    At all times relevant to the Complaint, Plaintiff worked on the production line at

Pepperidge Farm's Norwalk, Connecticut facility, a bakery that produces a variety of Pepperidge

Farm products.

3.    Roberto Arocho is also a Pepperidge Farm employee. Mr. Arocho has been

employed consistently with Pepperidge Farm since 1979, and has been a supervisor for

10.

approximately ten years. Deposition Transcript of Roberto Arocho, hereinafter "Arocho Depo."
at 14-15; 40-42.

4.      Twanya Presley was hired by Pepperidge Farm on August 28, 1996. Deposition
Transcript of Twanya Presley, hereinafter "Presley Depo." at 11.

5.      Presley resigned from Pepperidge Farm in February 1998, but reapplied and was
rehired in June 1999, as a temporary employee in the Norwalk bakery's Bread Department. Id. at
12; 15.

6.      In December 1999, Presley became a fulltime employee as a Production Substitute
in the Bread Department. Id. at 16.

7.      Sometime in early 2000, Presley switched from the night shift to the day shift, and
Roberto Arocho became her supervisor. Id. at 16-17.

8.      During that same time frame, Mr. Arocho gave her the opportunity to work in the
"mixing room." Id. at 24, ll. 8-13.

9.      While this job was predominantly held by men, it presented Presley the
opportunity to make more money, expand her knowledge at Pepperidge Farm and potentially
become eligible for higher positions within the plant. Id. at 25-26.

10.     Despite Presley's almost daily contact with Mr. Arocho for two years, from June
1999 through mid-July 2001, Mr. Arocho did not say or do anything that she considered
"inappropriate." Presley Depo. at 35, ll. 1-17; 260, ll. 17-21.

11.     In February 2001, Presley was injured while working in the Bread Department
when a metal rack that she was pulling fell, fracturing her left foot, and as a result of this injury,

11.

she did not work from February 13, 2001 through April 1, 2001, during which time she received

workers compensation benefits. Presley Depo. at 33, ll. 20-25; 35, ll. 13-17.

12.    Presley returned to work at the plant on or about April 2, 2001, although she had a

number of temporary physical restrictions imposed upon her by her physician. Id. at 35.

13.    Due to these restrictions, which changed over time, Presley was given a number of

"modified" or "light duty" assignments depending upon the work available at the plant and her

physical limitations, including performing clerical work for the Quality Assurance, Production,

Engineering, Human Resources and Medical Departments.  Presley Depo. at 54, ll. 18-25.

14.    During this "modified/light duty" assignment, Presley remained a Production

Department employee on modified duty whose wages were attributable to the Production

Department.

15.    On or about August 31, 2001, Presley, along with two other employees,

interviewed for a Quality Assurance ("QA") Technician position in the QA Department with

Stephen White, the Quality Assurance Manager at the time. Presley Depo. at 125, ll. 10-17;

Affidavit of Stephen White ("White Aff.") at && 4, 7, filed with the defendants' Motion for

Summary Judgment as Exhibit C.

16.    Presley wanted the QA job because it would allow her to perform office work,

rather than work on the production line, which she preferred. Presley Depo. at 175.

17.    Prior to the interview, Presley spoke with a fellow employee and friend at

Pepperidge Farm, Vanessa Diggs. Presley Depo. at 130, ll. 20-24, 131, ll. 1-2.

18.    Diggs was a supervisor in QA, and according to Presley, insinuated that

Presley was a "shoe in" for the open QA position. Presley Depo. at 121.

19.    Vanessa Diggs secretly provided Presley with the interview questions in advance. Presley Depo. at 133, ll. 3-12.

20.    Despite her advanced knowledge of the questions, of which Mr. White was unaware, based in part upon her performance during the interview, Mr. White did not believe that Presley was the best candidate for the job. White Aff. at & 15.

21.    Mr. White did not speak with anyone at Pepperidge Farm, including Mr. Arocho, or other supervisors, regarding any of the candidate's prior job performance, including Ms. Presley. White Aff. at & 16.

22.    Mr. White's initial assessment was confirmed by his comparison of Presley's performance and productivity working in the QA Department while on a "modified/light duty" assignment, to the other candidates' performance and productivity during a "day in the life," where each was asked to perform some of the functions of the QA job for a day. White Aff. at & 15.

23.    Mr. White ultimately awarded the job to one of the other candidates. White Aff. at & 13.

24.    Immediately following her interview with Mr. White, on Friday, August 31, 2001, Presley went to see Vanessa Diggs. Presley Depo. at 131, ll. 9-11.

25.    Instead of discussing the interview, Presley told Diggs that Roberto Arocho had sexually harassed her, but also told her it was "all right" because she still thought that she would get the QA job because Diggs knew "what [Presley could] do and what [she=s] capable of doing." Presley Depo. at 131, ll. 21-25.

13.

26.     Presley never complained to Human Resources about Mr. Arocho's alleged conduct.

27.     Vanessa Diggs told Presley that she ought to complain to the Human Resources ("HR") Department. Id. at 179.

28.     Ms. Diggs also shared Presley's allegations with Steve White, who was Diggs' supervisor.

29.     As a result, Mr. White immediately called Paul Macionus, Pepperidge Farm's Human Resources Manager to discuss the allegations. See Deposition Transcript of Paul Macionus, Jr. ("Macionus Depo.") at Volume I, 106, attached to the Motion for Summary Judgment as Exhibit D; Affidavit of Paul Macionus, Jr. ("Macionus Aff.") at & 9, attached to the defendants' Motion for Summary Judgment as Exhibit E.

30.     That same day Mr. White and Ms. Diggs met with Mr. Macionus, whereby Ms. Diggs recounted her conversation with Presley. See Macionus Aff. at & 11.

31.     On Tuesday, September 4, 2001, the first day back at the plant after the Labor Day holiday weekend, Mr. Macionus, together with Maritza (Sanchez) Allende ("Allende"), Employee Relations Manager, commenced a full investigation of Ms. Presley's allegations. Presley Depo. at 179-178; 325; Macionus Depo. at 107-108, 111-112; Macionus Aff. at & 14.

32.     In connection with their investigation, Mr. Macionus and Ms. Allende called Presley to HR to interview her. Macionus Depo. at Vol. I, 11, ll. 1-10; Allende Depo. at 58; Macionus Aff. at & 14.

14.

33.    Ms. Presley met with Ms. Allende and Mr. Macionus on Tuesday, September 4, 2001, at which time she told them about her allegations against Mr. Arocho. Presley met with Ms. Allende again on Friday of that week (September 7, 2001), when Ms. Allende told Ms. Presley that they had concluded their investigation and had found no corroboration for her allegations. Presley learned of two other employees' alleged problems with Arocho a week after she received that response from Allende. See Presley Dep., Vol. II at pp. 226, l. 6 - 229, l. 20.

34.    During that meeting, Ms. Allende invited Presley to tell them her version of the events, and Mr. Macionus informed Presley that Pepperidge Farm had no tolerance for sexual harassment, explained the anti-harassment policy to her, and assured her that Ms. Allende and he would conduct a full investigation of her allegations and we would personally inform her regarding our findings. Presley Depo. at 182, ll. 9-13; Macionus Aff. at & 16.

35.    Mr. Arocho was on vacation on September 4, 2001, but on the morning of September 5, 2001, when Mr. Arocho arrived at work, Mr. Macionus and Ms. Allende called him to the Human Resources office for an interview. Macionus Depo. at Vol. I, 129, ll. 1-5; 131-32; Macionus Aff. at &17.

36.    During the approximately forty-five-minute interview, Mr. Macionus and Ms. Allende reviewed the anti-harassment policy, as well as the Equal Employment Opportunity ("EEO") policy and the violence in the workplace policy with Mr. Arocho. They also reviewed each of Presley's allegations with Mr. Arocho and told him that under no circumstances would Pepperidge Farm tolerate any type of harassing behavior towards Presley or any other employee. Macionus Depo. at Vol. I, at 120; 129; Macionus Aff. at &18.

15.

37.     Mr. Macionus also informed Mr. Arocho that Pepperidge Farm had an anti-retaliation policy and that retaliation of any kind would not be tolerated. Macionus Depo. at Vol. I, 121; Macionus Aff. at &19.

38.     Finally, Mr. Macionus informed Mr. Arocho that if he was found to have violated any of Pepperidge Farm's policies, the consequence would be very severe, up to and including termination of his employment. Macionus Depo. at Vol. I, 122, ll. 15-24; Macionus Aff. at & 20.

39.     Mr. Macionus and Ms. Allende also removed Presley from Mr. Arocho=s direct day-to-day supervision during the investigation. Allende Depo. at 133, ll. 13-15; Macionus Aff. at & 21.

40.     Mr. Arocho was shocked by the allegations and affirmatively and credibly denied them. Macionus Depo. at Vol. I, 149, ll. 13-15; Macionus Aff. at & 22.

41.     Mr. Macionus and Ms. Allende also interviewed all witnesses identified by Presley, namely, Donald Miller and Juan Martinez. Additionally, Ms. Allende interviewed Spencer Peeples, who was retired, by telephone and reported the results of that interview to Mr. Macionus. Macionus Depo. at Vol. I, 120, ll. 17-20; 131, ll. 20-25; Allende Depo. at 79.

42.     Mr. Macionus and Ms. Allende asked Mr. Miller, a supervisor at the time, if he knew of any issues or incidents between Arocho and Presley. Allende Depo. at 63, ll. 22-25.

43.     Mr. Miller responded that he never saw anything between Presley and Arocho. Id. Mr. Miller also stated that he did recall Presley once telling him, as a friend, that she was "uncomfortable" around Mr. Arocho, but that she said that she had "handled the situation." Macionus Depo. at Vol. I, 135.

16.

44.     Presley did not specify to Miller what exactly made her "uncomfortable," nor did she make any allegations of sexual harassment. Macionus Depo. at Vol. I, 135.

45.     On August 3, 2001 when Presley spoke with Miller, she told Miller that the harassment had stopped and that she had handled it.  See Presley Dep., Vol. I at p. 149, ll. 12-18.

46.     Mr. Macionus and Ms. Allende interviewed Juan Martinez, Presley's co-worker. Allende Depo. at 69-70. They questioned Mr. Martinez regarding whether he had any additional information regarding Presley's allegations, or whether he had witnessed anything inappropriate between Presley and Arocho. Id. at 70.

47.     Mr. Martinez said that he knew nothing about the alleged situation and that he never saw anything between Presley and Arocho. Id.

48.     Ms. Allende also interviewed Spencer Peeples, the only other witness identified by Presley, who was retired at the time, by telephone. Mr. Peeples recalled that Presley told him that Mr. Arocho had once asked her out, but he also had no independent knowledge or information regarding Presley's allegations. Allende Depo. at 73.  Following a full investigation, Mr. Macionus and Ms. Allende compared their notes from the various interviews and discussed the information that they had gathered.  Macionus Depo. at 133-34.

49.     Mr. Macionus also interviewed Benjamin Bracetty ("Bracetty"). Mr. Macionus spoke with Mr. Bracetty to see if Mr. Bracetty would corroborate a statement that Mr. Arocho had made about Ms. Presley during Mr. Arocho's interview during the investigation. Mr. Arocho stated that Ms. Presley had brought in to work a photograph of herself in a leopard-print bikini and showed it to Mr. Arocho, Mr. Arocho's supervisor, Kurt Selner, and Mr. Bracetty.  Both Mr.

17.

Bracetty and Mr. Arocho's supervisor corroborated Mr. Arocho's statement. They had seen the photograph as well. Nevertheless, Mr. Bracetty's input on this peripheral matter was irrelevant to the outcome of the investigation. See Macionus Depo., Vol. II. at pp. 31, l. 6 - 35, l. 22.

50.     Based upon all of the information, including the fact that several of Presley's "witnesses," including Mr. Miller and Mr. Martinez, flatly denied having seen any inappropriate behavior between Mr. Arocho and Ms. Presley, Allende Depo. at 63, ll. 18-25; 70, ll.1-14, Macionus and Allende concluded that there was no corroboration of any of Presley's allegations, and no evidence of sexual harassment, otherwise. Macionus Depo. at Vol. I, 149; Allende Depo. at 131, ll. 13-16; Presley Depo. at 325.

51.     Mr. Macionus and Ms. Allende then reported the results of the investigation to Presley. Presley Depo. at 325, ll. 2-22.

52.     Mr. Macionus and Ms. Allende explained to Presley that no retaliation would be taken against her or tolerated for making her complaint. Macionus Aff. at & 29.

53.     Mr. Macionus and Ms. Allende also told Presley that if she had any further concerns, or if she experienced any harassment or retaliation of any kind, she should come back and speak with them. Macionus Aff. at & 29.

54.     Ms. Presley did not report any further alleged harassment or make any complaints of retaliation after the conclusion of HR's investigation of her allegations. Macionus Aff. at & 30.

55.     The alleged harassment against Presley began on August 1, 2001 had essentially stopped between August 3 and August 15 and had definitely stopped as of August 15. When

18.

Presley put Mr. Arocho "in his place," the harassment stopped. See Presley Depo., Vol. I at pp. 148, ll. 18-22; 149, ll. 12-18; 152, l. 25 - 153, l. 2; 163, ll. 1-4; 163, l. 25 - 164, l. 6; 164, ll. 23-25; 182, ll. 14-16; 187, ll. 5-14.

56.    If Presley had gone to Human Resources earlier, Human Resources would have investigated the alleged harassment earlier. See Presley Dep., Vol. I at p. 165, ll. 19-24.

a.    **Court:** This is not applicable; this is a jury trial.

b.    **Jury:**

i.)    **Proposed Voir Dire Questions:**

*Plaintiff:*

*Defendants:*

Please see attached.

ii.)    **Proposed Jury Instructions:**

*Plaintiff:*

*Defendants:*

Please see attached.

19.

*The defendants request that interrogatories be submitted to the jury; proposed verdict form and interrogatories will be submitted prior to the commencement of trial.*

A disk formatted for Word Perfect containing a copy of the Joint Trial Memorandum,

Jury Instructions, and Voir Dire questions accompanies this document.


THE PLAINTIFF,
TWANYA PRESLEY


By: _____

John I. Bolton, Esquire
The Bolton Law Firm
360 Fairfield Avenue, Suite 200
Bridgeport, Connecticut  06604


THE DEFENDANTS,
PEPPERIDGE FARM, INC.,
a subsidiary of THE CAMPBELL
SOUP COMPANY,
THE CAMPBELL SOUP
COMPANY, ROBERTO AROCHO


By: *[signature]*

Patricia E. Reilly ct08352
Elizabeth K. Andrews ct20986
TYLER COOPER & ALCORN, LLP
205 Church Street, P.O. Box 1936
New Haven, Connecticut 06510-1910
Phone:  (203) 784-8200
Facsimile:  (203) 865-7865
E-mail:  reilly@tylercooper.com
E-mail:  eandrews@tylercooper.com

20.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been sent via first class mail, postage

prepaid to all counsel and pro se parties of record as follows:

> John I. Bolton, Esquire
> The Bolton Law Firm
> 360 Fairfield Avenue, Suite 200
> Bridgeport, Connecticut  06604

on this 18th day of April 2005.

Patricia E. Reilly (CT 01187)