UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2005 APR 28 P 1: 28

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| TWANYA PRESLEY, MARINA | \* | CIVIL ACTION |
| GIANNAKOVA and SOFIA | \* | |
| TSAHARIDES | \* | NO: 3:02CV2157(AVC) |
|      Plaintiffs, | \* | |
| | \* | |
|    v. | \* | |
| | \* | |
| PEPPERIDGE FARMS, INC., a subsidiary | \* | |
| of THE CAMPBELL SOUP COMPANY, | \* | |
| THE CAMPBELL SOUP COMPANY and | \* | |
| ROBERT AROCHO, Individually | \* | |
| | \* | |
|      Defendants. | \* | April 26, 2005 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S PORTION OF PARTIES' JOINT TRIAL MEMORANDUM

*The Plaintiff submits her portion of the Joint Trial memorandum based upon knowledge of the issues already presented, obtained by way of discovery and summarily adjudicated to date. Given the tardiness of Plaintiff's participation in developing her portion of this memorandum, it is only appropriate to allow the Defendants to reserve their rights to modify any and all portions of this trial memorandum.*

1.    **TRIAL COUNSEL:**

      Plaintiff:    John I. Bolton ct08892
                  The Bolton Law Firm, P.C.
                  360 Fairfield Avenue, Suite 200
                  Bridgeport, Connecticut 06604
                  E-mail: jbolton@ispwest.com

      Defendants:  Patricia E. Reilly ct08352
                  Elizabeth K. Andrews ct20986
                  Tyler, Cooper & Alcorn, LLP
                  205 Church Street, P.O. Box 1936
                  New Haven, Connecticut 06510-1910
                  Phone:  (203) 784-8200
                  Facsimile:  (203) 865-7865
                  E-mail: reilly@tylercooper.com
                  E-mail: eandrews@tylercooper.com

2. **JURISDICTION:**

This Court's subject matter jurisdiction over this action arises out of Plaintiff's claims under 42 U.S.C. § 2000e-5. This Court's personal jurisdiction arises pursuant to 28 U.S.C. §§ 1391(b) and 1392(a).

3. **JURY/NON-JURY:**

This case will be tried to a jury.

4. **LENGTH OF TRIAL:**

*Plaintiff:*

The Plaintiff anticipates **six (6)** full days of evidence to present her case.

*Defendants:*

The Defendants anticipate five (5) full days of evidence to present their case.

5. **FURTHER PROCEEDINGS:**

*Plaintiff:*

The Plaintiff anticipates amending her complaint to appropriately conform the pleadings to this Court's Ruling on Defendants' Motion for Summary Judgment dated February 8, 2005. To the extent that it is procedurally proper, Plaintiff will address her objections to portions of Defendants' submissions to this Court dated April 18, 2005 in a separate pleading. Lastly, the Plaintiff does not anticipate the need for further proceedings at this time, excluding argument on potential motions in limine.

*Defendants:*

The Defendants do not anticipate the need for further proceedings at this time, excluding argument on potential motions *in limine*.

6.    **<u>NATURE OF CASE</u>**:

   ***Plaintiff's Claims:***

   On February 8, 2005, this Court granted Summary Judgment in favor of the Defendants with respect to all claims brought by the plaintiff Sofia Tsaharides. Summary Judgment has been granted in favor of the defendants with respect to the Plaintiff Twanya Presley's ("Ms. Presley") claims of retaliation, negligent misrepresentation, civil conspiracy, negligent and intentional infliction of emotional distress and her claim that she was constructively discharged. Ms. Presley's remaining claims allege hostile work environment and gender discrimination based upon her claims of hostile work environment harassment against Pepperidge Farm, Inc. ("Pepperidge Farm"), Campbell Soup Company ("Campbell Soup") and Roberto Arocho ("Mr. Arocho").

   Plaintiff originally brought this suit alleging statutory and pendent claims arising from multiple and continual incidents of sexual harassment by her supervisor, Defendant, Roberto Arocho, (hereinafter "Arocho"). Although the management at Pepperidge Farm was on notice of Plaintiff's discomfort with Arocho's conduct, in violation of the company's stated harassment training and policy no report of the same was made to the company's Human Resources Department in July or early August 2001. Ultimately, on or about August 31, 2001, Pepperidge Farms' Human Resources Department became aware of the incidents of harassment Presley experienced from her then supervisor, Roberto Arocho.

On or about September 4, 2001, Pepperidge Farms initiated an investigation into Presley's complaint over the course of two (2) days for which the Plaintiff alleges failed to meet the minimal criteria for interposing any affirmative defenses in this matter. The investigation was conducted by Pepperidge Farms' Human Resources Manager, Paul Macionus, and Maritza Sanchez-Allende, Pepperidge Farms' Employee Relations Manager.

On September 5, 2001, and within twenty-four (24) hours of initiating the investigation into Presley's complaints against Arocho's conduct, the Defendants' Human Resources Department learned the identity of two (2) other individuals -- Marina Giannakova and Sofia Tsaharides -- who also experienced similar sexually offensive conduct perpetrated by Arocho. Despite Human Resources awareness of these two (2) additional complainants no investigation was commenced on behalf of these two (2) individuals for a period of some three (3) weeks.

As a consequence of the defendants' multiple failures to properly implement their anti-harassment policy, plaintiff alleges that the corporate defendants failed to afford themselves of any affirmative defenses with regard to Ms. Presley's remaining causes of action.

Plaintiff claims damages as set forth in the prayer for relief attached to the original complaint.

### Defendants' Defenses and Claims:

### Timely Submitted

7.    **TRIAL BY MAGISTRATE JUDGE:**

The Plaintiff <u>agrees</u> to a trial by a Magistrate Judge.

The Defendants <u>do not agree</u> to a trial by a Magistrate Judge.

8.    **LIST OF WITNESSES:**

***Plaintiff's Witness List***

1.    <u>Twanya Presley</u>

At all times relevant to the Complaint, Twanya Presley was an employee at Pepperidge Farms' Norwalk bakery. Ms. Presley will testify as to the allegations set forth in her complaint and detail her participation and cooperation in the investigation undertaken by the corporate Defendants in response to her claims of sexual harassment. Overall, Ms. Presley will testify as to the conduct exhibited by Arocho and the events, which led to her separation from employment with the corporate Defendants.

2.    <u>Paul Macionus</u>

At all times relevant to the Complaint, Paul Macionus was Pepperidge Farm's Human Resources Manager at the Norwalk bakery. Mr. Macionus will testify as to Pepperidge Farm's/Campbell Soup's anti-harassment policies. He will also testify regarding all aspects of Pepperidge Farm's/Campbell Soup's investigation of Ms. Presley's claims, and the results of that investigation. Additionally, Mr. Macionus will testify as to the training he provided to other employees in furtherance of the company's anti-harassment policies.

5

3.    Roberto Arocho

Roberto Arocho has been employed consistently with Pepperidge Farm since 1979, and has been a supervisor for more than ten years.  At all times relevant to the Complaint, Mr. Arocho was a supervisor at Pepperidge Farm's Norwalk, Connecticut bakery.  Mr. Arocho will testify as to the allegations set forth in the complaint and his participation in the company's investigation undertaken by the corporate Defendants in response to Presley's claims of sexual harassment.

4.    Maritza Sanchez-Allende

At all times relevant to the Complaint, Maritza Sanchez-Allende was the Employee Relations Manager at Pepperidge Farm's Norwalk bakery.  Ms. Sanchez-Allende will testify as to Pepperidge Farm's/Campbell Soup's anti-harassment policies. She will also testify regarding all aspects of her involvement, duties, and participation in Pepperidge Farm's/Campbell Soup's investigation of Ms. Presley's claims, and her memorializing in writing the results of that investigation. Lastly, she will testify as to the facts and circumstances surrounding her making of a tape recording on September 4-5, 2001.

5.    Benjamin Bracetty

At all times relevant to the Complaint, Benjamin Bracetty was an employee of Pepperidge Farms at the Norwalk bakery. Mr. Bracetty will testify as to his participation and involvement in the in the company's investigation undertaken by the corporate Defendants in response to Presley's claims of sexual harassment.

6

6.    Helen Samlides

At all times relevant to the Complaint, Helen Samlides was an employee of Pepperidge Farms at the Norwalk bakery. She will testify to her observations concerning Roberto Arocho's conduct toward his subordinates while discharging his supervisory duties at the Norwalk bakery.

7.    Marina Giannakova

At all times relevant to the Complaint, Marina Giannakova was an employee of Pepperidge Farms at the Norwalk bakery. She will testify to her observations concerning Roberto Arocho's conduct toward his subordinates while discharging his supervisory duties at the Norwalk bakery. In addition, Ms. Giannakova will testify as to the sexual harassment she received from Arocho.

8.    Sophia Tsaharides

At all times relevant to the Complaint, Sophia Tsaharides was an employee of Pepperidge Farms at the Norwalk bakery. She will testify to her observations concerning Roberto Arocho's conduct toward his subordinates while discharging his supervisory duties at the Norwalk bakery. In addition, Ms. Tsaharides will testify as to the sexual harassment she received from Arocho.

9.    Juan Martinez

Juan Martinez will testify regarding his knowledge of the allegations set forth in the complaint. Mr. Martinez will testify regarding his knowledge of Ms. Presley's sexual harassment allegations and response thereto. He will also testify regarding his participation in Pepperidge Farm's /Campbell Soup's investigation of Ms. Presley's

allegations as conducted in 2001, as well as the CHRO Response submitted in 2002.

10.    Pat Presley

At all times relevant to the Complaint, Pat Presley was an employee of Pepperidge Farms at the Norwalk bakery. She is also the mother of the Plaintiff and will testify as to her personal knowledge of the allegations made in the complaint. In addition, Ms. Presley will further testify as to conversations she had with the company's management relative to her daughter's complaint.

11.    Wayne Laraway

At all times relevant to the Complaint, Wayne Laraway was a Plant Manager at Pepperidge Farm's Norwalk bakery. Mr. Laraway will testify as to his observations and working experiences during the time he supervised Arocho.

12.    Terry Kydes

At all times relevant to the Complaint, Terry Kydes was a Team Leader at Pepperidge Farm's Norwalk bakery. Mr. Kydes will testify concerning his personal knowledge of all the facts and circumstances surrounding the allegations made by the Plaintiff in her complaint.

13.    Martin Chazin

At all times relevant to the Complaint, Mr. Chazin served as in-house counsel to both Campbell Soup Company and Pepperidge Farm, Inc. Mr. Chazin will testify as to any non-privileged matters relating to the Defendants' anti-harassment policy(s). In addition, Mr. Chazin will testify as to any non-privileged matters relating to the Defendants' response to the CHRO in 2002.

**8**

*The Plaintiff reserves the right to call additional witnesses on rebuttal. In addition, if the Defendants fail to call witnesses on their list, the Plaintiff reserves the right to call them.*

**Defendants' Witness List**

**Timely Submitted**

9.  **EXHIBITS:**

*Plaintiff:*

1.    Pepperidge Farm/Campbell Soup harassment prevention or anti-harassment policies.

2.    Certified copy of CHRO file.

3.    Complete internal complaint file pertaining to subject sexual harassment investigation.

4.    Paul Macionus' notes/file relating to subject sexual harassment investigation.

5.    Maritza Allende's notes/file relating to subject sexual harassment investigation.

6.    Twanya Presley statement from sexual harassment investigation, dated September 4, 2001.

7.    Spencer Peebles statement from sexual harassment investigation, dated September 4, 2001.

8.    Donald Miller's statement from sexual harassment investigation, dated September 4, 2001.

9.    Roberto Arocho's statement from sexual harassment investigation, dated November 1, 2001.

10.   Roberto Arocho's statement from sexual harassment investigation, dated April 13, 2002.

11.  Paul Macionus' statement from sexual harassment investigation, dated November 6, 2001.

12.  Report of Vanessa Diggs regarding Presley allegations of sexual harassment, dated August 31, 2001.

13.  Pepperidge Farm, Inc. Norwalk bakery employee handbooks.

14.  Complete personnel file of Twanya Presley.

15.  Statement of Beth DeCarlo dated March 19, 2002 regarding Twanya Presley's resignation.

16.  Statement of Maritza (Allende) Sanchez dated March 22, 2002 regarding Twanya Presley's resignation. E-mail dated March 15, 2002 regarding same.

17.  E-mail by Maritza (Allende) Sanchez dated March 15, 2002 regarding Presley's resignation.

18.  Pepperidge Farm Medical Record dated September 4, 2001 containing statements by Twanya Presley.

19.  Affidavit of Juan Martinez.

20.  Campbell Soup & Pepperidge Farm Company Policies

> -*Equal Employment Opportunity Policy*
> -*Anti-Harassment Policy*
> -*Policy on Sexual Harassment*

21.  Affidavit of Roberto Arocho.

22.  Pepperidge Farm correspondence dated April 24, 2002.

23.  Financials/Statement of Earnings of Campbell Soup Company/Pepperidge Farms.

24.  Stamford Psychiatry and Geriatric Psychiatry Assoc., Inc. Medical Reports regarding Twanya Presley.

25.  Plaintiff's 2002 W-2 Wage and Tax Statement.

26.   Plaintiff's Pay stubs:

> -Pepperidge Farm
> -Conversant
> -New England Voice and Data
> -McIntyre Associates, Inc. Temporary and Permanent Staffing Solutions

27.   Photographs from Plaintiff's vacation as referenced in Defendants' internal investigation.

28.   Medical records, billing statements regarding workers' compensation claim.

29.   Tape made of HR Investigation made by Defendants and provided   in discovery by Defendants.

*Defendants:*

**Timely Submitted**

***The Plaintiff reserves the right to introduce additional exhibits for impeachment purposes. In addition, if the Defendants fail to introduce an exhibit on their list, the Plaintiff reserves the right to introduce it.***

## 10.   <u>TRIAL TO COURT/JURY</u>

**<u>Proposed Stipulations of Uncontroverted Facts</u>**

1.   Plaintiff's former employer, Pepperidge Farm, is a subsidiary of Campbell Soup and it is undisputed that Pepperidge Farm relied upon, extrapolated, and implemented the Campbell Soups' policies which are at issue in this litigation and which were authored and appeared on Campbell Soup corporate letterhead.

2.   At all times relevant to the Complaint, Plaintiff worked on the production line at Pepperidge Farm's Norwalk, Connecticut facility, a bakery that produces a variety of Pepperidge Farm products. However, at certain times, the plaintiff Twanya Presley

11

was on light duty and performed other functions at the plant during some of the times at issue.

3.      Roberto Arocho is a Pepperidge Farm employee. Mr. Arocho has been employed consistently with Pepperidge Farm since 1979, and has been a supervisor for approximately ten years. Deposition Transcript of Roberto Arocho, hereinafter "Arocho Depo." at 14-15; 40-42.

4.      Twanya Presley was hired by Pepperidge Farm on August 28, 1996. Deposition Transcript of Twanya Presley, hereinafter "Presley Depo." at 11.

5.      Presley resigned from Pepperidge Farm in February 1998, but reapplied and was rehired in June 1999, as a temporary employee in the Norwalk bakery's Bread Department. Id. at 12; 15.

6.      In December 1999, Presley became a fulltime employee as a Production Substitute in the Bread Department. Id. at 16.

7.      Some time in early 2000, Presley switched from the night shift to the day shift to accommodate her parental commitments at which time the defendant, Arocho, became her supervisor.

8.      After Presley switched her shift at Pepperidge Farm, she was assigned to work in the mixing room of the bread department which caused Presley concern because of the heavy lifting that was required – this despite a higher rate of pay for work in this area of the bakery.  While there was no incident in calendar year 2000, Ms. Presley had to make an application for workers' compensation benefits in February of

2001 as a result of an injury she sustained in the mixing room. At the time of her work related injury Presley was the only female assigned to the mixing room.

9.    Presley was out of work from mid-February 2001 through April 1, 2001 at which time she did receive workers' compensation benefits.

10.    Presley returned to work at the plant in a light duty capacity as a result of the temporary physical job restrictions placed upon her by her treating physician. Presley was given a number of light duty assignments in various departments that were tailored to her physical limitations at the time. Some of these assignments included, but were not limited to clerical work in the quality assurance department, and the human resource department.  At the time Presley was on modified light duty assignment, her job title nor her wages or benefits changed as a result of the Connecticut Workers' Compensation Act.

11.    While Presley was on light duty assignments, she maintained contact with her immediate supervisor, Arocho, within the scope of her employment for reasons such as delivering documents related to Quality Assurance data and the like.

12.    In August 2001, Presley communicated her discomfort with Arocho to another manager named Donald Miller.

13.    Donald Miller is considered management and had an obligation to report any incident of untoward conduct by any other employee that came to his attention to Human Resources– such as those within the purview of the company's sexual harassment or anti-harassment policies.

14.    Roberto Arocho and Donald Miller received sexual harassment training from Paul Macionus.

15.    In August of 2001, Donald Miller did not report to the Human Resources Department or Employee Relations Manager Presley's concerns with Arocho despite company policy and training directing him to do so.

16.    Campbell Soup Company or Pepperidge Farm managers and supervisors were mandated to report any conduct of the sort complained of in this action to senior management. (Page 95-Deposition Paul Mancionus).

17.    While Presley was on light duty, she had been given an assignment in the Defendants' Quality Assurance Department, which she found appealing and was the catalyst for her applying for regular full-time employment within that department.

18.    On or about, August 31, 2001, Presley learned from Vanessa Diggs, another supervisor at Pepperidge Farm, that her application for a position in this department contained a negative recommendation from Arocho. Diggs inquired of Presley as to why Arocho would provide a negative recommendation. In response, Presley advised Vanessa Diggs of the untoward conduct directed at her by Arocho.

19.    At that time Diggs responded in accordance with company policy by reporting the matter to the Human Resources Department.

20.    On September 4, 2001, Presley met with HR Director Macionus and Employee Relations Manager Sanchez-Allende.

21. When Macionus and Sanchez-Allende and met with Presley, they requested that she relay to them her version of the events relating to untoward conduct from Arocho.

22. Presley's interview was taped.

23. During the taped interview, Presley was advised of the company's sexual harassment policy and was also questioned as to whether she engaged in any activity or conduct that would possibly invite such untoward conduct from Arocho.

24. On September 5, 2001, Sanchez-Allende learned of two (2) other employees, Marina Giannakova and Sofia Tsaharides who also had complaints of sexual harassment against Arocho.

25. Sanchez-Allende did not follow-up in any manner with these individuals until approximately three (3) weeks later.

26. Presley met with Sanchez- Allende again on Friday of that week (September 7, 2001), when Ms. Allende told Ms. Presley that HR had concluded their investigation and could not corroborate her allegations.

27. Mr. Arocho was on vacation on September 4, 2001, but on the morning of September 5, 2001, when Mr. Arocho arrived at work, Macionus and Allende called him to the Human Resources office for an interview. Macionus Depo. at Vol. I, 129, ll. 1-5; 131-32; Macionus Aff. at &17.

28. At no time after that meeting with Arocho and before September 7, 2001, did Sanchez-Allende or Macionus follow-up on the information received regarding the two (2) other employees.

29.     Macionus and Sanchez-Allende also interviewed Donald Miller, Juan Martinez, Spencer Peebles, and Benjamin Bracetty.

30. Macionus and Sanchez-Allende did not interview Tsaharides or Giannakova on or before September 7, 2001.

31.     Thereafter, within forty-eight (48) hours, Macionus and Sanchez-Allende reported that the results of the investigation proved inconclusive.

32.     Macionus and Sanchez-Allende advised Presley that if she had any further concerns, or if she experienced any harassment or retaliation of any kind, she should come back and speak with them. Macionus Aff. at & 29.

33.     Despite the reassurances given to Presley, no steps were taken to remove Presley from Arocho's direct supervision until some sixty (60) days thereafter and this was undertaken only after Presley's plea.

34.     Thereafter, on December 7, 2001, Arocho marked Presley tardy for work and required her to diary her whereabouts within the Norwalk bakery for a period of at least one (1) week. Arocho meted out this form of discipline despite the fact that Presley was assigned to perform her duties in the bakery's Engineering Department, which maintained its own supervisor.

35.     In March 2002, Presley separated her employment with the Defendants.

16

a.    <u>Court</u>:  This is not applicable; this is a jury trial.

b.    <u>Jury</u>:

    i.)    **<u>Proposed Voir Dire Questions</u>:**

*Plaintiff:*

Please see attached.

*Defendants:*

**Timely Submitted.**

    ii.)    <u>Proposed Jury Instructions</u>:

*Plaintiff:*

Please see attached.

*Defendants:*

**Timely Submitted.**


***Both Plaintiff and Defendants request that interrogatories be submitted to the jury; proposed verdict form and interrogatories will be submitted prior to the commencement of trial.***

    A disk formatted for Adobe Acrobat PDF containing a copy of the Joint Trial Memorandum and Jury Instructions accompanies this document.


                      THE PLAINTIFF,
                      TWANYA PRESLEY

By:    _____
                      John I. Bolton, Esquire ct08892
                      The Bolton Law Firm
                      360 Fairfield Avenue, Suite 200
                      Bridgeport, Connecticut 06604
                      E-mail: jbolton@ispwest.com

17

## CERTIFICATE OF SERVICE

      This is to certify that a copy of the foregoing has been sent via first class mail, postage prepaid this **26th day of April 2005** to all counsel of record and pro se parties, to wit:

Patricia E. Reilly, Esq.
Elizabeth K. Andrews
Tyler, Cooper & Alcorn, LLP
205 Church Street
New Haven, CT 06509-1910

John J. Bolton

**18**

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| TWANYA PRESLEY, MARINA GIANNAKOVA and SOFIA TSAHARIDES | CIVIL ACTION<br><br>NO: 3:02CV2157(AVC) |
| Plaintiffs, |  |
| v. |  |
| PEPPERIDGE FARMS, INC., a subsidiary of THE CAMPBELL SOUP COMPANY, THE CAMPBELL SOUP COMPANY and ROBERT AROCHO, Individually |  |
| Defendants. | April 26, 2005 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S REQUESTS TO CHARGE

The Plaintiff respectfully requests that the Court charge the jury as follows.[1]

## HOSTILE WORK ENVIRONMENT CLAIM UNDER TITLE VII

1.    The Plaintiff, Twanya Presley, claims that from mid-July through August 2001, her then supervisor, Roberto Arocho subjected her to multiple episodes of sexual harassment.  At the time, both Ms. Presley and Mr. Arocho were employees of the defendant Pepperidge Farm – a subsidiary of The Campbell Soup Company. The corporate defendants pursued an investigation that consisted of interviews with Arocho, Presley, and other employees. The investigation did not follow-up with witnesses that could have corroborated Presley's claims. After the two-day investigation was completed the Defendants' HR Department concluded that there was no substantiation

---

[1] Plaintiff reserves the right to amend these proposed jury instructions or to offer supplemental instructions as might be warranted by events at trial or the court's rulings on motions filed prior to the commencement of evidence in this case.

of Ms. Presley's claims. Thereafter, Presley was ordered to return to work under the supervision of the alleged perpetrator, Arocho.  In December 2001, Arocho disciplined her for allegedly being tardy. One of Ms, Presley's claims is that her workplace permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. Mormol v. Costco Wholesale Corp., 364 F.3d 54, 58 (2d Cir. 2004); Harris v. Forklift Sys.Inc., 510 U.S. 17, 21 (1993). This type of claim is often referred to as a "hostile work environment claim."

2.     To prove a hostile work environment claim, the plaintiff must prove that the harassment that she suffered was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment, and second, that there is a specific basis to impute the objectionable conduct to her employer. Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997).

3.     This test has objective and subjective elements: First, the objective element is met when it is demonstrated that the misconduct shown was "severe or pervasive enough to create an objectively hostile or abusive work environment". Mormol, 364 F.3d at 58.  Second, the subjective element is met when the victim intuitively perceives the workplace environment as being abusive. Harris 510 U.S. at 21 (1993).

4.     As a general rule, incidents must be more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Perry, 115 F.3d at 149. By the same token, whether a reasonable person would have found the

2

environment to be hostile depends upon the following considerations: (a) the frequency of the conduct, (b) the severity of the conduct, (c) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (d) whether the conduct unreasonably interferes with the employee's work performance. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

5.      Notwithstanding the above, a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace. Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000), Richardson v. N.Y. State Dep't of Corr. Servs., 180 F.3d 426, 437 (2d Cir. 1999). There is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment. Harris, 510 U.S. at 23.

6.      Overall, in deciding whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse. Harris, 510 U.S. at 23.

**Imputing Objectionable Conduct Creating Employer Liability**

1.      For the plaintiff to succeed on her hostile work environment claim against Pepperidge Farm, she must prove not only that she experienced severe and pervasive harassment, but also that "a specific basis exists for imputing the objectionable conduct to [Pepperidge Farm]." Mack v. Otis. Elevator Co., 326 F.3d 116, 127 (2d Cir. 2003).

2.      The starting point for analyzing employer vicarious liability in a Title VII hostile work environment action is to determine whether the person who allegedly

3

created that environment is properly characterized as having been the plaintiff's "supervisor." Id.

3.      When a "supervisor with immediate (or successively higher) authority over the employee" has engaged in the complained of conduct, the "employer [may be] subject to vicarious liability." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998).

4.      Employers are not, by contrast, vicariously liable for hostile work environment created by a mere co-worker of the victim. Faragher, 524 U.S. at 803; Ellerth, 524 U.S. at 763.

5.      Therefore, an employer is strictly liable for a supervisor's sexual harassment of an employee if the harassment results in what is called a tangible, or adverse employment action.  "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Industries, Inc. v. Ellerth, 524 U.S. at 761 (1998).

6.      "Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates." Id. at 762. "A tangible employment decision requires an official act of the enterprise, a company act." Id.

7.      "The decision in most cases is documented in official company records and may be subject to review by higher level supervisors." Id.

4

8.    Similar to proving the severity, pervasiveness, or frequency of the hostile workplace, the plaintiff must prove that the adverse employment action occurred because of her gender.

9.    In the instant case, the plaintiff claims that the adverse employment action that she suffered was that Mr. Arocho gave her a negative reference for the Quality Assurance position that she applied for, and that because of that reference, she did not get the job. The defendants claim that that Mr. Arocho was either never consulted regarding Ms. Presley's application for the QA job, nor did he provide any recommendation for that position, negative or otherwise, or if such a recommendation was given it was not dispositive. Based upon the testimony and evidence that has been presented in this case, if you find that the plaintiff has proven by a preponderance of the evidence that she suffered an adverse employment action by Mr. Arocho because of her gender, then Pepperidge Farms will be strictly liable for Mr. Arocho's conduct, and Pepperidge Farms will be prevented from asserting what is known in the law as "an affirmative defense", which I will explain in a minute.

**Affirmative Defense**

1.    Employers are presumptively liable for a supervisor's harassment of an employee. <u>Ellerth</u>, at 765. However, in the absence of a tangible employment action, as I defined for you above, an employer can avoid liability for a supervisor's alleged harassment of a subordinate if it can prove, as an affirmative defense, "**(a)** that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and **(b)** that the plaintiff employee unreasonably failed to take

5

advantage of any preventive or corrective opportunities provided by the employer or to avoid harm other wise." Id.

2.    Generally, our law will find employers have exercised reasonable care to prevent the harassment if they instituted and distributed effective anti-harassment policies, established clear reporting procedures with sufficient levels of access, monitor supervisors conduct and provide training on harassment issues. Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 295 (2d Cir. 1999).  Although not necessarily dispositive, the existence of an anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has satisfied the first prong of this defense. Faragher, 524 U.S. at 806.

3.    If you find that the employer in this case had a policy with complaint procedures in effect, and conducted a prompt and comprehensive investigation of the plaintiff's claims of sexual harassment, you may find that the employer has met the first prong of the affirmative defense. Conversely, if complaint procedures were not followed by management or the investigation was flawed because Pepperidge Farms' investigation was conducted in an ineffective and inadequate manner, or otherwise tainted, the employer has failed to meet its burden under the first prong. Bennett v. Progressive Corp., 225 F. Supp.2d 190 (N.D.N.Y. 2002).

4.    Moreover, if you find that Pepperidge Farms through management level employees had knowledge of Ms. Presley's complaints for a period of time and did not act upon them – this knowledge can be imputed to the employer and Pepperidge Farm cannot be considered as having met the first prong of the test. Torres v. Pisano, 116 F.3d 625, 636-638 (2d Cir. 1997).  By the same token, a supervisor's failure to comply

6

with the company's reporting requirements is evidence tending to show that the company's response was inadequate. Distacio v. Perkin Elmer Corp., 157 F.3d 55, 64-65 (2d Cir. 1998).

5.     If you find that Campbell Soup/Pepperidge Farms exercised reasonable care in instituting and disseminating its anti-harassment policy, then in order for these defendants to meet the second prong of the defense, you must also find that the policy encouraged victims of sexual harassment to come forward and that the plaintiff unreasonably failed to take advantage of the employer's preventive and corrective measures, or failed to complain about the harassing conduct. Ellerth, at 765.

6.     There are some situations in which the employee is justified in not reporting sexual harassment. Reasonableness is a judgment call that will be made by you the Jury.  For example, a reasonable excuse would be if the plaintiff believed that she would lose her job if she reported, or the supervisor used reasonable threats of retaliation or influence with management to intimidate her. Distasio v. Perkin Elmer Corp., 157 F.3d 55, 64-65 (2d Cir. 1998).

7.     Therefore, Campbell Soup/Pepperidge Farms cannot escape liability for Mr. Arocho's alleged conduct in this case if you find that Campbell Soup/Pepperidge Farm did not have an effective policy and complaint procedure in place, that the investigation undertaken by Campbell Soup/Pepperidge was in any way flawed and that the Plaintiff cooperated with HR during the course of the investigation. Ellerth, 524 U.S. at 765.

7